# EXHIBIT B

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Case 2:11-cv-07473-GAF -E    Document 53    Filed 12/20/11    Page 1 of 19    Page ID #:390
         Exhibit B to declaration of F. Velocci    Page 2 of 20

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Renee Fisher | None | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| None | | None | |

**Proceedings:**     **(In Chambers)**

<u>**ORDER RE: PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION**</u>

**I.
INTRODUCTION**

In October 2000, Plaintiff Foremost Groups, Inc. ("Foremost") entered into an exclusive distribution agreement with Chinese manufacturer Tangshan Huida Ceramic Group Co., Ltd. ("Tangshan Huida") to distribute toilets and other bathroom porcelain products to retail sellers in the United States. As part of its marketing of these products, Foremost designed a certification label to reflect compliance with so-called Maximum Performance ("MaP") testing that established the product's performance level under industry standards established in 2003. In this case, Foremost claims that a competitor, Defendant Ayers Bath (USA) Corporation ("Ayers") has interfered with its exclusive distributorship agreement with Tangshan Huida and has misappropriated Foremost's unique MaP certification label by placing it on Ayer's competing products. Foremost now moves for a preliminary injunction barring Ayers: (1) from selling, distributing, or offering for sale Tangshan Huida vitreous china or porcelain bathroom and sanitary ware parts and products in the United States and Canada; and (2) from "infringing" Foremost's unique label communicating MaP testing and certification. (Docket No. 5, Proposed Order Granting Application for Preliminary Injunction [Proposed Order] at 2; <u>accord</u> Docket No. 5, Mem. at 1.)

As discussed in greater detail below, the evidence presented persuades the Court that there are at the very least serious questions going to the merits of Foremost's interference claims.

Case 2:13-bk-17409-RK  Doc 66-4  Filed 01/13/17  Entered 01/13/17 17:32:03  Desc
Exhibit B to declaration of F. Velocci  Page 3 of 20
Case 2:11-cv-07473-GAF -E  Document 33  Filed 12/20/11  Page 2 of 19  Page ID #:591

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

This evidence indicates that Ayers had knowledge of the agreement between Foremost and Tangshan Huida, had access to information regarding Foremost's customers through its relationship with Tangshan Huida, and sought to undercut Foremost's relationships with its United States customers by offering identical or nearly identical products at a price lower than Foremost's cost of goods. For these reasons, the Court concludes that the application for preliminary injunction should be **GRANTED.**

**II.
BACKGROUND**

**A. THE FOREMOST-TANGSHAN HUIDA AGREEMENT**

Among its business activities, Foremost distributes vitreous china and porcelain toilets and bathroom sinks to high-volume retail home centers, hardware stores, and kitchen and bath showrooms in the United States and Canada, including large chain stores such as Lowe's, Home Depot, HD Supply, and Menards. (Docket No. 6, Declaration of David Bruce re Application for Preliminary Injunction [Bruce Decl.] ¶¶ 2–4.)[1] (Id. ¶ 4.) Tangshan Huida supplies Foremost with such products under an exclusive distributorship agreement executed on October 20, 2000. (Id. ¶¶ 6–9, 12; Ex. A [Cooperation Agreement].) The agreement describes three types of products, one of which, "Type C," is at issue here and is defined to include products designed and manufactured by Tangshan Huida. (Id. ¶ 7.1 at 13.). The Agreement provides that Foremost is the "exclusive distributor for Type C products" in "American and Canadian markets" and states that Tangshan Huida "shall not authorize any third party or by itself the sale in the American and Canadian markets." (Id. ¶ 7.2 at 14.) In short, the agreement provides that Foremost is the exclusive distributor in the United States for porcelain products designed and manufactured by Tangshan Huida.

All Foremost toilets are subjected to MaP testing, administered by an independent entity, and are MaP certified, a "highly desirable designation in the industry." (Bruce Decl. ¶ 10.) In

---

[1] Ayers raises evidentiary objections to many of the paragraphs included in Bruce's Declaration and in Docket No. 18, Supplemental Declaration of David Bruce in Support of Foremost Application for Preliminary Injunction ("Suppl. Bruce Decl."). These objections include that Bruce's statements contain hearsay in violation of Federal Rules of Evidence ("FRE") 801 and 802; that Bruce has not established a foundation for, or lacks personal knowledge of, the matters attested to, in violation of FRE 602, Federal Rule of Civil Procedure 56(e), and Local Rule 7-7; and that some statements lack relevance under FRE 402. (See Docket Nos. 15, 23, Ayers Objections to Bruce Decl. and Suppl. Bruce Decl.)  For purposes of this motion, the Court overrules the objections.

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Exhibit B to declaration of F. Velocci    Page 4 of 20
Case 2:11-cv-07473-GAF -E    Document 33    Filed 12/20/11    Page 3 of 19    Page ID #:392

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

2007, Foremost developed its own packaging label to communicate to customers that its toilets have been MaP-tested and have received the highest certification available for the relevant class ("Foremost MaP Label"), which appears on all of its toilet products. (Id. ¶¶ 13–14; see Mem. at 3.) This label does not include Foremost's name, or otherwise explicitly identify the label with the Company, but the Company has never authorized another party's use of the label. (Bruce Decl. ¶ 15.)

**B. AYERS' CONNECTION TO TANGSHAN HUIDA**

**1. AYERS' PRODUCTS**

Defendant Ayers is a distributor of bathroom and sanitary ware products, including toilets and bathroom sinks. Ayers sells and markets products under the brand label "Dofiny." (Id. ¶ 16; Docket No. 16, Declaration of Charles Wang in Support of Ayers Opposition to Plaintiff's Application for Preliminary Injunction [Wang Decl.] ¶ 3.) Dofiny competes with Foremost for sales to large retail chains in the United States. Foremost complains that Ayers has competed unfairly in two respects: it has interfered with Foremost's exclusive distributorship agreement by offering Tangshan Huida toilets for sale to Foremost's customers at prices below those being offered by Foremost and it has misappropriated Foremost's MaP certification label and placed it on its products and product packaging. According to Foremost, this has occurred with several of its customers. In short, the record is clear that Ayers sells products, including toilets, that compete with those that Foremost imports from Tangshan Huida and re-sells to American retailers. The Court must therefore look further to determine whether Ayers' competition falls outside the bounds of what is permitted in the marketplace. That inquiry has turned up significant evidence of questionable conduct.

