1  HAGENS BERMAN SOBOL SHAPIRO LLP
   Philip Graves, Bar No. 153441
2  philipg@hbsslaw.com
   301 North Lake Avenue, Suite 920
3  Pasadena, California 91101
   Telephone: 213-330-7150
4  Facsimile: 213-330-7152

5  OBERDIER RESSMEYMER LLP
   Carl W. Oberdier (*pro hac vice*)
6  Kellen G. Ressmeyer (*pro hac vice*)
   Sara K. Hunkler (*pro hac vice*)
7  655 Third Avenue; 28th Floor
   New York, New York  10017
8  Telephone:  (212) 659-5141
   Facsimile:   (646) 349-4925

9

10 Attorneys For TANGSHAN AYERS BATH EQUIPMENT CO., LTD.

            UNITED STATES BANKRUPTCY COURT
11            CENTRAL DISTRICT OF CALIFORNIA
                 LOS ANGELES DIVISION
12

13 | FOREMOST GROUPS, INC. f/k/a    | Case No. 2:14-cv-00188 SVW (RZx) |
   | FOREMOST INTERNATIONAL         | Hon. Stephen V. Wilson           |
14 | TRADING CO., INC.,             | Courtroom 6                      |

15              Plaintiff,

16      vs.

17 TANGSHAN AYERS BATH
   EQUIPMENT CO., LTD.,
18
              Defendant.
19
   In re:                          Case No.: 2:13-bk-17409-RK
20
                                   Chapter 7
21 AYERS BATH (U.S.A.) CO., LTD.,
                                   **TANGSHAN AYERS BATH EQUIPMENT CO.'S**
22      Debtor.                    **OPPOSITION TO THE RENEWED MOTION OF**
                                   **FOREMOST GROUPS, INC. TO AMEND THE**
23                                 **JUDGMENT OF THE BANKRUPTCY COURT**
                                   **TO ADD TANGSHAN AYERS BATH**
24                                 **EQUIPMENT CO. LTD. AS JUDGMENT**
                                   **DEBTOR**
25
                                   **Hearing: January 24, 2018 at 2:00 p.m.,**
26                                 **Place: Courtroom 1675**
                                   **Docket No. 118**
27

28

                                                      CASE NO. 2:13-bk-17409-RK

# TABLE OF CONTENTS

**Page**

I.   Preliminary Statement ...................................................................................................1

II.  Counterstatement Of Facts ...........................................................................................3

    A.   The Ayers Bath Litigation ...................................................................................3

    B.   The Bankruptcy Proceedings...............................................................................4

    C.   The Tangshan Litigation......................................................................................5

III. Legal Standard...............................................................................................................6

IV.  Argument .......................................................................................................................7

    A.   Enforcement Of The Unopposed Proof Of Claim
        Against Tangshan Would Violate Due Process.....................................................7

        1.   Default Judgments Cannot Be Amended To Add New Debtors....................7

        2.   Judgments Cannot Be Amended To Add New Debtors
            Whose Interests Were Not Aligned With The Original Defendant................9

        3.   Tangshan Did Not "Control" The Defense
            (Or Lack Thereof) To Foremost's Proof Of Claim .......................................10

    B.   Enforcement Of The Unopposed Proof Of Claim
        Against Tangshan Is Barred By Equitable Estoppel .................................................11

    C.   Foremost Has Failed To Demonstrate That
        Tangshan Is An Alter Ego Of The Debtor............................................................13

        1.   Foremost Fails To Establish That Tangshan And The
            Debtor Had A "Unity Of Interest"................................................................13

        2.   Foremost Fails To Establish The Requisite "Inequitable Result"
            From Treating Tangshan And Ayers Bath As Separate Entities...................17

    D.   Foremost Is Not Entitled To Discovery...............................................................18

V.   Conclusion....................................................................................................................19

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

21st Century Fin. Servs., LLC v. Manchester Fin. Bank,
    255 F. Supp. 3d 1012 (S.D. Cal. 2017) ..........................................................................9, 18

5

Calvin Brian Int'l Co. v. Gustto, Inc.,
6     No. 3:13-cv-0218, 2014 WL 3548143 (S.D. Cal. July 17, 2014) ......................................8

7

Carlesimo v. Schwebel,
    87 Cal. App. 2d 482, 197 P.2d 167 (Cal. Dist. Ct. App. First Dist. 1948)...................16

8

Dixon v. Wallow City,
9     336 F.3d 1013 (9th Cir. 2003) ..........................................................................................11

10

Dole Food Co. v. Patrickson,
    538 U.S. 468 (2003) ...........................................................................................................7

11

Eldorado Stone, LLC v. Renaissance Stone, Inc.,
12     2009 WL 347005 (S.D. Cal. Feb. 5, 2009) ...............................................................6, 10

13

Flores v. DDJ, Inc.,
    No. 1:99 CV 5878 AWI DLB, 2007 WL 4269259 (E.D. Cal. Nov. 28, 2007)............16

14

Gisinger v. Patriach,
15     16 Civ. 1564 (ER), 16 Civ. 1596 (ER), 16 Civ. 2831 (ER),
    2016 WL 6083981 (S.D.N.Y. Oct. 18, 2016) ...............................................................12

16

Gottlieb v. Kest,
17     141 Cal. App. 4th 110, 46 Cal. Rptr. 3d 7 (Cal. Ct. App. Second Dist. 2006) ...........9

18

Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.,
    328 F.3d 1122 (9th Cir. 2003)..........................................................................................14

19

In re Dinoto,
20     576 B.R. 835 (E.D. Mich. 2017) .....................................................................................10

21

In re Jenkins Landscaping & Excavating, Inc.,
    93 B.R. 84 (W.D. Va. 1988)............................................................................................12

22

In re Lahijani,
23     No. SV 98–15561 GM2005 WL 4658490 (Bankr. C.D. Cal. Oct. 3, 2005) ..............12

24

In re Lona,
    393 B.R. 1 (N.D. Cal. 2008)............................................................................................10

25

In re Owner Management Service, LLC Trustee Corps,
26     530 B.R. 711 (Bankr. C.D. Cal 2015) ...........................................................................12

27

In re Transcolor Corp.,
    296 B.R. 343 (Bankr. D. Md. 2003)...............................................................................12

28

*In re Willard*,
240 B.R. 664 (Bankr. D. Conn. 1999)...............................................................................10

*Inst. of Veterinary Pathology, Inc. v. Cal. Health Lab., Inc.*,
116 Cal. App. 3d 111, 172 Cal. Rptr. 74 (Cal. Ct. App. Fourth Dist. 1981).........................13, 14

*Jines v. Abarbanel*,
77 Cal. App. 3d 702, 143 Cal. Rptr. 818 (Cal. Ct. App. Second Dist. 1978)........................11

Katzir's Floor & Home Design, Inc. v. M-MLS.com,
394 F.3d 1143 (9th Cir. 2004)............................................................................6, 8, 11

