# Exhibit A

Case 2:13-bk-17409-RK Doc 122-4 Filed 01/10/18 Entered 01/10/18 23:54:21 Desc
Case 2:11-cv-07473-GAF-E Document 16 Filed 11/07/11 Page 1 of 21 Page ID #:239
Exhibit A to Oberdier Dec.    Page 2 of 22

William A. Hanssen (Bar No. 110613)
Suzanne V. Stouder (Bar No. 161077)
DRINKER BIDDLE & REATH LLP
1800 Century Park E, Suite 1400
Los Angeles, CA 90067
Telephone:   (310) 203-4000
Facsimile:   (310) 229-1285
william.hanssen@dbr.com
suzanne.stouder@dbr.com

Attorneys for Plaintiff
FOREMOST GROUPS, INC. f/k/a FOREMOST
INTERNATIONAL TRADING CO., INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOREMOST GROUPS, INC. f/k/a FOREMOST INTERNATIONAL TRADING CO., INC., <br><br> Plaintiff, <br><br> vs. <br><br> AYERS BATH (USA) CORPORATION, <br><br> Defendant. | Case No.  CV11-7473 GAF (Ex) <br> Hon. Gary A. Feess <br> Courtroom 740 <br><br> **BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date:       November 21, 2011 <br> Hearing Time:       9:30 a.m. <br> Hearing Location:   Courtroom 740 |

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                1

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

Case 2:13-bk-17409-RK Doc 122-4 Filed 01/10/18 Entered 01/10/18 23:54:21 Desc
Case 2:13-cv-07409-CAS-E Document 18 Filed 11/07 Entered 11/07 Page 2 of 21 Page ID #:284
Exhibit A to Oberdier Dec.    Page 3 of 22

## TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   COUNTER-STATEMENT OF FACTS ........................................................... 2

    A.    FOREMOST IS REASONABLY LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM AGAINST AYERS .......................... 4

        1.    Foremost Has Established a Reasonable Probability of Success on Its Claims for Infringement on Exclusive Right of Distribution and Tortious Interference with Prospective Economic Advantage ...................................... 5

        2.    Foremost Has Established a Reasonable Probability of Success on Its Claim for Tortious Interference with Contractual Relations ................................................ 11

        3.    Foremost Has Established a Reasonable Probability of Success on Its Claims Grounded in Trademark Law ............... 12

            a.    The Trademark Infringement Issue is Not Moot .......... 12

            b.    Foremost Has a Valid Trademark .................................. 13

            c.    Ayers' Use of the Foremost MaP Label Creates a Likelihood of Confusion .............................................. 15

    B.    FOREMOST SATISIFIED PRELIMINARY INJUNCTION STANARDS ...................................................................................... 16

III.  CONCLUSION ............................................................................................. 18

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

Case 2:13-bk-17409-RK F Doc 122-4 Filed 01/10/18 Entered 01/10/18 23:54:21 Desc
Case 2:13-cv-07409-CAF-E Document 18 Filed 11/07 Page 8 of 23 Page ID #:245
Exhibit A to Oberdier Dec. Page 4 of 22

**TABLE OF AUTHORITIES**

**Page**

**CASES**

AMF, Inc. v. Sleekcraft Boats,
599 F.2d 341 (9th Cir. 1979) ......................................................................... 15

Apple Computer, Inc. v. Formula Int'l, Inc.,
725 F.2d 521 (9th Cir. 1984) ......................................................................... 16

Cleary v. News Corp.,
30 F.3d 1255 (9th Cir. 1994) ......................................................................... 16

Della Penna v. Toyota Motor Sales, U.S.A., Inc.,
11 Cal.4th 376, 392, 902 P.2d 740 (1995) .................................................... 10

GoTo.com, Inc. v. Walt Disney Co.,
202 F.3d 1199 (9th Cir. 2000) ....................................................................... 15

International Jensen, Inc. v. Metrosound U.S.A., Inc.,
4 F.3d 819 (9th Cir.1993) .............................................................................. 16

Korea Supply Co. v. Lockheed Martin Corp.,
29 Cal.4th 1134, 63 P.3d 937 (2003) ............................................................ 10

Mallard Creek Indus. v. Morgan,
56 Cal.App.4th 426, 65 Cal.Rptr.2d 461 (Cal. Ct. App. 1997) ..................... 15

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
518 F.Supp.2d. 1197, (C.D. Cal. 2007) ......................................................... 16

Qualitex Co. v. Jacobson Products Co., Inc.,
514 U.S. 159, 163 115 S.Ct. 1300 (1995) ..................................................... 14

Queliman v. Stewart Title Guar. Co.,
19 Cal.4th 26, 960 P.2d 513 (1998) ............................................................... 12

Rodeo Collection, Ltd.v. West Seventh,
812 F.2d 1215, (9th Cir. 1987) ...................................................................... 17

Ticketmaster L.L.C. v. RMG Technologies, Inc.,
507 F.Supp.2d 1096, (C.D. Cal. 2008) .......................................................... 16

Truong Giang Corp. v. Twinstar Tea Corp.,
No. C 06-03594, 2007 WL 1545173, at *4
(N.D. Cal. May 29, 2007) ............................................................................... 15

Vision Sports, Inc. v. Melville Corp.,
888 F.2d 609, (9th Cir.1989) ......................................................................... 16

**OTHER AUTHORITIES**

Lanham Act. 15 U.S.C. § 1447 ............................................................... 13, 14