**2. AYERS' AFFILIATION WITH TANGSHAN HUIDA**

Although Ayers denies that it imports and sells Tangshan Huida porcelain products, it turns out that Ayers is closely affiliated with Tangshan Huida. In an effort to obfuscate the connection, Peter Yao, Ayers' President, insists that "[Tangshan Huida] does not supply any porcelain toilet and sink products to [Ayers]," and that "[a]ll porcelain toilet and sink products sold in the United States by [Ayers] are manufactured by Tangshan Ayers [Bath Equipment Co., Ltd.]" ("Tangshan Ayers"), a separate manufacturing company that, like Tangshan Huida, is also located in Tangshan City in the Hebei province in China. (Docket No. 16, Declaration of Peter Yao in Support of Ayers Opposition to Plaintiff's Application for Preliminary Injunction [Yao Decl.] ¶ 5; Docket No. 16, Opp. at 2 n.1, 4.) Foremost has obtained evidence in the form of an undated, translated version of the "registration for the establishment of foreign enterprise

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Case 2:11-cv-07473-GAF -E   Document 53   Filed 12/20/11   Page 4 of 19   Page ID #:393
Exhibit B to declaration of F. Velocci    Page 5 of 20

LINK: 5

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

investments" for Tangshan Ayers that indicates that the company is 75 percent-owned by Tangshan Huida. (Suppl. Bruce Decl. ¶ 2, Ex. A [Tangshan Ayers Registration].)[2] Moreover, Tangshan Huida's owner and legal representative, Huei-wen Wang, was also the legal representative for Tangshan Ayers until June 28, 2007, when he was replaced by his son, Yen-ching Wang. (Tangshan Ayers Registration; Bruce Decl. ¶¶ 3, 4, Ex. B [Tangshan Huida Web Site].) Yen-ching Wang is designated in Foremost's distributorship agreement as Tangshan Huida's assigned liaison. (Cooperation Agreement ¶ 10.3 at 16.) Thus, Foremost has established a significant overlap between management team members of Tangshan Ayers and Tangshan Huida in addition to Tangshan Huida's dominant ownership interest in Tangshan Ayers.

As of March 11, 2011, this connection was confirmed in Dofiny/Ayers online promotional materials that described Ayers as a "wholly owned corporation of" Tangshan Ayers, and Tangshan Ayers as "a sister company to Huida Ceramic Groups Ltd." (Suppl. Bruce Decl. ¶ 5, Ex. C [March 11, 2011, Bluebath.com/Dofiny Web Page].) These materials also stated that, "[t]hrough the affiliation of our sister company," Dofiny/Ayers "ha[s] the capacity to produce over 9 million pieces of products annually with 17 natural gas fed tunnel kilns and 10,000 workers more or less." (March 11, 2011, Bluebath.com/Dofiny Web Page.) On November 7, 2011, the same Bluebath.com/Dofiny Web Page had been amended to remove the reference to Tangshan Huida, but contained the same statement that Ayers' capacity was achieved "through the affiliation of our sister company." (Suppl. Bruce Decl. ¶ 6, Ex. D [November 7, 2011, Bluebath.com/Dofiny Web Page].)

In supplemental briefing, Foremost has supplied even more damaging information regarding the Ayers-Tangshan Huida connection through a February 2010 email chain between David Kim of Ayers and Fred Finger of Ferguson Enterprises, Inc. ("Ferguson"). (Second Suppl. Bruce Decl., Ex. A.)[3] When Kim identified Huida as a "sister company," Finger asked

---

[2] In its Objections to Suppl. Bruce Decl., Ayers objects to the Court's consideration of Foremost's evidence regarding the relationship between Tangshan Ayers and Tangshan Huida, on the basis that Foremost has known that Ayers imports its products from Tangshan Ayers at least since Wang so informed Bruce in July 2011, but failed to raise arguments regarding the relationship until its Reply brief. (Ayers Objections to Suppl. Bruce Decl. at 2.) But the point being made is not only that Ayers imports from Tangshan Ayers but that Tangshan Huida owns a controlling interest in Tangshan Ayers, which is a fact that Ayers failed to disclose in its opposition to the present motion.

[3] Ayers complains that these materials were submitted late and that the Court should not consider them. In the alternative, Ayers asks for an opportunity to submit additional briefing. The Court rejects both arguments. While the information was submitted late, it places in serious question the veracity of a number of representations

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Case 2:11-cv-07473-GAF -E    Document 53    Filed 12/20/11    Page 5 of 19    Page ID #:594
Exhibit B to declaration of F. Velocci    Page 6 of 20

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

for clarification, to which Kim responded:

> I just want to clear up that Ayers Bath is Huida. Ayers bath is owned entirely by Huida and was created to distribute the Dofiny brand and in addition to create additional OEM business in the U.S.

(Id. at 2.) The email reflects that Peter Yao, President of Ayers Bath was copied on the email. (Id.) A Ferguson executive forwarded the email to David Bruce about a month ago.

These materials plainly indicate that Tangshan Huida is the manufacturer of much, if not all, of the Ayers product line and that Ayers is directly competing with Foremost in the sale of such products.