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
235 Cal. App. 3d 1220, 1 Cal. Rptr. 2d 301 (Cal. Ct. App. Second Dist. 1991)...................2, 7

*Mid-Century Ins. Co. v. Gardner*,
9 Cal. App. 4th 1205 (Cal. Ct. App. Third Dist. 1992) ...............................13, 15, 16, 17

*Minton v. Cavaney*,
56 Cal. 2d 576 (1961)...........................................................................................8, 11

*Motores De Mexicali, S.A. v. Superior Court*,
51 Cal. 2d 172, 331 P.2d 1 (1952)...........................................................................7, 8

*Nat'l Cont'l Ins. Co. v. Swift Trucking USA, Inc.*,
No. A131588, 2012 WL 590588 (Cal. Ct. App. Feb. 22, 2012) ....................................8

*NEC Elecs. Inc. v. Hurt*,
208 Cal. App. 3d 772, 256 Cal. Rptr. 441 (Cal. Ct. App. Sixth Dist. 1989)....................*passim*

*Payoda, Inc. v. Photon Infotech, Inc.*,
Case No. 14-cv-04103, 2015 WL 4593911 (N.D. Cal. July 30, 2015) .........................14

*Petersen v. California Cove Communities, Inc.*,
No. E047497, 2010 WL 673204 (Cal. Ct. App. Fourth Dist. Feb. 25, 2010) ................9

*Shahedi v. Trimble*,
No. H040809, 2015 WL 1393315 (Cal. Ct. App. Sixth Dist. Mar. 26, 2015) ...............8

*Sonora Diamond Corp. v. Super. Ct.*,
83 Cal. App. 4th 523, 99 Cal. Rptr. 2d 824 (Cal. Ct. App. Fifth Dist. 2000) ...............*passim*

*Triplett v. Farmers Ins. Exch.*,
24 Cal. App. 4th 1415, 29 Cal. Rptr. 2d 741 (Cal. Ct. App. Fourth Dist. 1994)..............6

*United States v. Bestfoods*,
524 U.S. 51 (1998) ...........................................................................................15

*Wade v. Forest Villa Home Owners Assoc.*,
BAP No. NC-14-1562, 2015 WL 7281670 (9th Cir. BAP Nov. 17, 2015),
*aff'd* 671 Fed. App'x 689 (9th Cir. 2016)..............................................................10

*Wolf Metals Inc. v. Rand Pacific Sales*,
4 Cal. App. 5th 698, 209 Cal. Rptr. 3d 198 (Cal. Ct. App. Second Dist. 2016) ............7

*Wollersheim v. Church of Scientology*,
    69 Cal. App. 4th 1012, 81 Cal. Rptr. 2d 896 (Cal. Ct. App. Second Dist. 1999) .........................6

**Statutes**

11 U.S.C. § 502 ........................................................................................................................10

28 U.S.C. § 157 ..........................................................................................................................6

California Code of Civil Procedure § 187 ............................................................... *passim*

Fed. R. Bankr. P. 7069 ...............................................................................................................2

Fed. R. Civ. P. 69(a) ..................................................................................................................2

**Treatises**

William E. Wegner, *et al.*,
    *Post Trial Motions*, Cal. Prac. Guide Civ. Trials & Ev. Ch. 18-C (Sept. 2017) .........................11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Tangshan Ayers Bath Equipment Co., Ltd. ("**Tangshan**"), by and through its undersigned counsel, respectfully submits this opposition to the renewed motion of Foremost Groups, Inc. ("**Foremost**") ("**Motion**" or "**Mot**") (Dkt. 118) to amend Foremost's unopposed proof of claim, which was allowed by this Court against Ayers Bath (U.S.A.) Co., Ltd. ("**Ayers Bath**" or the "**Debtor**") (Dkt. 119-7), by adding Tangshan as a judgment debtor.[1]

## I.    PRELIMINARY STATEMENT

1.    Foremost's Motion should be denied without discovery or further proceedings. The Motion is meritless for several reasons.  *First*, the relief it seeks is barred by due process concerns. Foremost's unopposed proof of claim was the equivalent of a default judgment, which, under settled law, may not be enforced against a new defendant.[2]  Tangshan could not "control the litigation," as due process requires, because there was none—neither the Chapter 7 trustee (the "**Trustee**") nor anyone else opposed Foremost's proof of claim on behalf of the virtually assetless Debtor.[3]  Foremost thus cannot show that the underlying proof of claim was "fully and fairly tried"—a prerequisite to enforcing it against Tangshan.[4]

2.    Due process also precludes enforcement of Foremost's allowed claim against Tangshan because, under settled law, Tangshan's interests were not aligned with those of the insolvent, non-operating Debtor.  Foremost's unproved, unelaborated proof of claim for over $5 million may as well have been for $5 billion, because neither the Debtor nor the Trustee had any interest in defending against a claim that the Debtor had no assets to pay.[5]  Permitting Foremost

---

[1] Accompanying Tangshan's opposition are the Declarations of Xing Jingrong ("**Xing Dec.**"), Yang Chun ("**Yang Dec.**") and Carl W. Oberdier ("**Oberdier Dec.**").

[2] Indeed, the allowed proof of claim involved even less procedural protection than a default judgment, since Foremost was not required to offer proof of its claimed damages.

[3] *See NEC Elecs. Inc. v. Hurt*, 208 Cal. App. 3d 772, 778-79, 256 Cal. Rptr. 441 (Cal. Ct. App. Sixth Dist. 1989) (the alleged alter ego must have had "control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability involved.").

[4] *NEC*, 208 Cal. App. 3d at 780-81, 256 Cal. Rptr. 441.

[5] As explained below, the Debtor did not even have standing to oppose Foremost's proof of claim, nor, obviously, did Tangshan on the Debtor's behalf.

now to enforce that claim against the Debtor's solvent parent would give it an unjustifiable

windfall.

3.    **Second**, Foremost is barred by equitable estoppel from enforcing the allowed proof

of claim against Tangshan.  A judgment cannot be enforced against a new entity on an alter ego

theory when, as here, the plaintiff knew of the facts on which its alter ego claim is based before the

judgment was entered, yet declined to assert its claim until after the judgment was secured.  By

Foremost's own admission, it learned of all the facts on which it relies in its Motion no later than

November 13, 2013, when it conducted a Rule 2004 examination of two of the Debtor's former

representatives.  Yet, when Foremost filed its proof of claim against the Debtor a month later, it

made no mention of Tangshan whatsoever.  Foremost could have filed an adversary proceeding

naming Tangshan and the Debtor as defendants, but chose for tactical reasons to assert a claim only

against the Debtor.