*McCarthy on Trademarks and Unfair Competition*, § 3.2 (West 2011) ......... 14

**RULES**

Fed. Rules Civ. P. 65 ......................................................................................... 1

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

Case 2:13-bk-17409-RK Doc 122-4 Filed 01/10/18 Entered 01/10/18 23:54:21 Desc
Case 2:13-cv-07409-GAF-E Document 18 Filed 11/07/11 Page 4 of 21 Page ID #:246
Exhibit A to Oberdier Dec.    Page 5 of 22

1  William A. Hanssen (Bar No. 110613)
   Suzanne V. Stouder (Bar No. 161077)
2  DRINKER BIDDLE & REATH LLP
   1800 Century Park E, Suite 1400
3  Los Angeles, CA 90067
   Telephone:  (310) 203-4000
4  Facsimile:   (310) 229-1285
   william.hanssen@dbr.com
5  suzanne.stouder@dbr.com

6
   Attorneys for Plaintiff
7  FOREMOST GROUPS, INC. f/k/a FOREMOST
   INTERNATIONAL TRADING CO., INC.
8
                UNITED STATES DISTRICT COURT
9
              CENTRAL DISTRICT OF CALIFORNIA
10

11
   FOREMOST GROUPS, INC. f/k/a          Case No.  CV11-7473 GAF (Ex)
12 FOREMOST INTERNATIONAL               Hon. Gary A. Feess
   TRADING CO., INC.,                   Courtroom 740
13
              Plaintiff,
14                                      **BRIEF IN FURTHER SUPPORT OF**
       vs.                              **APPLICATION FOR PRELIMINARY**
15                                      **INJUNCTION**
   AYERS BATH (USA)
16 CORPORATION,

17            Defendant.                Hearing Date:      November 21, 2011
                                        Hearing Time:      9:30 a.m.
18                                      Hearing Location:  Courtroom 740

19

20

21 **I.      PRELIMINARY STATEMENT**

22         Plaintiff Foremost Groups, Inc. f/k/a Foremost International Trading Co., Inc.

23 ("Foremost" or "Plaintiff") respectfully submits this reply brief in further support of

24 its request for the entry of a Preliminary Injunction pursuant to Fed. Rules Civ. P.

25 65 restraining and enjoining Defendant Ayers Bath (USA) Corporation ("Ayers" or

26 "Defendant") and its officers, agents, servants, employees, and all those in active

27 concert or participation with Defendant, from (1) selling, distributing and/or

28 offering for sale all Tangshan Huida Ceramic Group Co., Ltd. ("Huida") products,

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                              1

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

Case 2:13-bk-17409-RK-E Doc 122-4 Filed 01/10/18 Entered 01/10/18 23:54:21 Desc
Case 2:13-cv-07409-GAF Document 18 Filed 11/07/13 Page 6 of 11 Page ID #:247
Exhibit A to Oberdier Dec.    Page 6 of 22

1   including but not limited to toilets and kitchen and bathroom sinks, in the

2   United States and Canada in violation of Foremost's exclusive distribution

3   agreement; and (2) infringing on Foremost's unique MaP Label.

4          In its application, Foremost demonstrated the factors necessary for injunctive

5   relief because Foremost is confronted with the prospect of substantial harm if

6   Ayers' unrelenting unlawful conduct is permitted to continue unabated.  Indeed, it

7   required the commencement of this action to force Ayers to cease, for the time

8   being at least, its sale of toilets with packaging containing the Foremost MaP Label.

9   Ayers' promise to no longer use the Foremost MaP Label going forward of course

10  has no impact on the thousands of Ayers' toilets bearing the infringing mark

11  currently sitting on stores shelves across the country, the sale of which irreparably

12  harms Foremost.

13         Ayers attempts to defeat the clear implication that it is selling Huida-

14  manufactured toilets by repeating that its toilets are manufactured by Tanghsan

15  Ayers.  Far from being a separate and distinct company from Huida, Tangshan

16  Ayers is affiliated with Huida and dependent on Huida for the production of

17  bathroom and sanitary products.  Ayers' promotional materials expressly

18  acknowledged this fact until recently, when all mentions of Huida were

19  mysteriously deleted.

20         Ayers is apparently unwilling to cease its infringement on Foremost's

21  exclusive right of distribution and tortious interference with Foremost's business

22  relationships, instead choosing to perpetuate the fiction that its toilets are

23  manufactured by Tangshan Ayers, not Huida, and therefore not within the scope of

24  the Exclusive Distribution Agreement.  Accordingly, this Court should grant

25  Foremost's application for preliminary injunctive relief.

26  **II.    <u>COUNTER-STATEMENT OF FACTS</u>**

27         Foremost supplements the Statement of Facts submitted with its Application

28  for Preliminary Injunction with the following additional information.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                    2

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

Case 2:13-bk-17409-RK Doc 122-4 Filed 01/10/18 Entered 01/10/18 23:54:21 Desc
Case 2:13-cv-07409-CAF-E Document 18 Filed 11/07 Interrogate 6 of 21 Page ID #:248
Exhibit A to Oberdier Dec.    Page 7 of 22

1   Ayers claims that all of its porcelain toilet and sink products sold in the

2   United States are manufactured by Tangshan Ayers Bath Equipment Co., Ltd.

3   ("Tangshan Ayers").  See Declaration of Peter Yao ("Yao Decl.") at ¶ 5 [Docket

4   No. 16-2].  Huida owns seventy-five (75%) percent of Tangshan Ayers.  See

5   Supplemental Declaration of David Bruce ("Bruce Supp. Decl.") at ¶ 2, Ex. A.  The

6   Legal Representative/Business Owner of Huida, Huei-wen Wang, was the Legal

7   Representative of Tanghsan Ayers until June 28, 2007. See id. at ¶¶ 2-3, Exs. A and

8   B.  The current Legal Representative of Tangshan Ayers is Yen-ching Wang.  See

9   id. at ¶ 2, Ex. A.  Yen-ching Wang is the son of Huei-wen Wang.  See id. at ¶ 4.