**C. AYERS' CONDUCT IN THE MARKETPLACE**

**1. LOWE'S**

Since 2008, Foremost has supplied vitreous porcelain toilets to Lowe's, a chain of 1,700 retail home improvement and appliance stores in the United States and Canada. (Bruce Decl. ¶¶ 29–30.) In recent years, Foremost has attempted to expand its business with Lowe's and a subsidiary, LG Sourcing, Inc., to include Tangshan Huida-manufactured sinks. (Id. ¶ 31.) In April 2011, LG Sourcing's International Merchandise Manager, Todd Page, informed Foremost that Ayers had offered to sell Tangshan Huida-manufactured vitreous porcelain toilets and sinks for a lower price than Foremost was offering, and that, as a result, it "[d]oesn't look good on the sinks." (Id. ¶¶ 32–34, Ex. B [April 21, 2011, Page Email].) There is no evidence that Lowe's terminated its relationship with Foremost, although it appears that Foremost was not given an order for bathroom sinks.

Even though Lowe's (not Foremost's) representatives have disclosed Ayers' sales efforts, Ayers denies any contacts. Charles Wang, Vice President of Sales for Ayers, states that neither he nor any member of his sales team has "made any in person contacts with Lowe's to solicit sales between Lowe's and Ayers," and that there are "no sales or purchase orders for [Ayers] products between [Ayers] and Lowe's." (Wang Decl. ¶ 5.) In light of Kim's statement discussed above, and the fact that Foremost failed to obtain the bathroom sink order, Wang's

---

made in opposition to the motion for preliminary injunction. Moreover, the only material facts added to the record consists of admissions made by Foremost's party opponent. Accordingly, the Court is prepared to consider them for the purpose of assessing the merits of the pending motion.

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Case 2:11-cv-07473-GAF -E   Document 33   Filed 12/20/11   Page 6 of 19   Page ID #:395
Exhibit B to declaration of F. Velocci    Page 7 of 20

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

denial is substantially undermined by this other evidence.

    2.  MENARDS

On May 4, 2011, Foremost was invited to attend a "line review," a retailer's evaluation of a potential supplier's products and prices, with Menards, a home improvement store chain in the midwestern United States, which Foremost has been seeking to add as a customer. (Bruce Decl. ¶¶ 47–48.) During the line review, Foremost provided detailed information about its vitreous porcelain toilets; however, Menards decided not to purchase Foremost's products. (Id. ¶ 49.) To date, Foremost does not supply product to Menards.

Three months later, Foremost discovered that Menards was selling Ayers' products. On July 26, 2011, Bruce and another Foremost representative visited a Menards store in Indiana and purchased two Ayers-branded toilets for $79.00 each, a price well below Foremost's market price. (Bruce Decl. ¶¶ 50–51.) Photographic evidence establishes that the physical configuration of the toilets is indistinguishable from a model sold by Foremost under Home Depot's private label line, "Glacier Bay." (Id. ¶ 52, Ex. F [Foremost Toilet Comparison Photos].) Although Foremost has failed to identify the model number of the Ayers toilet featured in the photographs, the photographs clearly depict the Dofiny name displayed on the Ayers product. (Id.) Foremost also supplies an instruction manual that accompanied the purchased toilets. The manual is for a 1.28 gallons-per-flush ("GPF") two-piece toilet, and references seven models. (Bruce Decl. ¶ 51, Ex. E [Purchased Ayers Toilet Instruction Manual].) That instruction manual, as well as another manual downloaded from the Ayers web site referencing three 1.1/1.6 GPF two-piece model toilets, identifies two Tangshan Huida-branded components: an "inlet" and a "flush valve assembly." (Purchased Ayers Toilet Instruction Manual; Bruce Decl. ¶ 53, Ex. G [Non-Purchased Ayers Toilet Instruction Manual]; Docket No. 18, Reply at 4; Suppl. Bruce Decl. ¶ 8, Ex. 8 [Photos of Ayers Toilet Huida Flush Valve Assembly and Inlet].) In addition, the boxes in which the purchased Ayers toilets were packaged bore a label identical to the Foremost MaP label. (Bruce Decl. ¶ 54, Ex. H [Photo Ayers Toilet Package with Foremost MaP Label].) Foremost obtained information indicating that Menards purchased 40,000 pieces of product from Ayers. (Suppl. Bruce Decl. ¶ 9.)

Ayers denies that its toilets bear the same design or specifications as Foremost's toilets sold under the "Glacier Bay" brand. Ayers notes differences apparent in the photographs provided by Foremost, and, additionally, provides its own series of comparison photographs. (Opp. at 4; Docket No. 16, Declaration of Jeffrey S. Renzi in Support of Ayers Opposition to Plaintiff's Application for Preliminary Injunction [Renzi Decl.] ¶¶ 3, 6–10, Exs. 1 [Ayers Markup of Foremost Toilet Comparison Photos], 11, 12 [Ayers Toilet Comparison Photos].)

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Case 2:11-cv-07473-GAF -E   Document 53   Filed 12/20/11   Page 7 of 19   Page ID #:596
Exhibit B to declaration of F. Velocci    Page 8 of 20

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

However, because of slight differences in the size of the photographs, minor variations in the precise angle from which they were taken, and a lack of any scale provided by either party, the Court cannot conclude that the comparisons made by Ayers are material. Moreover, Ayers' comparison of one of its toilets to a "Glacier Bay" toilet purchased from Home Depot, which purportedly show numerous differences in the two models, is also suspect because, as Foremost indicates, Home Depot obtains its "Glacier Bay" toilets from a number of different manufacturers and utilizes the same SKU number for a particular model regardless of the manufacturer. Thus, even though the "Glacier Bay" toilet purchased by Ayers bears the same SKU number as a Foremost toilet, that fact does not establish that Foremost manufactured the comparison toilet. (Compare Renzi Decl. ¶¶ 6–10, Exs. 4, 5, 6, 7, 8, with Suppl. Bruce Decl. ¶¶ 10–12.) And none of the information provided by Ayers addresses the presence of the Foremost MaP label on the box in which the Dofiny toilet was delivered.[4]