4.    **Third**, Foremost has not in any event submitted admissible evidence sufficient to

establish alter ego liability under California Code of Civil Procedure § 187 ("Section 187").[6]

Putting aside the unsupported speculation in its Motion, Foremost has submitted no evidence

showing either that there was a "such unity of interest and ownership [between Tangshan and the

Debtor] that their "separate personalities . . . no longer exist," or that an "inequitable result" would

follow from treating them as separate entities.[7] The commonplace intercorporate connections

between Tangshan and the Debtor that Foremost alleges are insufficient as a matter of law to

establish alter ego liability, and Foremost's more serious charge that Tangshan "looted" the Debtor

before causing it to file for bankruptcy is false, entirely conjectural, and unsupported by any

---

[6] Tangshan agrees that federal courts in California may apply Section 187 pursuant to Fed. R. Civ. P. 69(a).  (*See* Mot. [¶¶ 74-75)  Tangshan does not agree that Rule 7069 of the Federal Rules of Bankruptcy Procedure applies (*see id*. at p. 1), because the question presented in Foremost's Motion is whether the United States District Court for the District of Central California (the "**District Court**"), which referred this case for proposed findings, may amend Foremost's proof of claim, not whether this Court itself may do so.

[7] *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249, 1 Cal. Rptr. 2d 301 (Cal. Ct. App. Second Dist. 1991).

evidence. Foremost is merely an "unsatisfied creditor" asserting a meritless alter ego claim in an effort to recover from an innocent third party.[8]

5.      Further discovery will not bear on the due process and equitable bars to Foremost's Motion. Moreover, Foremost has not produced sufficient *prima facie* evidence of an alter ego relationship to entitle it to further discovery on that issue. Accordingly, this Court should entered a proposed decision for review by the District Court denying Foremost's Motion with prejudice, without discovery or further proceedings.

## II.    COUNTERSTATEMENT OF FACTS

### A.    The Ayers Bath Litigation

6.      On September 12, 2011, Foremost filed a Complaint for tortious interference against Ayers Bath in the United States District Court for the Central District of California, Case No. 2:11-cv-07473-GAF-E (the "**Ayers Bath Litigation**"). Foremost claimed that Ayers Bath was selling bathroom ceramics manufactured by its grandparent corporation, Tangshan Huida Ceramic Group Co., Ltd. ("**Huida**"), in violation of Foremost's exclusive distribution rights under its contract with Huida. (*See* Docket 119-7 at Ex. A (Foremost's Complaint) ¶¶ 11-12, 64; Xing Dec. ¶ 4 & Ex. A (Agreement for Cooperation, dated as of October 20, 2000, between Foremost and Huida)) Foremost then sought a preliminary injunction against Ayers Bath, which the District Court issued on December 20, 2011.[9]

---

[8] *See Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 539, 99 Cal. Rptr. 2d 824 (Cal. Ct. App. Fifth Dist. 2000) (alter-ego doctrine "does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form.")

[9] Foremost's current claim against Tangshan is its latest tactic in a seven-year campaign to litigate by proxy its contract claim against Huida without complying with the parties' arbitration agreement. Foremost's claim is that Ayers Bath sold bathroom ceramics manufactured by *Huida* (not Tangshan Ayers) in violation of Foremost's exclusive distribution agreement with *Huida* for such products. (*See* Docket 119-7 (Foremost's proof of claim) at, *e.g.*, Ex. A ¶¶ 11-12, 64) Foremost itself has admitted that its claim is actually against Huida, alleging that "Ayers [Bath] was the vehicle through which *Huida* sought to circumvent its contractual obligations." (Oberdier Dec. ¶ 2 & Ex. A at 11 (emphasis added)) Yet, Foremost has avoided asserting any claim against Huida, because, under their contract, such claim would be arbitrable before the CITEAC Shenzhen sub-Commission in China. (*See* Xing Dec. ¶ 4 & Ex. A ¶ 13)

7.      The preliminary injunction terminated Ayers Bath's only source of revenue, although it continued to incur expenses such as rent, legal expenses, salaries, and payments for inventory previously purchased.  (Yang Dec. ¶ 10)

**B.      The Bankruptcy Proceedings**

8.      On March 22, 2013, Ayers Bath filed a Voluntary Petition in accordance with Chapter 7 of the Bankruptcy Code.  (*See* Dkt. 1)  The Chapter 7 Trustee was then appointed. Foremost misleadingly claims, without any supporting evidence, that the Debtor's petition was signed by "Junkuan Yao, who is Sales Manager of Tangshan Ayers." (Mot. ¶ 39) As the petition clearly states, Mr. Yao was the President of the Debtor.  Indeed, Foremost previously admitted that the bankruptcy petition was signed by Junkuan Yao," "the officer *of the Debtor*."  (Dkt. 20-7 ¶ 39 (emphasis added))  Neither Mr. Yao nor any other officer or employee of the Debtor held any position with Tangshan during the time they were employed by the Debtor.  (Yang Dec. ¶ 7)[10]

9.      The Debtor filed an original and amended Schedule "F" (*see* Dkts. 1 & 15), both listing Foremost's claims in the Ayers Bath Litigation, with amount "unknown," as "disputed."

10.      Foremost conducted a Bankruptcy Rule 2004 examination of two former officers of the Debtor on November 13, 2013.  While Foremost claims that this examination "revealed, for the first time, the grossly inadequate capitalization of Ayers Bath and a significant overlap of directors and officers" (Mot. ¶ 46), Foremost provides no support for those allegations, and they are flatly untrue.  Foremost provides no explanation or evidence showing that the Debtor's start-up capital of $200,000 in 2010 was inadequate for its operating needs; Foremost merely observes that such amount was "grossly insufficient" to satisfy Foremost's inflated, uncorroborated claim for over $5 million over three years later.  In fact, the Debtor's start-up capital was easily sufficient to meet its operating needs until its source of revenue was eliminated by Foremost's preliminary injunction in December 2013.  (Yang Dec. ¶ 10)  And, while (as is commonplace for wholly owned subsidiaries)

---

[10]Similarly, Foremost misleadingly describes the Debtors' representatives in the Bankruptcy Rule 2004 examination as "officers of Ayers Bath who are also employees of Tangshan Ayers." (Mot. ¶ 44) As these witnesses testified, they were no longer employed by the Debtor as of the date of the Rule 2004 examination (because it no longer existed as an operating entity).  They were never simultaneously employed by both the Debtor and Tangshan.  (Yang Dec. ¶ 7)

1    certain of the Debtor's directors were employees of Tangshan, the two companies never had any

2    overlapping officers or employees.  (Yang Dec. ¶ 7)  The testimony in the Rule 2004 examination

3    did not suggest otherwise.

4            11.    On December 9, 2013—four weeks after the Rule 2004 examination—Foremost

5    filed a general unsecured proof of claim against the Debtor in the amount of $5,265,000.00.  (Dkt.

6    119-7)  The proof of claim attached a copy of Foremost's complaint in the Ayers Bath Litigation,

7    but made no mention whatsoever of Tangshan.  Nothing in Foremost's proof of claim suggested

8    that Foremost believed, or intended to claim, that Tangshan should be added as an additional

9    debtor liable for Foremost's proof of claim.  In neither the Ayers Bath Litigation nor any other

10    proceeding did Foremost ever submit proof quantifying or supporting the $5,265,000.00 in

11    damages set forth in its proof of claim.