10  Yen-ching Wang is also designated in the Exclusive Distribution Agreement as

11  Huida's assigned liaison.  See Declaration of David Bruce ("Bruce Decl.") at ¶ 7,

12  Ex A. [Docket No. 6].

13  Until recently, Ayers' promotional materials described Ayers as a "wholly

14  owned corporation of Tangshan Ayers Bath LTD which is a sister company to

15  Huida Ceramic Groups LTD."  See Bruce Suppl. Dec. ¶ 5, Ex. C.  Ayers went on to

16  state that:  "Through the affiliation of our sister company, we have the capacity to

17  produce over 9 million pieces of products annually with 17 natural gas fed tunnels

18  kilns and 10,000 workers more or less."  See id.  The materials have since been

19  amended to remove the references to Tangshan Ayers and Huida, though it

20  continues to attribute Ayers' production of bathroom and sanitary products to the

21  "affiliation of [Tangshan Ayers'] sister company," i.e. Huida.  See id. at ¶ 6, Ex. D.

22  On July 26, 2011, David Bruce, the Executive Vice President of Foremost,

23  purchased two (2) Ayers' branded toilets from an Menards' store in Indiana.  See

24  id. at ¶ 7.  In addition to being virtually identical in physical appearance to Huida-

25  manufactured toilets sold by Foremost, the toilets contain parts manufactured by

26  Huida.  See id. at ¶ 8, Ex. E.  Below is a picture of a Huida-manufactured flush

27  valve assembly found in an Ayers' toilet purchased from Menards:

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                3

Case 2:13-bk-17409-RK Doc 122-4 Filed 01/10/18 Entered 01/10/18 23:54:21 Desc
Case 2:13-cv-07409-CAF-E Document 18 Filed 11/07 Int Page 1 of 21 Page ID #:249
Exhibit A to Oberdier Dec.    Page 8 of 22



See id. at ¶ 8, Ex. E.  Menards bought 40,000 pieces of product from Ayers.  See id. at ¶ 9.[1]

## LEGAL ARGUMENT

### A.    FOREMOST IS REASONABLY LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM AGAINST AYERS

Foremost has shown a reasonable likelihood of success on the merits of its claims against Ayers.  Contrary to Ayers' assertions in its opposition, Foremost's application sets forth sufficient factual and legal grounds to substantiate claims for infringement on Foremost's exclusive right of distribution, tortious interference with Foremost's prospective economic advantage, tortious interference with Foremost's contractual relations, unfair competition and infringement of Foremost's unregistered trademark.

---

[1] Ayers has made numerous evidentiary objections to the Declaration of Mr. Bruce.  Mr. Bruce will be attending the November 21, 2011 hearing and will be available to testify to the facts as set forth in his Declaration and Supplemental Declaration.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                    4

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

Case 2:13-bk-17409-RK    Doc 122-4    Filed 01/10/18    Entered 01/10/18 23:54:21    Desc
Case 2:13-cv-07409-GAF-E    Document 19    Filed 11/07/13    Page 8 of 21    Page ID #:230
Exhibit A to Oberdier Dec.    Page 9 of 22

1.    **Foremost Has Established a Reasonable Probability of Success on Its Claims for Infringement on Exclusive Right of Distribution and Tortious Interference with Prospective Economic Advantage**

By importing Huida-manufactured products and offering those products for sale to retail stores, wholesale channel and regional dealers in the United States with whom Foremost enjoyed a business relationship or sought to develop one, Ayers has, and continues to, infringe on Foremost's exclusive right of distribution and tortiously interfere with Foremost's business relations with prospective retail stores, wholesale channels and regional dealers.  In its opposition, Ayers represents that the porcelain toilets it distributes are manufactured by Tangshan Ayers, not Huida, and therefore its distribution is not a violation of Foremost's exclusive right of distribution.  See Yao Decl. at ¶ 5.  Ayers also claims that it has not interfered with any economic relation of Foremost's.  Neither claim withstands scrutiny.

In investigating the relationship between Ayers, Tangshan Ayers and Huida, Foremost discovered that Huida owns seventy-five (75%) percent of Tangshan Ayers.  See Bruce Supp. Decl. at ¶ 2, Ex. A.  Huida's Legal Representative/Business Owner, Huei-wen Wang, was the Legal Representative for Tangshan Ayers until June 2007.  See Bruce Supp. Decl. at ¶¶ 2-3, Exs. A and B.  Tangshan Ayer's current Legal Representative is Yen-ching Wang, Huei-wen Wang's son.  See Bruce Supp. Decl. at ¶¶ 2, 4, Ex. B.  Yen-ching Wang is also identified in the Exclusive Distribution Agreement as the assigned liaison for Huida.  See Bruce Dec. at ¶ 7, Ex. A.