### 3. FERGUSON

Foremost supplies toilet seats and vitreous porcelain toilets and sinks to Ferguson, the largest plumbing wholesaler in North America. (Id. ¶¶ 18–19.) In August 2011, Fred Finger, a Ferguson buyer, refused to enter into a contract with Foremost for the provision of a specific type of toilet for Ferguson's private label brand, "Mirabelle." (Id. ¶¶ 18–28.) Following negotiations, Finger informed Foremost that some Ferguson branch locations had purchased identical Tangshan Huida toilets from Ayers for a lower price than Foremost was offering, and were thus able to sell the same toilets for a cheaper price. (Id. ¶¶ 22–28.) Finger decided not to enter the contract, because the availability of identical toilets at a lower price would undermine sales of higher-priced Foremost toilets offered under the Mirabelle line. (Id. ¶ 28.)[5]

---

[4] In addition, Wang states that none of the products in its warehouses bear the Foremost MaP Label, and that he has "instructed Tangshan Ayers that it shall not use that label on any toilet (including any packaging) manufactured and shipped for Ayers." (Wang Decl. ¶ 8.) Ayers provides photographic evidence that its warehouse inventory in Santa Fe Springs now bears a label, issued by the MaP agency, that is different in color and design from the Foremost MaP label. (Mem. at 5–6; Renzi Decl. ¶ 4, Exs. 2, 3; Wang Decl. ¶ 8.)

[5] As with the allegations regarding the other retail outlets, Wang states that neither he nor any member of his sales team ever "made any in person contacts with Ferguson to solicit sales between Ferguson and Ayers," and that "[t]here are no sales or purchase orders for [Ayers] products between [Ayers] and Ferguson." (Wang Decl. ¶ 4.)

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Exhibit B to declaration of F. Velocci    Page 9 of 20
Case 2:11-cv-07473-GAF -E   Document 53   Filed 12/20/11   Page 8 of 19   Page ID #:597

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

### 4. HD SUPPLY

Foremost's customer HD Supply is one of the largest wholesale distributors of construction and maintenance products in the United States and Canada. (Bruce Decl. ¶¶ 36–37.) Foremost provides HD Supply with porcelain sinks manufactured by Tangshan Huida. Bruce learned from HD Supply that Wang had approached it at least twice and offered to sell Tangshan Huida-manufactured toilets and sinks for a lower price than Foremost charges. (Id. ¶ 38.) Further, representatives of HD Supply advised a former Foremost sales representative that Ayers has represented to companies in HD Supply's market that it imports products directly from Tangshan Huida and can provide these products at a lower price than Foremost. (Id. ¶ 40.) HD Supply has apparently complained to Foremost that Ayers' provision of Tangshan Huida toilets and sinks to HD Supply's competitors at lower prices than HD Supply pays Foremost has undercut HD Supply's prices, and Bruce states that Ayers' conduct has "jeopardized" Foremost's business relationship with HD Supply. (Id. ¶¶ 39–41.) In response, Wang states only that his "first contact with HD Supply was the result of HD Supply's initiative." (Wang Decl. ¶ 7.)

### D.  FOREMOST COMPLAINS TO AYERS

On April 21, 2011, after learning that Ayers had approached Lowe's, Bruce wrote to Wang and informed him that Bruce had learned that (1) Ayers had imported products from Tangshan Huida in China and made these products available for sale to retail stores, wholesale channels, and regional dealers in the United States; (2) Ayers had intentionally purchased merchandise in the United States and had attempted to sell this merchandise to local dealers; and (3) Ayers had contacted Foremost customers, such as Lowe's, offering to sell Tangshan Huida sanitary ware products at or below cost. (Bruce Decl. at 42–44, Ex. C [Bruce April 2011 Letter] at 1.) Bruce wrote that this conduct infringed on Foremost's "long standing exclusive right to market, sell, and service Tangshan Huida's sanitary ware products in the United States and Canada," as well as Foremost's rights as "the sole legal representative for Huida in the territory"; attempted to undercut Foremost's business relationships; and damaged the goodwill developed by Foremost over more than a decade. (Bruce April 2011 Letter at 1.) Bruce warned Wang that Foremost would sue Ayers and seek a restraining order to discontinue Ayers' operations related to Tangshan Huida products if Ayers did not immediately cease all sales, service, and marketing of these products. (Bruce Decl. ¶ 45; Bruce April 2011 Letter at 1.)

Wang responded in July, stating that all Ayers products sold under the Dofiny brand are designed and manufactured by, and imported from, Tangshan Ayers. Wang denied that Ayers purchased products from Tangshan Huida and argued that Ayers "can sell its products in U.S.

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Case 2:11-cv-07473-GAF -E    Document 53    Filed 12/20/11    Page 9 of 19    Page ID #:598
Exhibit B to declaration of F. Velocci    Page 10 of 20

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

market like any other U.S. companies"; and asserting that Bruce's accusations were "baseless" and "absurd." (Bruce Decl. ¶ 46, Ex. D [Wang July 2011 Letter].) Foremost's complaint did not deter Ayers from competing with Foremost in the United States market. Foremost continued its investigation into Ayers' activities. This litigation followed.

**E. THE FOREMOST COMPLAINT**

Based on its belief that Ayers was competing unfairly and had interfered with Foremost's contract with Tangshan Huida, Foremost filed suit on September 12, 2011. The Complaint asserts ten claims against Ayers, including a claim for federal unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and state-law claims for intentional and negligent interference with prospective economic advantage; tortious interference with contractual relations; unfair competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code section 17200 et seq.; unfair competition under California common law; infringement of an unregistered trademark under California common law; and slander of title. (Compl.)[6] Foremost filed the instant Application on September 26, 2011. Foremost requests this Court to order, first, that Ayers "shall stop selling, distributing and/or offering for sale any and all [Huida] bathroom vitreous china and/or porcelain and sanitary ware parts and products, including but not limited to toilets and kitchen and bathroom sinks, in the United States and Canada, in violation of Foremost's exclusive distribution agreement." (Proposed Order at 2; accord Mem. at 1.) Second, Foremost asks this Court to order that Ayers "shall stop its infringement of Foremost's unique Maximum Performance label." (Proposed Order at 2; accord Mem. at 1.)