12            12.    With no incentive to file an objection to Foremost's claim, in a case with few assets

13    and, despite the fact Foremost's claim was scheduled in the Debtor's schedules as disputed, the

14    Trustee filed no objection to Foremost's claim, and the uncontested claim was deemed allowed.

15    (Dkts. 50 & 58)  Foremost was paid $7,757.24 on its $5,265,000 claim.  (*Id.*)

16            13.    The bankruptcy case was then closed on July 27, 2015.  (Dkt. 59).

17    **C.    The Tangshan Litigation**

18            14.    On January 9, 2014, Foremost commenced a litigation against Tangshan in the

19    District Court, Case No. 2:14-cv-00188-SVW-RZ (the "**Tangshan Litigation**").  (*See* Oberdier

20    Dec. ¶ 2 & Ex. B (Foremost's complaint)).  Foremost asserted claims for tortious interference and

21    unfair competition similar to those asserted in the Ayers Bath Litigation, claiming that Tangshan

22    was Ayers Bath's alter ego responsible for its conduct.  However, Foremost's complaint did not

23    even mention its proof of claim in the bankruptcy or suggest that it sought to enforce that proof of

24    claim against Tangshan without proving its underlying claims on the merits.

25            15.    In an order dated October 28, 2015, the District Court dismissed Foremost's

26    complaint with leave to replead.  (Oberdier Dec. ¶ 2 & Ex. C)

27            16.    On November 17, 2015, Foremost filed its First Amended Complaint in the

28    Tangshan Litigation.  (Oberdier Dec. ¶ 2 & Ex. D)  Only then, after the bankruptcy case was closed

1    and Foremost's proof of claim deemed allowed, did Foremost assert for the first time that it had the

2    right to enforce its proof of claim as a judgment against Tangshan.

3           17.    On January 6, 2016, the District Court issued an order dismissing Foremost's First

4    Amended Complaint, again with leave to replead.  Foremost filed its Second Amended Complaint

5    on January 25, 2016, asserting a single cause of action to enforce the allowed proof of claim

6    against Tangshan.  (Oberdier Dec. ¶ 2 & Ex. E)

7           18.    On November 1, 2017, the District Court issued an order referring the case to this

8    Court for proposed findings of fact and conclusions of law under 28 U.S.C. § 157.  Foremost filed

9    its Motion in accordance with that order on December 14, 2017.

10    ### III.    LEGAL STANDARD

11           19.    "The ability under [S]ection 187 to amend a judgment to add a defendant, thereby

12    imposing liability on the new defendant without trial, requires both (1) that the new party be the

13    alter ego of the old party and (2) that the new party had controlled the litigation, thereby having

14    had the opportunity to litigate, in order to satisfy due process concerns." *Triplett v. Farmers Ins.*

15    *Exch.*, 24 Cal. App. 4th 1415, 1421, 29 Cal. Rptr. 2d 741 (Cal. Ct. App. Fourth Dist. 1994).  The

16    party seeking to amend the judgment to add an additional debtor bears the burden of proof by a

17    preponderance of the evidence.  *Wollersheim v. Church of Scientology*, 69 Cal. App. 4th 1012,

18    1018, 81 Cal. Rptr. 2d 896 (Cal. Ct. App. Second Dist. 1999).

19           20.    A motion to amend a judgment to name an additional judgment debtor is not an

20    action at law, it is "an equitable procedure [] based on the theory that the court is not amending the

21    judgment to add a new defendant but is merely inserting the correct name of the real defendant."

22    *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, 2009 WL 347005, at *2 (S.D. Cal. Feb. 5, 2009).

23    This premise ensures that "adding a party to the judgment after the fact does not present due

24    process concerns." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148-49

25    (9th Cir. 2004).  Accordingly, a court cannot bind an additional party to a judgment unless that

26    party, "personally or through a representative, had control of the litigation and occasion to conduct

27    it with a diligence corresponding to the risk of personal liability that was involved." *NEC*, 208 Cal.

28    App. 3d at 778-79.  "The due process considerations are in addition to, ***not in lieu of***, the threshold

alter ego issues." *Wolf Metals Inc. v. Rand Pacific Sales*, 4 Cal. App. 5th 698, 703, 209 Cal. Rptr. 3d 198 (Cal. Ct. App. Second Dist. 2016) (emphasis in original).

21.    If these due process requirements are satisfied, to prove alter ego liability, the creditor must demonstrate "(1) that there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Las Palmas*, 235 Cal. App. 3d at 1249, 1 Cal. Rptr. 2d 301.  "Alter ego is an extreme remedy, sparingly used." *Sonora Diamond*, 83 Cal. App. 4th at 539, 99 Cal. Rptr. 2d 824; *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances.").  The alter-ego doctrine "does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Sonora Diamond*, 83 Cal.App.4th at 539, 99 Cal.Rptr.2d 824.

## IV.    ARGUMENT

### A.    Enforcement Of The Unopposed Proof Of Claim Against Tangshan Would Violate Due Process

#### 1.    Default Judgments Cannot Be Amended To Add New Debtors

22.    Foremost's unopposed proof of claim, the merits of which were never litigated, and the amount of which was not even supported by any explanation or evidence, cannot be enforced against Tangshan consistent with due process.  Judgments cannot be amended to add new judgment debtors unless there was an "active defense of the underlying claim" by the original defendant such that it was "fully and fairly tried."  *NEC*, 208 Cal. App. 3d at 780, 256 Cal. Rptr. at 445 (due process barred amendment of judgment against appearing corporate defendant to add its shareholder, because defendant had not appeared at trial); *Motores De Mexicali, S.A. v. Superior Court*, 51 Cal. 2d 172, 173-76, 331 P.2d 1 (1952) (Judgments obtained by default cannot be amended to add alleged alter egos, because adding parties to a judgment "without allowing them to litigate questions beyond their relation to the allegedly alter ego corporation would patently violate [the] constitutional safeguard [of due process]."); *Wolf Metals*, 4 Cal. App. 5th at 703, 209 Cal. Rptr. 3d at 202 (alleged alter ego was improperly added as judgment debtor where judgment

1   defendant "offered no evidence-based defense in the underlying action, and the judgment against

2   [it] was entered by default"); *Shahedi v. Trimble*, No. H040809, 2015 WL 1393315, at *2 (Cal. Ct.

3   App. Sixth Dist. Mar. 26, 2015) ("Even where there is no apparent difference in interests between

4   the corporation and the alleged alter ego individual, under *Motores* adding an alter ego judgment

5   debtor to a default judgment is inconsistent with basic notions of due process").