Ayers expressly acknowledged the connection between Tangshan Ayers and Huida in promotional materials and advertisements ("Ayers Bath (USA) Corporation is a wholly owned corporation of Tangshan Ayers Bath LTD which is a sister company to Huida Ceramic Groups LTD") until the materials were recently scrubbed, presumably in response to the commencement of this litigation.  See id. at ¶ 5, Ex. C.  Ayers' promotional materials continue to contain the following

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                              5

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

Case 2:13-bk-17409-RK   Doc 122-4   Filed 01/10/18   Entered 01/10/18 23:54:21   Desc
Case 2:13-cv-07409-GAF-E   Document 18   Filed 11/07/11   Page 9 of 21   Page ID #:251
Exhibit A to Oberdier Dec.   Page 10 of 22

language:  "***Through the affiliation of our sister company***, we have the capacity to produce over 9 million pieces of products annually with 17 natural gas fed tunnels kilns and 10,000 workers more or less."  See id. at ¶ 6, Ex. D (emphasis added).

Given the above, it now appears clear that Ayers' distribution of Huida-manufactured toilets is in furtherance of an unlawful scheme between Ayers, Tangshan Ayers and Huida to deprive Foremost of its rights under the Exclusive Distribution Agreement.  While Ayers asserts that its toilets are manufactured by Tangshan Ayers, as recently as March 11, 2011 Ayers' promotional materials attributed Tangshan Ayers' production of bathroom and sanitary products to its affiliation with Huida.  See Bruce Supp. Decl. at ¶ 5, Ex. CB.  The factual circumstances lead one to the inescapable conclusion that the bathroom and sanitary products being sold by Ayers in the United States are manufactured by Huida.

Ayers attempts to defeat the obvious implication that it is distributing Huida-manufactured products in violation of the Exclusive Distribution Agreement by pointing out superficial differences between Ayers' toilets and what Ayers claims is a toilet sold by Foremost.  As an initial matter, it is highly unlikely that the pictures attached to the Declaration of Jeffrey S. Renzi ("Renzi Decl.") actually depict a toilet manufactured by Foremost.  Mr. Renzi states that he visited a Home Depot home improvement store located at 1675 Wilshire Boulevard, Los Angeles, California and purchased a two-piece toilet sold as "Glacier Bay 2-Piece High-Efficiency Elongated All in One Toilet with Left Tank Lever in Chrome."  See Renzi Decl. at ¶ 9 [Docket No. 16].  Mr. Renzi proceeded to compare the "Glacier Bay" toilet with an Ayers' toilet of similar height and flush performance in an effort to demonstrate that the Ayers' toilet differed from the toilet purportedly sold by Foremost.  See id. at ¶ 10.

While it is true that Foremost provides Home Depot with vitreous china toilets that are subsequently offered to customers under the brand "Glacier Bay," Foremost is only one of a number of manufacturers that do so.  See Bruce Supp.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1

6

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

Case 2:13-bk-17409-BKF Doc 122-4 Filed 01/10/18 Entered 01/10/18 23:54:21 Desc
Case 2:13-cv-07409-GAF-E Document 11 Filed 11/07/11 Page 10 of 21 Page ID #:252
Exhibit A to Oberdier Dec.    Page 11 of 22

Decl. at ¶ 10.[2]  Foremost does not ship any vitreous china toilets to the Home Depot regional distribution center that supplies the Home Depot home improvement store located at 1675 Wilshire Boulevard in Los Angeles.  See id. at ¶ 12.  It is therefore unlikely that the "Glacier Bay" toilet purchased by Mr. Renzi was sold by Foremost.  Accordingly, Ayers cannot rely on the comparison photographs attached to Mr. Renzi's declaration as evidence that Ayers' toilets differ materially from toilets sold by Foremost.

Moreover, to the extent it was unclear in Foremost's moving papers, ***Ayers' toilets being sold at Menards contain Huida-manufactured component parts***.  See Bruce Supp. Decl. at ¶ 8, Ex. D.  Ayers does not deny that its toilets contain such parts, but rather argues that:  (1) non-porcelain parts are not within the scope of the Exclusive Distribution Agreement; and (2) Foremost has used non-Huida plastic parts in toilets distributed under the "Glacier Bay" name.  With respect to the second argument, as discussed above, it does not appear as if Ayers examined any Foremost toilets sold under the "Glacier Bay" name, regardless it is irrelevant what parts Foremost may use in its toilets.

Concerning the first argument, the scope of the Exclusive Distribution Agreement is not, as Ayers contends, limited to porcelain products.  Rather, the Exclusive Distribution Agreement grants Foremost the exclusive right to distribute "Type C Products" in North America.  See Bruce Decl. at ¶ 7, Ex. A.  The term "Type C Products" is defined in the Exclusive Distribution Agreement as "[i]ndicating the products designed and manufactured all by [Huida]."  See id. at ¶ 7, Ex. A.  Neither the exclusive distribution clause nor the definition of "Type C Products" limits the scope of the Exclusive Distribution Agreement to porcelain products.  The component parts contained in Ayers' toilets are clearly stamped with

---

[2] Each Home Depot "Glacier Bay" toilet carries the same stock-keeping unit or SKU identification code, regardless of manufacturer.  See Bruce Supp. Decl. at ¶ 11.  The SKU identification codes vary only between models.  See id.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                    7

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

Case 2:13-bk-17409-BKF Doc 122-4 Filed 01/10/18 Entered 01/10/18 23:54:21 Desc
Case 2:13-bk-17409-GWF Document 11 Filed 04/18/07/Entered 04/18/07 23:54:21 Page 1 of 21 Page ID #:283
Exhibit A to Oberdier Dec.    Page 12 of 22

the designations "Huida" and "Tangshan Huida Ceramic Group Co., Ltd."  See Bruce Supp. Decl. at ¶ 8, Ex. E.  Ayers' distribution of any product designed and manufactured by Huida, including non-porcelain component parts, constitutes an infringement on Foremost's exclusive right of distribution and tortious interference with prospective economic advantage.