**III.
DISCUSSION**

**A. RULE 65 LEGAL STANDARD**

A plaintiff seeking a preliminary injunction under Federal Rule of Civil Procedure ("F.R.C.P.") 65(a) must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." Id. at 24.

---

[6] Foremost's remaining three claims were dismissed without prejudice on November 10, 2011, pursuant to a joint stipulation filed by the Parties. (Docket No. 21, Order on Stipulation of Dismissal without Prejudice.)

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Case 2:11-cv-07473-GAF -E    Document 55    Filed 12/20/11    Page 10 of 19    Page ID #:399
Exhibit B to declaration of F. Velocci    Page 11 of 20

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

    The Ninth Circuit applies the Winter standard using a "sliding scale test for preliminary injunctions," which "remains viable after the Supreme Court's decision in Winter." Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." Id. at 1131. The version of the sliding scale approach adopted and applied in the Ninth Circuit has been called the "'serious questions' test." Id. Under this test, a preliminary injunction may issue "where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" Id. (internal quotation marks and citation omitted). This approach is applied as part of the four-element Winter test; the plaintiff must also satisfy the remaining two Winter factors. Id. at 1135.

**B.  APPLICATION – INTERFERENCE CLAIMS**

    **1.  FOREMOST'S "INTERFERENCE" CLAIMS**

    Plaintiff bases its request that the Court enjoin Ayers' sale of Tangshan Huida parts and products on three of its seven claims: intentional and negligent interference with prospective economic advantage, and tortious interference with contractual relations.[7] Plaintiff need only meet the four Winter criteria as to one of these claims in order to justify the injunction. To assess whether Foremost has made such a showing the Court first reviews the elements of the claims.

    **2.  FOREMOST'S LIKELIHOOD OF SUCCESS ON THE MERITS**

        *a. Intentional Interference with Prospective Economic Advantage*

    To succeed on its claim for intentional interference with prospective economic advantage, a plaintiff must prove: "(1) an economic relationship between the plaintiff and another, 'containing a probable future economic benefit or advantage to plaintiff,' (2) defendant's knowledge of the existence of the relationship, (3) that defendant 'intentionally engaged in acts

---

    [7] In the pleadings addressing Foremost's Application, the Parties address arguments to a fourth claim by Plaintiff, for infringement on its exclusive right of distribution. However, the Court need not determine whether Foremost has demonstrated a likelihood of success on the merits as to this claim, because this claim was among those dismissed on November 10, 2011, pursuant to the Parties' joint stipulation. (Order on Stipulation of Dismissal without Prejudice at 2.)

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Exhibit B to declaration of F. Velocci    Page 12 of 20

Case 2:11-cv-07473-GAF -E Document 59    Filed 12/20/11    Page 11 of 19    Page ID #:400

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

or conduct designed to interfere with or disrupt' the relationship, (4) actual disruption, and (5) damage to the plaintiff as a result of defendant's acts." Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 380 n.1 (1995). The plaintiff must prove that the defendant "not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." Id. at 393.

### b. *Intentional Interference with Contract*

In order to succeed on its claim for tortious interference with contractual relations, Foremost must prove (1) a valid contract between itself and Tangshan Huida; (2) Ayers' knowledge of this contract; (3) Ayers' intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. See 5 B.E. Witkin, Summary of California Law § 731 at 1059.

### c. *Negligent Interference with Prospective Economic Advantage*

To succeed on a claim for negligent interference with prospective economic advantage, a plaintiff must first prove that the defendant owed it a duty of care. Biakanja v. Irving, 49 Cal. 2d 647, 650 (1958). The determination as to whether a defendant owed a duty of care to a plaintiff with whom it was not in privity "is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." Id. The remaining elements of the claim for negligent interference with prospective economic advantage are similar to those for intentional interference. In addition to the defendant's duty of care, a plaintiff must also prove that (1) "[a]n economic relationship existed between the plaintiff and (third party), containing a probable future economic benefit or advantage to plaintiff;" (2) "[t]he defendant knew of the existence of the economic relationship;" (3) "[t]he defendant engaged in wrongful conduct;" (4) [i]t was reasonably foreseeable that this wrongful conduct would interfere with or disrupt this economic relationship if defendant failed to exercise due care;" (5) [t]he defendant was negligent in his or her conduct, that is, the defendant failed to exercise due care;" (6) "[t]he economic relationship was actually interfered with or disrupted;" and (7) the "conduct caused plaintiff damage, namely, plaintiff lost in whole or in part the economic benefit or advantage from the economic relationship." 5 B.E. Witkin, Summary of California Law § 753 at 1090 (10th ed. 2005) (quoting California Civil Jury Instructions (BAJI), No. 7.82 (2011)).

Case 2:13-bk-17409-RK Doc 66-4 Filed 01/13/17 Entered 01/13/17 17:32:03 Desc
Exhibit B to declaration of F. Velocci Page 13 of 20
Case 2:11-cv-07473-GAF -E Document 59 Filed 12/20/11 Page 12 of 19 Page ID #:401

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

**3. DISCUSSION**

Because the intentional interference with contract and intentional interference with prospective economic advantage analyses substantially overlap, the Court will address them together. Because the Court finds that substantial questions going to the merits have been established to show the existence of a contract, and therefore a future probability of continuing economic benefits, and that Ayers with knowledge of the relationship acted with the intent to and did in fact disrupt that relationship with resulting harm to Foremost, the Court concludes that the first element of the preliminary injunction standard has been met, as discussed in detail below.

*a. The Merits: Interference with Contract/Prospective Economic Advantage*

**i. Probability of Continuing Economic Benefits**

"There can be no recovery unless the plaintiff shows that, except for the tortious interference, there was a reasonable probability that the contract or profit would have been obtained." 5 B.E. Witkin, Summary of California Law § 745 at 1076. Strong evidence has been presented to support that element. Foremost has easily established the existence of its relationship with Tangshan Huida, a fact not seriously contested by Ayers. That relationship generated substantial economic benefit to Foremost for several years and plainly contemplated probable future benefits and economic advantage to Foremost. As the record above demonstrates, Foremost sold Tangshan Huida porcelain goods to numerous large retail outlets in the United States for several years and reasonably expected to continue with such sales in the future.