6         23.    Foremost does not dispute that its unopposed proof of claim is akin to a default

7   judgment.  (*See* Mot. ¶ 84) In any event, Section 187's requirement of an "active defense" of a

8   "fully and fairly tried" claim precludes amendment of any judgment arising from an uncontested

9   claim, even if not technically a "default judgment."  *See*, *e.g*., *NEC*, 208 Cal. App. 3d at 780, 256

10  Cal. Rptr. at 445; *Katzir's Floor & Home*, 394 F.3d at 1150 (Section 187 could not apply because

11  the named defendant did not appear at trial, although it had filed an answer and initially defended

12  the lawsuit); *Minton v. Cavaney*, 56 Cal. 2d 576, 581 (1961) (same); *Nat'l Cont'l Ins. Co. v. Swift

13  Trucking USA, Inc.*, No. A131588, 2012 WL 590588, at *5 (Cal. Ct. App. Feb. 22, 2012) (Section

14  187 could not apply because judgment was entered on uncontested summary judgment motion).

15        24.    Ignoring these controlling authorities, Foremost cites only a single unpublished case

16  applying Section 187 in unusual circumstances to a default judgment.  (Mot. ¶ 84 (citing *Calvin

17  Brian Int'l Co. v. Gustto, Inc.*, No. 3:13-cv-0218, 2014 WL 3548143, at *1, 4 (S.D. Cal. July 17,

18  2014))) In *Calvin*, the motion to amend the judgment was ***itself*** unopposed by the alleged alter ego,

19  despite adequate notice. The alter ego—the individual sole owner of the corporate defendant—had

20  actively participated in the lawsuit by submitting a declaration and appearing at hearings on behalf

21  of the defendant.  The Court found that she had sufficient notice, "at a minimum, to oppose

22  Plaintiff's instant request to add [her] as a judgment debtor," but instead was actively attempting to

23  evade execution of the judgment on her corporation. *Calvin*, 2014 WL 3548143, at *4.  None of the

24  factors on which the Court relied in *Calvin* are present here, and, to the extent the Court (without

25  the benefit of briefing from the alter ego defendant) failed to apply properly the prohibition against

26  applying Section 187 to default judgments, its decision is not controlling.

27

28

**2.    Judgments Cannot Be Amended To Add New Debtors
Whose Interests Were Not Aligned With The Original Defendant**

25.    Due process also precludes enforcement of Foremost's proof of claim against

Tangshan, because Tangshan's interests were not, and could not be, adequately represented by the

Debtor.  *See Petersen v. California Cove Communities, Inc*., No. E047497, 2010 WL 673204, at *6

(Cal. Ct. App. Fourth Dist. Feb. 25, 2010) ("the interests of the alter ego and the original judgment

debtor must have substantially coincided. Otherwise, it cannot be said that the alter ego was

'virtually represented' in the litigation, even if the alter ego controlled that litigation on behalf of

the original judgment debtor" (citing *NEC*, 208 Cal. App. 3d at 780, 256 Cal. Rptr. at 445)).

26.    By the time Foremost filed its proof of claim, the Debtor no longer existed as a

functioning entity, and, with liabilities far exceeding its assets, it had neither the means nor any

reason to contest Foremost's claim.  Tangshan, by contrast, had a significant interest in contesting a

$5.25 million claim capable of being enforced against it.  This divergence of economic interests

between solvent and insolvent affiliates precludes application of Section 187.  *See NEC*, 256 Cal.

Rptr. at 445 (amendment "improper" because the corporation "was on the verge of bankruptcy"

and "simply had no incentive to defend the [underlying] lawsuit" and thus the interests of the

alleged alter ego and the corporation "were not the same"); *21st Century Fin. Servs., LLC v.

Manchester Fin. Bank*, 255 F. Supp. 3d 1012, 1035 (S.D. Cal. 2017) (denying motion to add alter

ego as judgment debtor because alleged alter ego's "interests do not appear to have been aligned

with the [named defendant]," such that the alter ego "had [no] occasion to conduct the arbitration

'with a diligence corresponding to the risk' involved" (citation omitted)); *Gottlieb v. Kest*, 141 Cal.

App. 4th 110, 153, 46 Cal. Rptr. 3d 7, 37–38 (Cal. Ct. App. Second Dist. 2006) (where defendant

companies were created for a specific project that was subsequently lost, could not afford counsel,

and had no assets, the alleged alter ego "had no motive or incentive to defend the claims against

them, and the companies [conduct in the underlying litigation] did not adequately represent his

interests").

**3.    Tangshan Did Not "Control" The Defense
(Or Lack Thereof) To Foremost's Proof Of Claim**

27.    In any event, the evidence demonstrates that Tangshan did not control the defense

against Foremost's proof of claim—including the decision not to oppose it—as due process

requires.  That decision belonged exclusively to the Trustee, and the Debtor (or Tangshan on the

Debtor's behalf) had no standing to object. *See* 11 U.S.C. § 502, *In re Lona*, 393 B.R. 1, 3-4 (N.D.

Cal. 2008) (a chapter 7 debtor generally does not have standing to object to claims because the

debtor has no interest in the distribution of assets of the estate and is therefore not an "aggrieved

person" (citing *In re Willard*, 240 B.R. 664, 668 (Bankr. D. Conn. 1999)).  "[D]ebtors only have

standing to object to claims where there is a 'sufficient possibility' of a surplus to give them a

pecuniary interest."  *Wade v. Forest Villa Home Owners Assoc.*, BAP No. NC-14-1562, 2015 WL

7281670, at *4 (9th Cir. BAP Nov. 17, 2015) (collecting cases), *aff'd* 671 Fed. App'x 689 (9th Cir.

2016).

28.    The Trustee made clear that there was no possibility whatsoever of such a surplus.

After payment of administrative expenses, the estate was left with only $7,757.24 in assets.  (Dkt.

50 at p. 2, 9; Mot. ¶ 52)  There was no reasonable expectation that the costs necessary to oppose

Foremost's proof of claim and administer the Debtor's estate would have been less than that

amount.  *See*, *e.g.*, *In re Dinoto*, 576 B.R. 835, 838 (E.D. Mich. 2017) (debtor lacked standing to

object to proof of claim constituting 97% of total claims against the estate because the remaining

3% ($27,700.49) was likely to be used to account for administrative expenses).

29.    Foremost never alleges that Tangshan was even aware of Foremost's proof of claim.

Instead, Foremost alleges (incorrectly) only that Tangshan caused Ayers Bath to file for

bankruptcy, that its executive signed the bankruptcy petition, that it procured witnesses for the Rule

2004 examination, and that it shared the same counsel as Ayers Bath.  (*See* Mot. ¶ 83) Such

allegations, even if true, would be patently insufficient to prove Tangshan's control over the

defense to Foremost's claim.  *See, e.g., Eldorado*, 2009 WL 347005, at *3-4 (S.D. Cal. Feb. 5,

2009) (alleged alter-ego's attendance at depositions and trial proceedings, payment of significant

legal expenses, active participation in settlement conferences, and admission that he was "in the

driver's seat on settlement talks" was "insufficient evidence" of control); *NEC*, 208 Cal. App. 3d at

- 10 -

781 (insufficient evidence of "control" over the defense of the litigation despite "substantial

evidence" of alter-ego status, and alter-ego's actual knowledge of the action and ensuing attempts

to satisfy creditors); *Katzir's Floor*, 394 F.3d at 1147-50 ("it would be error to find that the sole

shareholder and officer received adequate due process solely by the evidence of his retention of

attorneys for the corporation, financing of the litigation, and appearance at settlement

conferences."); *Minton*, 56 Cal. 2d at 581–82, 364 P.2d at 476 ("It is not sufficient [for Section

187] that the putative alter-ego defendant supplie[d] the funds for the prosecution or defense, that

he appear[ed] as a witness or cooperates without having control.").