Foremost alleges that Ayers infringed on its exclusive right of distribution and  intentionally and/or negligently interfered with its prospective economic advantage by offering Huida-manufactured products for sale to retail stores, wholesale channel and regional dealers in the United States with whom Foremost enjoyed a business relationship or sought to develop one, including Ferguson, Lowe's, HD Supply and Menards.  Ayers supports its denials of wrongdoing with an extremely carefully worded declaration from Charles Wang, Ayers' Vice President of Sales.  With respect to Ferguson and Lowe's, Wang does not deny that he or members of his sales team offered to sell these entities Huida-manufactured products.  See Declaration of Charles Wang ("Wang Decl.") at ¶¶ 4-5 [Docket No. 16-3].  Rather, Wang states that neither he nor the members of his sales team "made any in person contacts" with Ferguson or Lowe's to solicit sales.  Foremost never claimed that Ayers' representatives approached Foremost's customers in person, in fact the documentary evidence obtained by Foremost suggests that Ayers' typical practice was to solicit sales by email.  See Bruce Decl. at ¶¶ 32-33, Ex B.

For example, upon being told by Todd Page, the International Merchandise Manager – Kitchen and Bath for LG Sourcing, Inc., a wholly-owed subsidiary of Lowe's, that someone from Ayers had approached Lowe's with an offer to sell them Huida-manufactured products, Bradley Rannow of Foremost asked Mr. Page for the name of the Huida representative and the method of approach.  See id. at ¶ 32, Ex B.  Mr. Page replied that he received an email from Ben Liu.  See id. at ¶ 33, Ex C.  In his declaration, Wang claims that "Ben Liu is not an Ayers Bath employee."  See Wang Decl. at ¶ 6.  This statement is hardly sufficient to establish

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                8

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

1  that Ben Liu was not an employee of Ayers in April 2011 when he approached

2  Lowe's with an offer to sell them Huida-manufactured products.

3      Wang's claim that "there are no sales or purchase orders for Ayers Bath

4  products between Ayers Bath" and Ferguson or Lowe's is similarly eyebrow-

5  raising.  See Wang Decl. at ¶¶ 4-5.  Wang does not state that Ayers has never sold

6  products to Ferguson or Lowe's, or that Ayers did not sell products to Ferguson or

7  Lowe's during the relevant time periods.  Wang merely states that there are

8  currently no outstanding orders between Ayers and Ferguson and Lowe's.  If true,

9  this is hardly surprising.  Following the commencement of this action, Ayers

10  purged its promotional materials of all references to Huida and ceased its use of the

11  Foremost MaP Label.  See Bruce Supp. Dec. at ¶¶ 5-6, Exs. C and D; Wang Dec. at

12  ¶ 8.  It is clear that Ayers is desperate to appear blameless before the Court,

13  temporarily halting sales to the customers identified by Foremost would be entirely

14  consistent with Ayers' course of conduct up to this point.

15      Messrs. Wang and Yao claim to have not seen a copy of the Exclusive

16  Distribution Agreement prior to this lawsuit, but do not deny having knowledge of

17  its existence or Foremost's reasonable expectation of economic benefit from

18  exclusively selling Huida-manufactured products.  See Wang Decl. at ¶ 9; Yao

19  Decl. at ¶ 8.  Such a denial would prove troublesome, as it is an uncontradicted fact

20  that Ayers was put on notice on April 21, 2011 that Foremost had an exclusive right

21  of distribution of Huida products in the United States and that Ayers' attempts to

22  sell Huida products constituted infringement of Foremost's excusive right of

23  distribution.  See Bruce Decl. at ¶ 43, Ex. C.

24      Following the receipt of the April 21, 2011 notification, Ayers had

25  knowledge of the economic advantage Ayers derived from its exclusive sale of

26  Huida-manufactured products in the United States and Canada.  See id. at ¶ 43, Ex.

27  C.  While Ayers is correct that, in order to recover for intentional or negligent

28  interference with prospective economic advantage, a plaintiff must plead and prove

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                    9

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

1    "the defendant's interference was wrongful 'by some measure beyond the fact of the

2    interference itself,'" see Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11

3    Cal.4th 376, 392–393, 902 P.2d 740 (1995) (citations omitted), "an act is

4    independently wrongful if it is unlawful, that is, if it is proscribed by some

5    constitutional, statutory, regulatory, common law, or other determinable legal

6    standard .... an act must be wrongful by some legal measure, rather than merely a

7    product of an improper, but lawful, purpose or motive." Korea Supply Co. v.

8    Lockheed Martin Corp., 29 Cal.4th 1134, 1159, 63 P.3d 937 (2003) (citations

9    omitted).  In selling Huida-manufactured toilets to Menards despite its knowledge

10   of Foremost's exclusive right or distribution, Ayers intentionally and wrongfully

11   interfered with Ayer's prospective economic advantage, resulting in a lost sales

12   opportunity.  See Bruce Decl. at ¶¶ 50-54.

13        The cumulative weight of the evidence compels a finding that Foremost is

14   likely to succeed on the merits of its claim for infringement on exclusive right of

15   distribution and tortious interference with prospective economic advantage.  The

16   toilets sold by Ayers to retailers such as Menards are virtually identical to

17   Foremost's Huida-manufactured toilets and contain component parts admittedly

18   and undeniably manufactured by Huida.  See Bruce Dec. at ¶ 51, Ex. G; Bruce

19   Supp. Decl. at ¶ 8, Ex. E.  Tangshan Ayers is owned by Huida.  Bruce Supp. Decl.

20   at ¶ 2, Ex. A.  The companies' principals overlapped during all relevant periods.