**ii. Knowledge of Distribution Agreement**

Moreover, the evidence regarding the heretofore unknown relationship between Tangshan Huida and Ayers establishes at the very least a strong inference that Ayers' management had actual knowledge of the Foremost-Tangshan Huida agreement. As noted, Tangshan Huida's owner and legal representative, Huei-wen Wang, was also the legal representative for Tangshan Ayers until June 28, 2007, when he was replaced by his son, Yen-ching Wang. (Tangshan Ayers Registration; Bruce Decl. ¶¶ 3, 4, Ex. B [Tangshan Huida Website].) Yen-ching Wang is designated in Foremost's distributorship agreement as Tangshan Huida's assigned liaison. (Cooperation Agreement ¶ 10.3 at 16.) That Tangshan Huida's assigned liaison now acts as Tangshan Ayers' legal representative strongly suggests that Ayers has actual knowledge of

Case 2:13-bk-17409-RK   Doc 66-4   Filed 01/13/17   Entered 01/13/17 17:32:03   Desc
Case 2:11-cv-07473-GAF -E   Document 59   Filed 12/20/11   Page 13 of 15   Page ID #:402
Exhibit B to declaration of F. Velocci    Page 14 of 20

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

Tangshan Huida's agreement with Foremost, and that Foremost sold Tangshan Huida products in the United States under the terms of that agreement. In addition, the February 2010 emails between Ayers and Ferguson reflect Ayers' knowledge that "Huida does manufacture OEM for another major company based in the east coast but there is no other relationship other than of a manufacturer and buyer . . . ." (Second Suppl. Bruce Decl., Ex. A at 2.) Although the remark is somewhat cryptic, it clearly reflects Ayers' knowledge that Tangshan Huida has an existing relationship with another United States business. There is sufficient evidence at this stage of the proceedings to conclude that Foremost has shown, at the very least, substantial questions going to the merits of this element.

### iii. Efforts to Interfere with Foremost's Distribution Agreement

To deflect the thrust of Foremost's claims, Ayers has presented evidence suggesting that it made no effort to sell to Foremost's actual or prospective customers, or that it had any knowledge of Foremost's relationship with those customers. First, as to the factual dispute regarding Ayers' conduct, the Court concludes that Foremost has at the very least established substantial questions going to the merits of that element. Alliance for the Wild Rockies, 632 F.3d at 1135. Indeed, although Wang denies that Ayers approached or sold to Lowe's and Ferguson, he does not specifically deny knowledge that these entities were customers of Foremost and has not denied contacting HD Supply. (See Wang Decl. ¶¶ 4–5, 7.) Moreover, his denials do not ring true. Foremost obtained information regarding Ayers' conduct from its customers who provided detailed information regarding the sales efforts of Ayers including the prices at which competing products were offered. The Court finds it highly unlikely that each of the reports to Foremost, which are consistent in important details, would be the subject of mistake or fabrication. Furthermore, given the relationship between Ayers, Tangshan Ayers and Tangshan Huida, there is good reason to believe that Ayers had access to information regarding Foremost's United States sales. Likewise, the relationship between those entities, when combined with the photographic and other evidence submitted by Foremost and the admissions in the emails sent to Ferguson, strongly suggests that Ayers is marketing Tangshan Huida products in the United States. Thus, the record supports the conclusion that Ayers not only knew of the contractual relationship between Foremost and Tangshan Huida but also had access to information regarding Foremost's sales activity in the United States and used that information in an attempt to obtain that business for itself. Evidence tending to show efforts to sell product to these clients at any price, let alone at prices below those at which Foremost could purchase the same item, supports an inference that Ayers' sought to interfere with Foremost's agreement to act as the exclusive distributor of Tangshan Huida products in the United States.

While Foremost must also raise "serious questions" as to whether this interference was

Case 2:13-bk-17409-RK Doc 66-4 Filed 01/13/17 Entered 01/13/17 17:32:03 Desc
Exhibit B to declaration of F. Velocci    Page 15 of 20

Case 2:11-cv-07473-GAF -E Document 59 Filed 12/20/11 Page 14 of 19 Page ID #:403

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

"wrongful by some legal measure other than the fact of interference itself," Della Penna, 11 Cal. 4th at 393, the evidence discussed above meets this standard. Given the connection between and among Ayers, Tangshan Ayers, and Tangshan Huida, and the evidence that Ayers knew of the relationship between Foremost and Tangshan Huida, Ayers efforts to undercut Foremost in the marketplace presents a serious question regarding the wrongful nature of Ayers' conduct.

### iv. Actual Disruption of the Distribution Agreement

The Court is satisfied that Foremost has raised serious questions going to the merits of the actual disruption element of its interference with contract claim. As discussed above, the evidence presented persuades the Court that Foremost had an existing, exclusive distributorship agreement with Tangshan Huida to distribute in the United States products of Tangshan Huida's design and manufacture – the so-called Type C products. That agreement provided Foremost with a reasonable expectation of substantial economic benefits in the future. Furthermore, the evidence shows knowledge of that agreement and actions designed to interfere with that agreement by taking business away from Foremost through the sale of Tangshan Huida products in the United States to the very customers with whom Foremost had developed lucrative relationships over the past several years. The evidence Foremost has obtained from its customers and prospective customers indicates that Ayers has in fact sold them Tangshan Huida products that would only have been available through Foremost had Ayers not used its access to confidential business information to undercut Foremost's position as exclusive distributor.[8]