**B.    Enforcement Of The Unopposed Proof Of Claim
Against Tangshan Is Barred By Equitable Estoppel**

30.    Enforcement of Foremost's proof of claim against Tangshan is also barred by

Foremost's concession that it learned of the facts on which it bases its alter-ego claim prior to filing

its proof of claim. Amendment of a judgment under Section 187 is barred if the creditor was aware

of the alleged alter ego relationship prior to the entry of judgment. *Jines v. Abarbanel*, 77 Cal. App.

3d 702, 717, 143 Cal. Rptr. 818 (Cal. Ct. App. Second Dist. 1978). *See also Dixon v. Wallow City*,

336 F.3d 1013, 1022 (9th Cir. 2003) (amendment of a judgment to add an alleged alter ego requires

the movant to demonstrate "that the evidence [of the alter ego relationship] could not have been

discovered earlier through due diligence."); William E. Wegner, *et al*., *Post Trial Motions*, Cal.

Prac. Guide Civ. Trials & Ev. Ch. 18-C (Sept. 2017) ("denial of motion to amend judgment is a

"real possibility where counsel has failed to conduct ***reasonable discovery*** as to the identity of

other possible defendants; . . . "[and if] proper [alleged elter-ego] defendants surface for the first

time during trial, plaintiffs should ***immediately*** seek leave to ***amend the complaint*** to name them"

(emphasis in original)).

31.    Foremost concedes that it learned all the facts supporting its alter ego claim no later

than its Rule 2004 examination of the Debtor's representatives—four weeks before it filed its proof

of claim.  (*See*, *e.g*., Mot. ¶ 3 (Rule 2004 examination "revealed, for the first time, the grossly

inadequate capitalization of Ayers Bath and a significant overlap of directors and officers.")).[11]  Its

---

[11]In fact, Foremost made similar claims regarding the relationship between Ayers Bath and
Tangshan as early as November 2011.  In the Ayers Bath Litigation, Foremost submitted sworn

- 11 -

1    proof of claim, however, made no reference to Tangshan or any claim of alter-ego liability.  (*See*

2    Dkt. 119-7)

3        32.    Rather than filing its proof of claim solely against the Debtor, Foremost could have,

4    and should have, commenced an adversary proceeding in the bankruptcy asserting its claim against

5    both the Debtor and Tangshan, based on its alter ego theory.  *See, e.g.*, *In re Transcolor Corp.*, 296

6    B.R. 343 (Bankr. D. Md. 2003) (creditor of Chapter 7 debtor had standing to file adversary

7    proceeding against the debtor and its alter ego whose fraudulent misrepresentations on behalf of the

8    debtor caused injury to the plaintiff and gave rise to the claim); *Gisinger v. Patriach*,  16 Civ. 1564

9    (ER), 16 Civ. 1596 (ER), 16 Civ. 2831 (ER),  2016 WL 6083981 at *1, 4 (S.D.N.Y. Oct. 18, 2016)

10    (bankruptcy court had jurisdiction over employees' claims against Chapter 7 debtor and its non-

11    debtor controlling persons for noncompliance with federal and state Worker Adjustment and

12    Retraining Notification ("**WARN**") Acts); *In re Jenkins Landscaping & Excavating, Inc.*, 93 B.R.

13    84, 88 (W.D. Va. 1988) (creditor commenced adversary proceeding against debtor and its non-

14    debtor affiliates; court held that affiliate was the alter ego of debtor and was required to turn over

15    its property and assets to debtor to satisfy creditors).  The District Court's referral order

16    determining that Foremost's claim against Tangshan is a non-core matter related to the Debtor's

17    bankruptcy proceeding, which this Court is empowered to adjudicated (Dkt. 100), confirms that

18    Foremost could have asserted its claims against Tangshan in a proceeding before this Court in the

19    first instance.[12]

20

21

22

23    statements claiming that Tangshan and Ayers Bath were not "separate and distinct" corporate
       entities, based on Tangshan's 100% ownership of Ayers Bath, "overlapp[ing]" "principals,"

24    shared employees, and marketing materials describing the parties' corporate structure.  (*See*
       Oberdier Dec. ¶ 2 & Ex. A)

25    [12]Alternatively, Foremost could have sought a lifting of the automatic stay for the purpose
       litigating its claims relating to Tangshan in the Ayers Bath litigation.  It also could have moved

26    for substantive consolidation of Tangshan with the Debtor. *See, e.g.*, *In re Lahijani*, No. SV 98–
       15561 GM2005 WL 4658490 at *4, 10 (Bankr. C.D. Cal. Oct. 3, 2005) (granting creditor's

27    motion to substantively consolidate the Chapter 7 debtor with its two alleged alter egos); *In re
       Owner Management Service, LLC Trustee Corps*, 530 B.R. 711, 742 (Bankr. C.D. Cal 2015)

28    (granting creditor's motion to substantively consolidate the Chapter 7 debtor with several
       corporate and individual defendants that the Court found constituted a "single enterprise").

33.    Foremost's tactical decision to obtain an uncontested proof of claim solely against

the Debtor, rather than litigate its substantive claims against the Debtor and Tangshan together,

estops its enforcement of the allowed proof of claim against Tangshan under Section 187.

**C.    Foremost Has Failed To Demonstrate That Tangshan Is An Alter Ego Of The Debtor**

    **1.    Foremost Fails To Establish That Tangshan And The
Debtor Formed a "Single Enterprise" With A "Unity Of Interest"**

34.    Foremost establishes neither the "unity of interest" between Tangshan and THE

Debtor nor the "inequitable result" necessary to sustain its alter-ego claim.  In order to establish a

"unity of interest," Foremost must submit evidence of "specific manipulative conduct" by

Tangshan toward the Debtor such that the Debtor was "merely [its] instrumentality, agency,

conduit or adjunct." *Inst. of Veterinary Pathology, Inc. v. Cal. Health Lab., Inc.*, 116 Cal. App. 3d

111, 119-120, 172 Cal. Rptr. 74 (Cal. Ct. App. Fourth Dist. 1981).  Foremost fails to submit any

such evidence.  Indeed, after citing the sixteen factors that courts consider in determining whether

the "unity of interest" requirement is satisfied, Foremost fails to address ten of them. (*See* Mot. ¶

78 (quoting *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213 n.3 (Cal. Ct. App. Third

Dist. 1992)**Error! Bookmark not defined.**).  Foremost fails to allege that any of the following

*Mid-Century* factors is satisfied:

    a.    the commingling of funds and other assets,[13]

    b.    the failure to segregate funds of the individual and the corporation,

    c.    the failure to seek authority to issue stock or issue stock under existing

        authorization,

    d.    the representation by an individual that he is personally liable for corporate

        debts,

    e.    the failure to maintain adequate corporate minutes or records,

---

[13]Foremost's claim that Tangshan "looted" the Debtor before it filed for bankruptcy, in addition to being false and unsupported, is not the same as a claim that Tangshan and the Debtor commingled their funds in the ordinary course of their business.  In fact, the Debtor maintained its own bank accounts and financial records.  (Yang Dec. ¶ 9)  Arguably, Foremost's "looting" claim does bear on other *Mid-Century* factors; *i.e.*, the unauthorized diversion of corporate funds to other than corporate purposes; and the treatment by an individual of corporate assets as his own.