21   See Bruce Dec. at ¶ 7, Ex. A; Bruce Supp. Decl. at ¶ 3, Ex. B.  Ayers' promotional

22   materials expressly acknowledged the relationship between Ayers, Tangshan Ayers

23   and Huida and attributed Tangshan Ayers' products to its affiliation with Huida

24   until it was recently modified to remove the incriminating statements.  See Bruce

25   Supp. Decl. at ¶¶ 5-6, Exs. C and D.  Ayers offered Huida-manufactured products

26   for sale to retail stores, wholesale channel and regional dealers in the United States

27   with which Foremost had a business relationship or sought to enter into one,

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                          10

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

Case 2:13-bk-07409-BKF  Doc 122-4  Filed 01/10/18  Entered 01/10/18 23:54:21  Desc
Case 2:13-bk-07409-GMF  Document 118  Filed 10/18/17  Entered 11/14/18  Page 14 of 21  Page ID #:256
Exhibit A to Oberdier Dec.    Page 15 of 22

resulting in lost business opportunities for Foremost.  See Bruce Decl. at ¶¶ 23, 28, 32, 38 and 49-50.

Based on the foregoing, Foremost has demonstrated a likelihood of success on the merits on its claims for infringement on exclusive right of distribution and tortious interference with prospective economic advantage.

2.     **Foremost Has Established a Reasonable Probability of Success on Its Claim for Tortious Interference with Contractual Relations**

Ayers' opposition to Foremost's claim for tortious interference with contractual relations rests on its that assertion Ayers' products are not manufactured by Huida.  However, as discussed at length above, the facts prove otherwise. According to Ayers, all of its toilets and sink products are manufactured by Tanghsan Ayers.  See Yao Decl. at ¶ 5.  Given the overlapping corporate structure between Tanghsan Ayers and Huida and Ayers' previous admission that Tanghan Ayers' production of bathroom and sanitary products is only possible due to its affiliation with Huida, it is apparent that Tangshan Ayers is obtaining products from Huida.  See Bruce Supp. Dec. at ¶¶ 2-5, Exs. A, B and C.  As an active participant in this artifice, Ayers is liable for tortious interference with contractual relations.

Ayers' denial of knowledge of the Exclusive Distribution Agreement also rings hollow.  As an initial matter, the relationship between Ayers, Tangshan Ayers and Huida not only suggests that Ayers would have full knowledge of Huida's commitment to Foremost as its exclusive distributor of products in North America, but that Ayers was the vehicle through which Huida sought to circumvent its contractual obligations.  At the time he signed the Exclusive Distribution Agreement on behalf of Huida, Huei-wen Wang was also serving as Tangshan Ayer's legal representative.  See Bruce Decl at ¶ 7, Ex. A; Bruce Supp. Decl. at ¶ 2, Ex. A.  Huei-wen Wang's son, Yen-ching Wang, who is identified in the Exclusive Distribution Agreement as the "assigned liaison" for Huida, is the current

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                     11

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

1    Legal Representative of Tangshan Ayers.  See Bruce Decl at ¶ 7, Ex. A; Bruce

2    Suppl. Decl. at ¶¶ 2, 4, Ex. A.  Even if Peter Yao had "not seen a copy of the

3    [Exclusive Distribution Agreement]" prior to the initiation of this lawsuit, as he

4    claims in his Declaration, it is ludicrous to think that, as a former executive of

5    Tangshan Ayers, he would have been unaware of its existence.  See Yao Decl. at ¶

6    8.  In addition, it is undisputed that Ayers had knowledge of Foremost's exclusive

7    right of distribution of Huida products in the United States and Canada in April

8    2011.  See Bruce Decl. at ¶ 44, Ex. C.

9         In representing to retail stores and wholesale distributors that Ayers had the

10   right to import and distribute Huida products in the United States, despite its actual

11   knowledge of the Exclusive Distribution Agreement, Ayers undermined Foremost's

12   contractual relationship with Huida.  See Bruce Decl. at ¶ 40.  Based on the

13   foregoing, there is a high likelihood of success on the merits on Foremost's claim

14   that Ayers tortiously interfered with Foremost's contractual relations.  See

15   Queliman v. Stewart Title Guar. Co., 19 Cal.4th 26, 55, 960 P.2d 513 (1998).

16             3.    **Foremost Has Established a Reasonable Probability of
                     Success on Its Claims Grounded in Trademark Law**
17

18        Foremost believes it will ultimately prevail on the merits of its trademark

19   infringement claims because:  (1) Foremost owns the Foremost MaP Label; (2)

20   Ayers is using the Foremost MaP Label without authorization; and (3) Ayers'

21   infringing use of the Foremost MaP Label is likely to cause confusion.  Ayers seeks

22   to avoid culpability for its infringement of the Foremost MaP Label on a number of

23   grounds, none of which can withstand scrutiny.