### b. *Irreparable Harm*

Foremost asserts that it has suffered and will continue to suffer irreparable harm because (1) it lost an opportunity to provide toilets for Ferguson's "Mirabelle" line, as a direct result of Ayers' sale of Tangshan Huida products to Ferguson branch locations, and has had its relationship with Lowe's undermined by Ayers' conduct; (2) Foremost customer HD Supply has "expressed frustrations" with Ayers' sale of Tangshan Huida toilets and sinks for lower prices

---

[8] Although the language of the translated Cooperation Agreement produced by Foremost appears to leave open the possibility that Tangshan Huida could be engaged by companies other than Foremost to manufacture products to specifications other than those created by Foremost or by Tangshan Huida itself, (see Opp. at 8–9.), as the discussion in the text indicates, Ayers mainly defends on the ground that it either hasn't offered to sell to Foremost's clients or that its products are not Tangshan Huida products. Ayers has not offered any evidence that it has designed products that Tangshan Huida has manufactured to its specification, or provided any evidence to suggest that the products that Foremost has been offered for sale were designed by anyone other than Tangshan Huida. In fact, the similarity in the design of products sold by both companies gives rise to a strong inference that they were designed by the product's source – Tangshan Huida.

Case 2:13-bk-17409-RK Doc 66-4 Filed 01/13/17 Entered 01/13/17 17:32:03 Desc
Exhibit B to declaration of F. Velocci    Page 16 of 20
Case 2:11-cv-07473-GAF -E Document 55 Filed 12/20/11 Page 15 of 15 Page ID #:404

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

that Foremost's in HD Supply's market; and (3) it is "apparent that the reason Menards decided not to purchase toilets from Foremost was because Ayers offered to provide them with identical toilets, complete with the Foremost MaP Label, for a lower price." (Mem. at 13–14.)  Thus, Foremost has suffered and continues to suffer "lost goodwill, reputational damage and the loss of past and potentially future purchasers of their vitreous china products."  (Id. at 23.)

The Court is persuaded that Foremost has established strong evidence that Ayers' continued conduct will cause it irreparable harm.  That Ayers now denies soliciting Foremost's customers is not persuasive in view of the totality of the evidence before the Court.  To the extent that Ayers has offered the same products from the same source at a substantially lower price, its conduct is likely to impair Foremost's ability to maintain business relationships with at least some of its customers and develop business with others.  Although the loss of sales and profits alone could conceivably be remedied through the payment of money damages, the loss of reputation and goodwill constitutes the kind of harm that will support the entry of an injunction.  See, e.g., Rogers Group, Inc. v. City of Fayetteville, 629 F.3d 784, 789–90 (8th Cir. 2010) (potential loss of goodwill); BellSouth Telecommuncations, Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 970 (11th Cir. 2005) (loss of customers and goodwill constitutes irreparable injury); Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (intangible injuries such as loss of goodwill qualify as irreparable);  Meineke Car Care Centers, Inc. v. Bica, No. 3:11–cv–369–FDW–DCK, 2011 WL 4829420 (W.D.N.C. Oct. 12, 2011) (harm from violation of covenant not to compete irreparable due to loss of reputation and goodwill).  The Court is persuaded on the evidence now before it that the conduct of Ayers injures Foremost's reputation and goodwill, and therefore constitutes irreparable injury.

### c. Balance of Equities and Public Interest

Against Foremost's equities, the Court considers the interest of Ayers in competing in the marketplace and the public interest in the effect that such competition would have on lower retail prices for porcelain bathroom fixtures.  These are not trivial interests and should not be readily discounted.  Nevertheless, while competition is encouraged, and fair competition is privileged, the law recognizes the notion of unfair competition and imposes consequences where such competition is identified.  Here the Court is dealing with an area of the law that expressly limits the ability of a business to interfere with a competitor's business relationship that is expressed in a contractual agreement or, even outside of contract, that has a reasonable probability of continued economic benefit to the competitor.  Here Foremost has shown that it has an exclusive distributorship agreement with Tangshan Huida, and that Ayers has engaged in conduct that would defeat the very purposed of that agreement.  Furthermore, Ayers appears to have access to

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Exhibit B to declaration of F. Velocci    Page 17 of 20
Case 2:11-cv-07473-GAF -E    Document 59    Filed 12/20/11    Page 16 of 19    Page ID #:405

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

information about Foremost through its strong ties to Tangshan Huida and to have used that information to its advantage and Foremost's detriment. In these circumstances, the Court concludes that the balance of equities tips sharply in Foremost's favor. Moreover, the public interest is best served when competition is conducted fairly. Even though Ayers might be able to undersell Foremost for as long as it takes to drive it out of the marketplace, thereafter the interlocking nature of Tangshan Huida, Tangshan Ayers, and Ayers, might well have a disproportionate share of the market. In any event, the public has no interest in unfair competition no matter what short-term benefits may accrue from such behavior.

    **4. CONCLUSION**

"[B]efore a preliminary injunction is granted, at an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." Guzman v. Shewry, 552, F.3d 941, 948 (9th Cir. 2009). Because Foremost has made this threshold showing as to its claims for tortious interference with prospective economic advantage and contractual relations, the court **GRANTS** Foremost's request that it enjoin Ayers' sale of Tangshan Huida parts and products.

**C. APPLICATION – FOREMOST'S UNFAIR COMPETITION CLAIM**

    Foremost's request that the Court enjoin Ayers' "infringement" of the Foremost MaP Label is premised on its remaining four claims for unfair competition under the Lanham Act, California's UCL and California common law, and for infringement of an unregistered trademark under California common law.

    The Parties address the bulk of their arguments to Foremost's likelihood of success on the merits of these claims, and Foremost relies on GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199 (9th Cir. 2000) for the proposition that, should it demonstrate likelihood of success as to its claims of trademark infringement, irreparable injury will be presumed. See id. at 1205 n.4. Foremost's argument relies, erroneously, on the pre-Winter regime. Indeed, the Ninth Circuit has explicitly held that this presumption has been "effectively overruled"; thus, "even in a copyright infringement case, the plaintiff must demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief." Flexible Lifeline Systems, Inc. v. Precision Lift, Inc., 654 F.3d 989, 998 (9th Cir. 2011). Because the Court does not find that Foremost has demonstrated that it will suffer irreparable harm in the absence of an injunction, the Court declines to address the remaining Winter factors. In particular, the Court declines to determine, at this stage in the proceedings, whether Foremost has raised "serious questions" as to whether Ayers' use of the Foremost MaP Label infringed on trademark rights held by Foremost.