1    f.  the intermingling of the individual and corporate records,

2    g.  the use of a single address for the individual and the corporation,

3    h.  the use of the corporation as a mere conduit for an individual's business,[14]

4    i.  the concealment of the ownership of the corporation, and

5    j.  attempts to segregate liabilities to the corporation.

6  35.  At most, Foremost's evidence demonstrates only the existence of commonplace

7 "intercorporate connections" between Tangshan and Ayers Bath that are insufficient, as a matter of

8 law, to constitute a "unity of interest." *See Inst. of Veterinary Pathology*, 116 Cal. App. 3d at 119-

9 120, 172 Cal. Rptr. 74 (affirming dismissal of alter-ego claim against corporate parent as a matter

10 of law for lack of "direct evidence of [parent's] manipulative control" despite proof of 100%

11 ownership, overlapping directors and officers, issuance of consolidated financial statements, shared

12 possession of corporate records). Each of Foremost's allegations regarding the lack of separateness

13 between Tangshan and the Debtor is insufficient, for the following reasons:

14    a.  Tangshan's ownership of 100% of the shares of the Debtor (Mot. ¶ 79(a)) is

15      insufficient to establish alter ego liability. *See Payoda, Inc. v. Photon*

16      *Infotech, Inc.*, Case No. 14-cv-04103, 2015 WL 4593911, at *3 (N.D. Cal.

17      July 30, 2015) (granting motion to dismiss alter-ego claim because "a parent

18      and its subsidiary sharing offices and leadership, even where parent holds

19      100% stock ownership in subsidiary, is not sufficient to satisfy the unity of

20      interest test" (quoting *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell &*

21      *Clements, Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003))).

22    b.  Foremost's allegations regarding Tangshan's "dominat[ion] and control[]"

23      of the Debtor (Mot. ¶ 79(b)) are either conclusory and unsupported by

24

25

---

26 [14]Foremost's allegation that Tangshan "formed Ayers Bath for the sole purpose of selling products made or distributed by Tangshan Ayers, such as toilets, faucets and tiles, to the United States market" (Mot. ¶ 79(b)), even if true, would not satisfy the "mere conduit" factor. A

27 manufacturer's use of a distributor to sell its products, whether the distributor is independent or an affiliate, is not tantamount to a conflation of its identity with the distributor. The distributor

28 has a separate, unique function from that of the manufacturer.

admissible evidence, insufficient as a matter of law, or both, for the
following reasons:

   i.    Foremost's allegation that Tangshan formed Ayers Bath for the sole
purpose of selling its products is unsupported.  In any event, the
formation of a subsidiary to distribute the parent's products is not
one of the *Mid-Century* factors indicating an alter ego relationship.

   ii.    Foremost's allegation that "the directors and officers of Ayers Bath
consisted entirely of former and current employees of Tangshan" is
unsupported by any evidence and, moreover, simply untrue.  (*See*
Yang Dec. ¶¶ 7-8)  In any case, overlapping directors and officers do
not demonstrate an alter ego relationship.  *See Sonora Diamond*, 83
Cal. App. 4th at 548-49, 99 Cal. Rptr. 2d 824 ("[I]t is considered a
normal attribute of ownership that officers and directors of the parent
serve as officers and directors of the subsidiary . . . [It is a] 'well
established principle [of corporate law] that directors and officers
holding positions with a parent and its subsidiary can and do 'change
hats' to represent the two corporations separately, despite their
common ownership." (quoting *United States v. Bestfoods*, 524 U.S.
51, 69 (1998)).

   iii.    Foremost's allegation that Tangshan "dictated prices for its products
to Ayers Bath" is ambiguous and (depending on its interpretation)
either unremarkable or misleading.  Of course Tangshan "dictated"
the prices at which it sold its own products to the Debtor.  (*See* Dkt.
119-5 at 16:14-21)  But it did not dictate the prices at which the
Debtor resold those products to its own customers.  (*See id.*)  In any
event, a manufacturer's control over the prices at which its products
are sold is not a *Mid-Century* factor indicating an alter ego
relationship.

iv.  Foremost's allegation that Tangshan's outside counsel prepared and filed the Debtor's bankruptcy petition is misleading, in that such counsel represented **only** the Debtor, not Tangshan, at the time such petition was filed.  In any event, the fact that entities in a corporate group share the same counsel is unremarkable and not a *Mid-Century* factor indicating an alter ego relationship.

v.  Foremost's allegation that the Debtor's petition was signed by "Junkuan (Peter) Yao, the President of Ayers Bath and Sales Manager for Tangshan," is misleading, because Mr. Yao was not employed by Tangshan in any capacity at the time he signed the petition.  (Docket 119-5 at 20–21; Yang Dec. ¶ 7).  Again, however, overlapping directors and officers is not a factor indicating an alter ego relationship.

c.  Foremost's allegation that Tangshan "failed to adequately capitalize" the Debtor (Mot. ¶ 79(d)) is unsupported by any analysis or authority.  Foremost makes no effort to explain why the Debtor's initial capital of $200,000 in 2010 was "grossly insufficient," except for the fact that it was insufficient to pay Foremost's proof of claim over three years later.  But obviously a corporate parent is not required to provide its subsidiary with start-up capital sufficient to pay any and all unknown tort liabilities that could conceivably arise.  The alter-ego doctrine "does not guard every unsatisfied creditor of a corporation."  *Sonora Diamond*, 83 Cal. App. 4th at 539, 99 Cal. Rptr. 2d 824; *see also Flores v. DDJ, Inc.*, No. 1:99 CV 5878 AWI DLB, 2007 WL 4269259 (E.D. Cal. Nov. 28, 2007) (rejecting plaintiff's claim that "[d]efendants must have been undercapitalized because [they] no longer have any assets"); *Carlesimo v. Schwebel*, 87 Cal. App. 2d 482, 493, 197 P.2d 167, 174 (Cal. Dist. Ct. App. First Dist. 1948) (total capitalization of

1          $1,221.82 was sufficient, as a matter of law, to operate a business engaged in

2          the buying and selling of groceries").