24             a.    **The Trademark Infringement Issue is Not Moot**

25        Ayers claims that it has ceased to place the Foremost MaP Label on

26   packaging for Ayers' toilets and therefore the issue of trademark infringement is

27   now moot.  This is incorrect.  As an initial matter, without an order from the Court,

28   there is nothing stopping Ayers from renewing its infringing use of the Foremost

1    MaP Label at any time in order to trade off the success Foremost has achieved as a

2    result of its use of the Foremost MaP Label and years of distributing vitreous china

3    products.  More pressing, however, are the thousands of Ayers' toilets bearing the

4    Foremost MaP Label currently sitting on shelves of retailers across the country.

5        Foremost first learned of Ayers' use of the Foremost MaP Label when it

6    purchased two (2) Ayers' toilets from Menards that carried the infringing mark.

7    <u>See</u> Bruce Decl. at ¶ 52, Ex. F.  Menards bought 40,000 pieces of product from

8    Ayers.  <u>See</u> Bruce Supp. Decl. at ¶ 9.  Given the volume of Ayers' toilets bearing

9    the Foremost MaP Label that likely remain in the marketplace, Ayers' assurance

10   that "as of [October 25, 2011], none of the packaging for the products ***at Ayers***

11   ***Bath's warehouses*** has the [Foremost MaP Label]" provides little comfort.  <u>See</u>

12   Wang Decl. at ¶ 8 (emphasis added).  Foremost is entitled to the entry of a

13   preliminary injunction ordering Ayers to remove all toilets carrying the offending

14   packaging from stores.

15                    **b.    Foremost Has a Valid Trademark**

16       Ayers' arguments that Foremost does not make an adequate showing that it

17   has a valid trademark fail as a matter of law.  In quoting Professor J. Thomas

18   McCarthy's treatise *McCarthy on Trademarks and Unfair Competition*, Ayers

19   confuses his comments on the functions of a trademark with the requirements of a

20   trademark.  The requirements for trademark protection are clearly set forth in

21   section 45 of the Lanham Act.  15 U.S.C. § 1447.  A trademark is a "word, name,

22   symbol, or device, or any combination thereof" that is adopted and used by a

23   manufacturer or merchant in commerce "to identify and distinguish [its] goods,

24   including a unique product, from those manufactured or sold by others and to

25   indicate the source of the goods, even if that source is unknown."  <u>See</u> <u>id.</u>  The

26   Foremost MaP Label is a symbol that Foremost has used in commerce since 2007

27   to communicate that the toilets that Foremost sells meet the industry's highest

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                    13

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

1   standard for testing and certification.  See Bruce Decl. at ¶ 14.  The Foremost MaP

2   label is thus entitled to protection as a trademark.

3       Ayers' argument that the Foremost MaP Label must serve to identify

4   Foremost as the source of its goods is also incorrect as a matter of law.  Section 45

5   of the Lanham Act expressly acknowledges that a symbol may indicate the source

6   of the goods, "even if that source is unknown."  15 U.S.C. § 1447.  The symbol

7   need does not need to explicitly reference Foremost in order to communicate the

8   toilets' origin.  See Qualitex Co. v. Jacobson Products Co., Inc., 514 U.S. 159, 163

9   115 S.Ct. 1300 (1995).  All toilets distributed by Foremost are packaged with the

10  Foremost MaP Label.  See Bruce Decl. at ¶ 15.  Therefore, while the Foremost MaP

11  Label does not specifically denote Foremost as the source of the toilets, the uniform

12  presence of the Foremost MaP Label on packaging of toilets distributed by

13  Foremost signifies the source of the toilets to the customer.

14      The Foremost MaP label also serves to signify "that all goods bearing the

15  trademark are of an equal level of quality," see McCarthy, J. Thomas, McCarthy on

16  Trademarks and Unfair Competition, § 3.2 (West 2011) (footnotes omitted)

17  (hereinafter "McCarthy"), as each Foremost MaP Label communicates that the

18  toilet has been subject to MaP testing and received the highest certification

19  available.  See Bruce Decl. at ¶ 13.  Finally, the law does not require that the

20  Foremost MaP Label serve the function of being a "prime instrument in advertising

21  and selling" Foremost's products, but simply that it be used "to identify and

22  distinguish [Foremost's] goods, including a unique product, from those

23  manufactured or sold by others."  11 U.S.C. § 1447.

24      Accordingly, Foremost has established that the Foremost MaP Label is a

25  valid trademark.

26  / / /

27  / / /

28  / / /

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                    14

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

### c. Ayers' Use of the Foremost MaP Label Creates a Likelihood of Confusion

It is clear that Ayers' use of the Foremost MaP Label is likely to cause confusion in the minds of the public. The Ninth Circuit has held that the similarity of the marks in question, together with the relatedness of the goods or services and the use of a common marketing channel, constitute the "controlling troika in the [likelihood-of-confusion] analysis." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000). Here, the labels used by Foremost and Ayers do not "appear similar," they are identical. The second factor in the controlling subset also weighs heavily in Foremost's favor. Related or proximate goods are those "which compliment one another, are sold to the same class of consumers, or are similar in use and function." See Mallard Creek Indus. v. Morgan, 56 Cal.App.4th 426, 436, 65 Cal.Rptr.2d 461 (Cal. Ct. App. 1997). Here, the products at issue are toilets, and thus could not be more related or proximate.

Finally, Foremost and Ayers rely on the same marketing channels to reach customers. "Convergent marketing channels increase the likelihood of confusion." AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 535 (9th Cir. 1979). Foremost and Ayers both reach customers through retail stores, wholesale channel and regional distributors that sell toilets.