Case 2:13-bk-17409-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Exhibit B to declaration of F. Velocci    Page 18 of 20
Case 2:11-cv-07473-GAF -E   Document 55   Filed 12/20/11   Page 17 of 19   Page ID #:406

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

### 1. IRREPARABLE HARM

Foremost's evidence shows that Ayers used the Foremost MaP label on at least two Ayers toilets offered for sale in July 2011 at a Menards location, and Ayers does not dispute this use. Rather, Ayers offers (1) a declaration by Wang that none of the products in Ayers warehouses bear the Foremost MaP Label, and that Wang has "instructed Tangshan Ayers that it shall not use that label on any toilet (including any packaging) manufactured and shipped for Ayers"; and (2) photographic evidence that its warehouse inventory in Santa Fe Springs now bears a label, issued by the MaP agency, that is different in color and design from the Foremost MaP label. (Wang Decl. ¶ 8; Renzi Decl. ¶ 4, Exs. 2, 3.) Foremost does not rebut Ayers' evidence that it has ceased importing or selling toilets bearing the Foremost MaP Label.

Foremost argues that an injunction is nonetheless required because "there is nothing stopping Ayers from renewing its infringing use of the Foremost MaP Label at any time in order to trade off the success Foremost has achieved as a result of its use of the Foremost MaP Label and years of distributing vitreous china products." (Reply at 12–13.) In light of Ayers' evidence—undisputed by Foremost—that the company has ceased using the Foremost MaP Label and now uses a label issued by the MaP agency, which is different in color and design but which conveys the same information as to MaP certification, the Court cannot conclude that there is any real danger, absent an injunction, that Ayers will renew its use of the Foremost MaP Label. Thus, preliminary relief from this Court is not required to prevent irreparable harm from Ayers' continued or renewed sale to retailers of toilets bearing the Foremost MaP label.

### 2. MANDATORY RECALL

Although Foremost does not specifically so request, the language of its Reply suggests that it wishes the Court to require Ayers to recall any toilets that remain on retail shelves bearing the Foremost MaP Label. Indeed, in insisting that an injunction remains necessary, Foremost states, "More pressing [than the possibility that Ayers renews its use of the Foremost MaP label] . . . are the thousands of Ayers' toilets bearing the Foremost MaP Label currently sitting on shelves of retailers across the country." (Reply at 13.)

With this implied request, Foremost leaves the realm of prohibitory injunctions, which "prohibit[] a party from taking action and 'preserve[] the status quo pending a determination of the action on the merits,'" and treads into the realm of mandatory injunctions, which "order[] a responsible party to 'take action.'" <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 878–79 (9th Cir. 2009) (some internal quotation marks and citations omitted). "A mandatory injunction 'goes well beyond simply maintaining the status quo [p]endente lite [and]

Case 2:13-bk-17409-RK Doc 66-4 Filed 01/13/17 Entered 01/13/17 17:32:03 Desc
Exhibit B to declaration of F. Velocci Page 19 of 20
Case 2:11-cv-07473-GAF -E Document 59 Filed 12/20/11 Page 18 of 19 Page ID #:407

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

is particularly disfavored.' In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" Id. at 879 (same).

The Ninth Circuit imposes additional requirements on a party seeking a preliminary injunction directing recall of a product in a trademark infringement case. Thus, "to justify a recall, the infringed company must first satisfy the traditional standard for a prohibitory preliminary injunction. In addition, the district court must consider three further factors: (1) the willful or intentional infringement by the defendant; (2) whether the risk of confusion to the public and injury to the trademark owner is greater than the burden of the recall to the defendant; and (3) substantial risk of danger to the public due to the defendant's infringing activity." Id. (adopting test formulated in Gucci Am., Inc. v. Daffy's, Inc., 354 F.3d 228, 233 (3d Cir. 2003)).

Because the Court has concluded that Foremost cannot establish the elements necessary to obtain a prohibitory injunction, it follows that it cannot meet the standard for a preliminary mandatory injunction, and it has not made any real effort to do so. For example, neither Party presents evidence (1) that Ayers products bearing the Foremost MaP label in fact remain on retail shelves; or (2) that they remain in any significant quantity. The Court therefore sees no need for any further discussion on this issue.

### 3. CONCLUSION

Foremost has not shown that Ayers continues to use or will renew its use of the Foremost MaP Label on toilets that it sells to retailers in the United States; thus, this Court's issuance of a prohibitory injunction against Ayers is not required to protect Foremost from likely irreparable harm. Nor has Foremost made the showings required to support this Court's imposition of a mandatory recall on Ayers.

Accordingly, the Court **DENIES** Foremost's request that the Court enjoin Ayers' "infringement" of the Foremost MaP Label.

Case 2:13-bk-17400-RK    Doc 66-4    Filed 01/13/17    Entered 01/13/17 17:32:03    Desc
Exhibit B to declaration of F. Velocci    Page 20 of 20
Case 2:11-cv-07473-GAF -E   Document 59   Filed 12/20/11   Page 19 of 19   Page ID #:408

LINK: 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-07473 GAF (Ex) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Foremost Groups Inc v. Ayers Bath USA Corporation | | |

## IV.
## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Foremost's Application for a Preliminary Injunction barring Ayers from selling, distributing, or offering for sale Tangshan Huida vitreous china or porcelain bathroom and sanitary ware parts and products in the United States and Canada during the pendency of this litigation. In all other respects, Foremost's Application is **DENIED**.

**IT IS SO ORDERED.**