3     d.   Foremost's allegation that Tangshan and the Debtor "disregarded corporate

4          formalities and failed to maintain arms' length relationships" (Mot. ¶ 79(e)

5          [sic]) is conclusory and unsupported by any evidence.  Foremost's allegation

6          that the Debtor's President did not regularly report to its board of directors is

7          not evidence of control by Tangshan; if anything it is evidence of the

8          Debtor's independence of Tangshan.  Foremost's allegation that "Ayers Bath

9          did not pay Tangshan in the ordinary course of business" is unsupported.

10         The fact that the Debtor, as a start up company, paid for its inventory when it

11         had sufficient funds to do so is hardly unusual, and certainly not a *Mid-*

12         *Century* factor suggesting an alter ego relationship.

13    e.   Foremost's allegation that Tangshan "commingled and diverted funds and

14         other assets of Ayers Bath" (Mot. ¶ 79(b) [sic]) is utterly false and

15         unsupported by any evidence.  Tangshan received no funds from the Debtor

16         after October 2011—well over a year before the Debtor's bankruptcy

17         filing—and was left with unpaid invoices for inventory of over $600,000.

18         (*See* Yang Dec. ¶ 14)  Foremost's allegation is sheer conjecture based on the

19         Debtor's minimal assets at the time of its bankruptcy petition compared to its

20         prior annual revenues, but the depletion of the Debtor's assets is easily

21         explained by the fact that its source of revenues was terminated by the

22         injunction obtained by Foremost in December 2011.  (*See* Yang Dec. ¶ 10)

23    **2.   Foremost Fails To Establish The Requisite "Inequitable Result"
           From Treating Tangshan And Ayers Bath As Separate Entities**

24    36.   Foremost also fails to establish any "inequitable result" from treating Tangshan and

25    the Debtor as separate entities.  Foremost merely repeats its untrue, unsupported allegations that

26    Tangshan "transferred the assets of [the Debtor]" to itself, "render[ing the Debtor] incapable of

27    meeting its obligations to creditors, including Foremost."  (Mot. ¶ 81) Tangshan did nothing of the

28

- 17 -

1    sort (Yang Dec. ¶¶ 8, 13), and Foremost provides no evidence of any such transfers. The Trustee,

2    for that matter, found no such evidence either.

3        37.    Even if the Debtor had never had *any* expenses or other liabilities, such that its total

4    revenues from inception were available to satisfy Foremost's proof claim, such revenues were only

5    $2,595,200 (*see* Mot. ¶ 52)—less than half the amount of Foremost's proof of claim. That fact

6    suggests that Foremost's damage claim is grossly inflated, but in any event, the Debtor's inability

7    to satisfy Foremost's claim is obviously not because of any looting by Tangshan. Foremost is

8    merely an "unsatisfied creditor": it cannot show any "bad faith" on the part of Tangshan making it

9    inequitable for Tangshan to "hide behind the corporate form." *Sonora Diamond*, 83 Cal.App.4th at

10   539, 99 Cal.Rptr.2d 824.

11   **D.    Foremost Is Not Entitled To Discovery**

12       38.    The due process and equitable bars precluding enforcement of Foremost's allowed

13   proof of claim against Tangshan are pure issues of law resolvable on the face of Foremost's

14   Motion. Further evidence of the relationship between Tangshan and the Debtors cannot bear on

15   those matters.

16       39.    Even if Foremost were to clear these due process and equitable hurdles, it is not

17   entitled to further discovery regarding Tangshan's relationship with the Debtor in order to support

18   its alter ego claim. Foremost has already been permitted to take (as it described it) "fishing

19   expedition" discovery under Bankruptcy Rule 2004. (Bankruptcy Dkt. 20-1 ¶ 35, Mot. ¶¶ 83,

20   79(d), 43-44) Yet, Foremost still cannot make out even a minimally sufficient *prima facie* case for

21   imposing alter ego liability on Tangshan, as necessary to entitle it to discovery on that question.

22   *See, e.g., 21st Century*, 255 F. Supp. 3d at 1026 (equity barred amendment of judgment because

23   "[t]here [wa]s no discernible reason the record could not have been more fully developed with

24   regard to [alleged alter-ego] prior to filing this motion"). For these reasons, Foremost's request in

25   the alternative for discovery should be denied.

26

27

28

1

## V.    CONCLUSION

2      For the foregoing reasons, the Court should enter proposed findings and conclusions

3 denying Foremost's Motion with prejudice, and granting such other and further relief as this Court

4 deems just and proper.[15]

5 Dated:  January 10, 2018                    Respectfully submitted,

6
                                             OBERDIER RESSMEYER LLP
7

8

9                                            By:___/s/ Carl W. Oberdier_____
                                                  Carl W. Oberdier
10
                                             OBERDIER RESSMEYMER LLP
11                                           Carl W. Oberdier (*pro hac vice*)
                                             Kellen G. Ressmeyer (*pro hac vice*)
12                                           Sara K. Hunkler (*pro hac vice*)
                                             655 Third Avenue; 28th Floor
13                                           New York, New York  10017
                                             Telephone:  (212) 659-5141
14                                           Facsimile:   (646) 349-4925

15                                           HAGENS BERMAN SOBOL SHAPIRO LLP
                                             Philip Graves, Bar No. 153441
16                                           philipg@hbsslaw.com
                                             301 North Lake Avenue, Suite 920
17                                           Pasadena, California 91101
                                             Telephone: 213-330-7150
18                                           Facsimile: 213-330-7152

19                                           Attorneys for Tangshan Ayers
                                                Bath Equipment Co., Ltd
20

21

22

23

24

25

26

27
_____
28
[15]Tangshan hereby notifies Foremost, as required by LBR 9013-1(f)(2), that any reply must be filed
with the court and served on the responding party not later than 7 days prior to the hearing on the
motion.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled (*specify*): _____
_____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____    _____    _____
*Date*                              *Printed Name*                                *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

Case No. 2:13-bk-17409-RK

In re:

**AYERS BATH (U.S.A.) CO., LTD.**

Debtor.

- **Ryan S Fife** (ryan.fife@dbr.com, cesar.ibanez@dbr.com, docketgeneral@dbr.com)
- **Anthony A Friedman** (aaf@lnbyb.com)
- **Philip J Graves** (philipg@hbsslaw.com, lizc@hbsslaw.com)
- **John A Moe** (john.moe@dentons.com, glenda.spratt@dentons.com, derry.kalve@dentons.com, jennifer.wall@dentons.com, andy.jinnah@dentons.com)
- **Jeffrey S Renzi** (jrenzi@ssd.com, clopez@ssd.com, ptsui@ssd.com)
- **Alfred H Siegel (TR)** (Al.siegel@asiegelandassoc.com, Lisa.irving@asiegelandassoc.com, Margo.tzeng@asiegelandassoc.com, asiegel@ecf.epiqsystems.com)
- **United States Trustee (LA)** (ustpregion16.la.ecf@usdoj.gov)