In sum, an evaluation of the factors that make up the crucial body of the likelihood-of-confusion analysis demonstrate that Ayers' use of the Foremost MaP Label creates a substantial likelihood of confusion. Foremost is therefore likely to prevail on its claim for unfair competition under section 43 of the Lanham Act. Foremost is equally likely to prevail on its state law claims for unfair competition and infringement of unregistered trademark, as, under California law, a party's showing that it is likely to prevail on a federal claim for unfair competition is sufficient to establish that it is likely to succeed on the merits of its state law claims for unfair competition and trademark infringement. See Truong Giang Corp. v.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                    15

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

Case 2:13-bk-17409-BKF  Doc 122-4  Filed 01/10/18  Entered 01/10/18 23:54:21  Desc
Case 2:13-bk-17409-GMF  Document 11  Filed 04/07/16  Page 13 of 21  Page ID #:281
Exhibit A to Oberdier Dec.    Page 20 of 22

1   Twinstar Tea Corp., No. C 06-03594, 2007 WL 1545173, at *4 (N.D. Cal. May 29,

2   2007) (citing Cleary v. News Corp., 30 F.3d 1255, 1262-93 (9th Cir. 1994)).

3   **B.    FOREMOST SATISIFIED PRELIMINARY INJUNCTION**
        **STANARDS**

4

5       Ayers also contends that Foremost has failed to demonstrate irreparable harm

6   because Foremost cannot point to any actual harm in the form of "tangible

7   injuries." [Docket No. 16 at 20:26].  Such actual harm is not necessary in

8   trademark cases; where a likelihood of confusion is established, irreparable harm is

9   presumed.  See International Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819,

10  822 (9th Cir.1993) (citing Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 613

11  (9th Cir.1989)).  Said another way, the law presumes, and does not require a

12  trademark holder to show, that a likelihood of confusion causes a trademark holder

13  to lose control over the infringed mark and lose the goodwill associated therewith.

14  See, e.g., Apple Computer, Inc. v. Formula Int'l, Inc., 725 F.2d 521, 526 (9th Cir.

15  1984).  Thus, Foremost is suffering harm to its goodwill and trademark, and this is

16  precisely the type of harm that makes a preliminary injunction warranted

17  and necessary.

18      In addition, Ayers' infringement on Foremost's exclusive right of distribution

19  and tortious interference with Foremost's prospective economic advantage is

20  causing Foremost to actually suffer immediate, irreparable harm to its reputation

21  and goodwill.  It is well-settled in the Ninth Circuit that the loss of goodwill and

22  reputational harm constitute irreparable harm.  See Ticketmaster L.L.C. v. RMG

23  Technologies, Inc., 507 F.Supp.2d 1096, 1115 (C.D. Cal. 2008) (citations omitted);

24  Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d. 1197, 1215

25  (C.D. Cal. 2007).  Ayers solicited Foremost's customers with offers to sell them

26  Huida products at significantly lower costs.  See Bruce Decl. As a result of Ayers'

27  wrongful conduct, Foremost has lost business opportunities and been forced to

28  mollify customers aggrieved by Ayers' sale of products for which Foremost has the

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                16

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

1   exclusive right to distribute.  See Bruce Decl. at ¶¶ 28, 35, 40, 50-54.  Going

2   forward, there is a danger that retailers and dealers will refuse to do any further

3   business with Foremost.

4        Based on the foregoing, Foremost has sufficiently shown that Ayers'

5   continuing egregious conduct will result in the loss of past and potentially future

6   purchases of their vitreous china products.  It is evident that Ayers' actions will

7   result in the complete loss of Foremost's goodwill and reputation.  If such actions

8   are permitted to continue unhindered by judicial intervention, the negative impact

9   and harm suffered by Foremost will be irreversible and unable to be remedied by

10  monetary damages.  A judgment for affirmative relief of damages after years of

11  litigation could not begin to redress the resultant damage to Foremost.  For these

12  reasons, Foremost has established irreparable harm.

13       Moreover, the overwhelming hardship to Foremost in the instant matter

14  provides an independent basis for the relief sought herein.  See, e.g., Rodeo

15  Collection, Ltd.v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).  Again,

16  Foremost has suffered and will continue to suffer, both as a matter of fact and a

17  matter of law, serious harm to its trademark and goodwill as a result of Ayers'

18  unauthorized use of the Foremost MaP Label.  Furthermore, the vast harm

19  Foremost will continue to suffer if an injunction is not issued by virtue of Ayers'

20  continued infringement on Foremost's exclusive right of distribution far outweighs

21  any inconvenience or expense that Ayers may incur by being forced to comply with

22  an injunction.

23       In evaluating the public interest, Ayers not only ignores the harm to

24  Foremost, it also fails to acknowledge the public's interest in avoiding confusion

25  and deception in the marketplace.  Consumers will benefit by the issuance of a

26  preliminary injunction as it will eliminate the danger of confusion about the source

27  of the toilets they are purchasing and they will not mistakenly believe Ayers' toilets

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1                                    17

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

bearing the Foremost MaP Label are somehow affiliated with or sponsored by Foremost.

**III. <u>CONCLUSION</u>**

For the foregoing reasons of fact and law, it is respectfully requested that the Court grant Foremost's application for a preliminary injunction.

Dated: November 7, 2011      DRINKER BIDDLE & REATH LLP

By: /s/ William A. Hanssen

William A. Hanssen
Suzanne V. Stouder

Frank F. Velocci (*Pro Hac Vice*)
DRINKER BIDDLE & REATH LLP
500 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
Facsimile: (973) 360-9831

Attorneys for Plaintiff
FOREMOST GROUPS, INC. f/k/a
FOREMOST INTERNATIONAL
TRADING CO., INC.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1057195.1      18

BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION