

FILED & ENTERED

SEP 22 2021

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY bakchell  DEPUTY CLERK**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>AYERS BATH (U.S.A.), CO., LTD.,<br><br>                Debtor. | Case No. 2:13-bk-17409-RK<br><br>Chapter 7<br><br>District Court Case No. 2:14-cv-00188-SVW-RZ [Foremost Groups, Inc. v. Tangshan Ayers Bath Equipment Co., Ltd.]<br><br>**REPORT AND RECOMMENDATION OF THE UNITED STATES BANKRUPTCY COURT TO UNITED STATES DISTRICT COURT REGARDING THE RENEWED MOTION OF FOREMOST GROUPS, INC., TO AMEND JUDGMENT OF THE UNITED STATES BANKRUPTCY COURT**<br><br>Date:      June 7, 2021<br>Time:     1:15 p.m.<br>Place:  Courtroom 1675<br>           Roybal Federal Building<br>           255 East Temple Street<br>           Los Angeles, California  90012<br><br>Hearing Conducted Remotely on Zoom for Government |

TO THE HONORABLE STEPHEN V. WILSON, UNITED STATES DISTRICT JUDGE:

      This Report and Recommendation is submitted by the undersigned United States

Bankruptcy Judge to the Honorable Stephen V. Wilson, Judge, United States District

Court for the Central District of California, pursuant to 28 U.S.C. § 157(c)(1) and Federal Rule of Bankruptcy Procedure 9033 in response to the District Court's referral of proceedings to this United States Bankruptcy Court.

I.    REFERRAL ORDERS FROM THE DISTRICT COURT

On March 8, 2016, the District Court issued an In Chambers Order Staying Proceedings (the "Stay Order"), staying the proceedings before it in *Foremost Groups, Inc. v. Tangshan Ayers Bath Equipment Co., Ltd.,* No. 2:14-cv-00188-SVW-RZ (C.D. Cal.).[1]  In Chambers Order Staying Proceedings, dated March 8, 2016,  Supplemental Request for Judicial Notice in Support of Motion of Foremost Groups, Inc. to Amend the Judgment of the Bankruptcy Court to Add Tangshan Ayers Bath Equipment Co. Ltd as Judgment Debtor ("Supplemental RJN"), filed on June 21, 2021, Electronic Case Filing No. ("ECF") 263, Exhibit U.  In the Stay Order, the District Court stated that it "concludes that, as a first measure, Foremost should seek an amended judgment through the bankruptcy court.  Whichever way Foremost has portrayed its case, ultimately, it is an effort to amend the judgment of the bankruptcy court.  In that regard, the action is STAYED in order to give Foremost the opportunity to seek an amended judgment through the bankruptcy court.  *See In re Levander,* 180 F.3d 1114 (9th Cir. 1999)."  *Id.*

Subsequently, the District Court issued an In Chambers Order Lifting Stay (the "Referral Order"), which expressly referred proceedings to this bankruptcy court.  In Chambers Order Lifting Stay, dated November 1, 2017, Supplemental RJN, ECF 263, Exhibit Y.  In the Referral Order, the District Court stated that Foremost requested it to issue an order lifting the stay imposed by the Stay Order in order to allow for: (1)  the filing by Foremost of a motion pursuant to Federal Rule of Civil Procedure 69(a) amending the judgment against Ayers Bath (U.S.A.) Co., Ltd. ("Ayers Bath"), to add

---

[1]  Foremost Groups, Inc., the plaintiff in the case before the District Court in *Foremost Groups, Inc. v. Tangshan Ayers Bath Equipment Co., Ltd.,* No. 2:14-cv-00188-SVW-RZ (C.D. Cal.) is referred to herein as "Foremost," and Tangshan Ayers Bath Equipment Co., Ltd., the defendant in that case, is referred to herein as "Tangshan Ayers."  The case before the District Court is referred to herein as the "Tangshan Ayers Litigation."

Tangshan Ayers as a judgment debtor and (2) the referral of this motion to amend judgment to the United States Bankruptcy Court for proposed findings of fact and conclusions of law. *Id.* In the Referral Order, the District Court noted that Foremost obtained a final judgment against Ayers Bath in the form of an allowed proof of claim in the amount of $5,265,000 in this bankruptcy case, *In re Ayers Bath (U.S.A.) Co., Ltd.,* Case No. 2:13-bk-17409-RK (Bankr. C.D. Cal.); that in an effort to collect on this judgment, on January 9, 2014, Foremost had filed a complaint against Tangshan Ayers in the Tangshan Ayers Litigation before the District Court, wherein Foremost sought a determination that Tangshan Ayers, through its alleged alter ego, Ayers Bath, tortiously interfered with Foremost's prospective economic advantage and contractual relations and unjustly competed, and that the District Court on March 8, 2016 had entered its Stay Order. *Id.*

In the Referral Order, the District Court stated that Foremost had argued before the District Court that it interpreted the Stay Order to be a referral to the Bankruptcy Court and requested that the District Court issue an order clarifying that the Stay Order be treated as such, and that it agreed, stating that in issuing the Stay Order, the District Court intended that the alter ego issue go to the Bankruptcy Court for proposed findings of fact and conclusions of law under 28 U.S.C. § 157. *Id.* The District Court noted the classification under 28 U.S.C. § 157 between "core" proceedings in which the bankruptcy court "may enter appropriate orders and judgments" and "noncore" proceedings which the bankruptcy court may hear but for which it may only submit proposed findings of fact and conclusions of law to the District Court for *de novo* review. *Id.* The District Court stated that "Foremost's alter-ego claim is a non-core proceeding because it relates to Foremost's ability to collect the final judgment from Ayers Bath parent company." *Id.* Accordingly, the District Court stated that it "hereby refers this matter to the Bankruptcy Court for proposed findings of fact and conclusions of law." *Id.*

Pursuant to the referral of proceedings from the District Court as described above, this United States Bankruptcy Court hereby submits to the United States District

Court this Report and Recommendation which constitutes its proposed findings of fact and conclusions of law under 28 U.S.C. § 157.

## II.    MOVANT'S CONTENTIONS

Pending before this United States Bankruptcy Court is the Renewed Motion of Foremost Groups, Inc., to Amend the Judgment of the Bankruptcy Court to Add Tangshan Ayers Bath Equipment Co., Ltd., as Judgment Debtor ("Renewed Motion"), filed on December 14, 2017. ECF 118. According to the Renewed Motion, Foremost seeks entry of an order pursuant to Federal Rule of Civil Procedure 69(a), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7069, amending the judgment against Ayers Bath (U.S.A.) Co., Ltd., to add Tangshan Ayers Bath Equipment Co., Ltd., as a judgment debtor. Renewed Motion, Memorandum of Points and Authorities, ECF 118-1 at 2. [2] Foremost's renewed motion to amend judgment is a contested matter within the meaning of Federal Rule of Bankruptcy Procedure 9014 as it is opposed by the respondent Tangshan Ayers.

The judgment of this court that Foremost seeks to amend is the allowed claim that it has in this bankruptcy case against the debtor, Ayers Bath, based on the proof of claim that it filed on December 12, 2013, in the amount of $5,265,000. Claim No. 1-1, Claims Register. [3] Foremost contends that its proof of claim filed in this Chapter 7 bankruptcy case as deemed allowed in the amount of $5,265,000 constitutes a final judgment pursuant to Ninth Circuit precedent under *Siegel v. Federal Home Loan*

---

[2] After Foremost filed its motion to reopen this bankruptcy case on November 4, 2016, which the court granted by order entered on November 15, 2016, Foremost filed its original motion to amend judgment to judgment of the Bankruptcy Court to add Tangshan Ayers Bath Equipment Co., Ltd., as a judgment debtor on January 13, 2017. ECF 60, 63 and 66. Tangshan Ayers filed motions to dismiss the motion to amend judgment on January 24, 2017 and February 14, 2017. ECF 68 and 73. The court denied Tangshan Ayers's motions to dismiss Foremost's original motion to amend judgment as moot on December 13, 2017 after Foremost represented in open court that it was filing an amended motion to amend judgment, which is the renewed motion filed on December 14, 2017 now pending before the court. ECF 114 and 118.

[3] Foremost's proof of claim filed on December 12, 2021 is docketed on the Claims Register in this bankruptcy case as Claim No. 1-1. A copy of the proof of claim is attached as Exhibit G to the Declaration of Frank F. Velocci in support of the Renewed Motion. ECF 66-2 at 2 and ECF 66-9 at 1-55.

1    *Mortgage Corp.,* 143 F.3d 525 (9th Cir. 1998).  Renewed Motion, Memorandum of

2    Points and Authorities, ECF 118-1 at 7-15 (internal citation pages 3-11), *citing* Chapter

3    7 Trustee's Final Account, Certification that the Estate has been Fully Administered and

4    Application of Trustee to be Discharged, ECF 58 at 5, filed on July 24, 2015.  In this

5    Chapter 7 bankruptcy case, the Chapter 7 trustee made a distribution from Ayers Bath's

6    bankruptcy estate to Foremost on its allowed claim in the amount of $7,757.24.  *Id.* at

7    12-13 (internal citation pages 8-9).

8        Foremost seeks to collect the uncollected portion on its allowed claim of

9    $5,265,000 against the bankruptcy debtor, Ayers Bath, in this bankruptcy case as a

10    money judgment, and thus, seeks to collect this money judgment against the debtor's

11    parent, Tangshan Ayers, [4] a nondebtor party, by amending the allowed proof of claim

12    against Ayers Bath, to add the parent, Tangshan Ayers, as another party liable for the

13    claim as an additional judgment debtor pursuant to Federal Rule of Civil Procedure

14    69(a), made applicable to this bankruptcy case by Federal Rules of Bankruptcy

15    Procedure 7069 and 9014, and California Code of Civil Procedure § 187.  *See*

16    Renewed Motion, Memorandum of Points and Authorities, ECF 118-1 at 17 (internal

17    citation page 13) (". . . in the event the Court finds that Tangshan Ayers is the alter ego

18    of Ayers Bath and controlled the Ayers Bath bankruptcy case, it is liable for all the

19    judgments (or, in this case, allowed proofs of claim) entered against Ayers Bath."). [5]

20    _____

21    [4]  There is no dispute that Tangshan Ayers is the parent company of Ayers Bath as the parties have
stipulated to the fact that Tangshan Ayers owned 100 percent of the shares of Ayers Bath.  Pretrial
22    Stipulation Pursuant to Local Bankruptcy Rule 7016-1(b)(1)(B), ECF 208, filed on January 5, 2021,
Stipulated Fact No. 8.

23    [5]  According to Foremost in its renewed motion to amend judgment, "[t]he facts giving rise to Foremost's
24    claims are straightforward":

25        The claims arise from Tangshan Ayers's attempt, through its alter ego, Ayers Bath, to usurp
    Foremost's exclusive right to distribute Tangshan Huida Ceramic Group Co., Ltd. ('Huida')
26        products in the United States and Canada.  Despite having actual knowledge of Foremost's
    exclusive right of distribution, Tangshan Ayers formed Ayers Bath in order to facilitate its import
27        and sale of such products to Foremost's customers.  Such conduct cost Foremost sales
    opportunities to which Foremost was otherwise entitled while simultaneously undermining
28        Foremost's relationship with Huida.

ECF 118-1 at 5 (internal citation page 1).  In its opposition to the motion, Tangshan Ayers disputed

1    Thus, Foremost brings the renewed motion to amend the bankruptcy court's judgment

2    in the form of the allowed claim against the debtor, Ayers Bath, to collect on this claim

3    against the debtor's parent, Tangshan Ayers, as an enforceable money judgment.

4        Foremost states that Federal Rule of Civil Procedure 69(a) "empowers federal

5    courts to rely upon state law to add judgment-debtors."  Renewed Motion, Memorandum

6    of Points and Authorities, ECF 118-1 at 16 (internal citation page 12), *citing*, *In re*

7    *Levander*, 180 F.3d 1114, 1120-1121 (9th Cir. 1999).  Foremost contends, "where a

8    state law such as California's allow a judgment creditor to a judgment on an alter ego

9    theory, it is appropriate to do so under Rule 69(a)."  *Id*., citing and quoting, *Calvin Brian*

10   *Int'l Co. v. Gustto, Inc.,* No. 13-cv-0218, 2014 WL 3548143, at *2 (S.D. Cal. July 17,

11   2014).  Foremost then identifies such California law: "California Code of Civil Procedure

12   section 187 allows the amendment of a judgment to add 'additional judgment debtors on

13   grounds that the person or entity is the alter ego of the original judgment debtor.'"  *Id*.,

14   *citing and quoting*, *NEC Electronics Inc. v. Hurt*, 208 Cal.App.3d 772, 778. 256 Cal.Rptr.

15   441 (1989).  Then Foremost cites the legal standard under California Code of Civil

16   Procedure § 187: "The judgment creditor must show that: (1) 'the party to be added

17   satisfies the alter ego criteria,' and (2) 'the new party had control of the litigation and

18   occasion to conduct it with a diligence corresponding to the risk of personal liability

19   involved.'"  *Id*., *citing and quoting inter alia*, *Bank of Montreal v. SK Foods*, LLC, 476

20   B.R. 588, 601 (N.D. Cal. 2012).

21        In support of the renewed motion to amend judgment, Foremost has offered

22

---

23   Foremost's contentions, asserting that "Foremost is merely an 'unsatisfied creditor' asserting a meritless
     alter ego claim in an effort to recover from an innocent third party."  Tangshan Ayers Bath Equipment

24   Co.'s Opposition to the Renewed Motion of Foremost Groups, Inc. to Amend the Judgment of the
     Bankruptcy Court to Add Tangshan Ayers Bath Equipment Co., Ltd., as Judgment Debtor, filed on

25   January 10, 2018, ECF 122 at 8:1-2 (internal citation page 3). Tangshan Ayers further asserted that
     Foremost's claim is really against its parent, Huida, but such claim is not asserted due to Foremost's

26   contractual agreement with Huida that any contractual dispute between Foremost and Huida requires
     arbitration before a tribunal in China.  *Id.* at 8:24-28, n. 9 (internal citation page 3); *see also,* Pretrial

27   Stipulation Pursuant to Local Bankruptcy Rule 7016-1(b)(1)(B), ECF 208, filed on January 5, 2021,
     Stipulated Facts Nos. 1 and 2 (the parties agree that Foremost and Huida had entered into their exclusive

28   distribution agreement in 2000, which included a dispute resolution provision for mandatory arbitration of
     certain disputes between them relating to the distribution agreement, but they disagree on the proper
     translation and scope of such arbitration provision).

evidence which it contends establishes the alter ego claims against Tangshan Ayers with respect to its subsidiary, Ayers Bath, and Tangshan Ayers has offered evidence in opposition to the renewed motion which it contends shows that Foremost has not established its alter ego claims against it.  However, the court does not reach the merits of Foremost's alter ego claims because as discussed below, the court determines that Foremost may not properly rely upon Federal Rule of Civil Procedure 69(a) to amend its judgment in the form of the allowed proof of claim in this bankruptcy case because relief under Rule 69(a) is available only for a money judgment and Foremost's allowed claim in this bankruptcy case is not a money judgment for purposes of the rule.

III.    BANKRUPTCY COURT'S RECOMMENDATION

The ruling of this United States Bankruptcy Court is that it recommends to the United States District Court that Foremost's renewed motion to amend the judgment of the bankruptcy court in the form of the allowed proof of claim in this bankruptcy case should be denied because: (1) Foremost's allowed proof of claim is not a money judgment within the meaning of Federal Rule of Civil Procedure 69(a) to support the application of California Code of Civil Procedure § 187; and (2) alternatively, Foremost's evidentiary showing does not meet the due process standard of California Code of Civil Procedure § 187.

On April 19, 2021, this court issued a tentative ruling on Foremost's renewed motion to amend judgment.  ECF 245.  In its tentative ruling, the court raised concerns and authorities regarding the applicability of Federal Rule of Civil Procedure 69(a) to Foremost's allowed proof of claim, which issue was not discussed in the original moving and opposing papers, and the court continued the final hearing on the motion so that the parties had an opportunity to consider and address the concerns and authorities in the issued tentative ruling.  Pursuant to the tentative ruling, parties could file supplemental briefs to address the court's tentative ruling.  Having reviewed the supplemental pleadings filed by parties, including post-hearing briefs on June 21, 2021,

1  and heard their oral arguments in response to the court's tentative ruling at the final

2  hearing on June 7, 2021, the United States Bankruptcy Court now rules as follows.

3       IV.    MOVANT'S PRELIMINARY OBJECTIONS TO BANKRUPTCY COURT'S

4               RECOMMENDATION BASED ON THE DOCTRINE OF THE LAW OF

5               THE CASE

6       In its supplemental brief, Foremost contends that the only issue before this court

7  is alter ego.  Foremost argues, "The District Court did not ask this Court to opine on, in

8  the first instance, the applicability of Rule 69(a) of the Federal Rules of Civil Procedure,

9  which was not disputed in the Tangshan Ayers Litigation."  Foremost Groups, Inc.'s

10  Supplemental Brief in Response to the Court's Tentative Ruling on Foremost's

11  Renewed Motion and Judgment, ECF 255 at 6:1-3 (internal citation page 2).  Although

12  the District Court referred this matter to this bankruptcy court to make findings on

13  Foremost's alter ego claim, this court cannot ignore the applicability of Federal Rule of

14  Civil Procedure 69(a) and the applicable legal precedent because the District Court

15  referred to this court Foremost's motion to amend the judgment of this court for this

16  court to rule on the motion in the first instance, and in doing so, this court must consider

17  the applicability of Rule 69(a) as to whether Foremost may amend this court's prior

18  judgment.

19       Federal Rule of Civil Procedure 69(a) requires a money judgment enforceable by

20  a writ of execution by its express terms which provide as follows:

21            **A money judgment is enforced by a writ of execution, unless the court
22  directs otherwise.**  The procedures on execution---and in proceedings
   supplementary to and in aid of judgment or execution---must accord with the
23  procedure of the state where the court is located, but a federal statute governs to
   the extent it applies.

24  Federal Rule of Civil Procedure 69(a) (emphasis in bold added).

25       As discussed in greater detail below, in this bankruptcy case, Foremost holds an

26  allowed proof of claim, which constitutes a final judgment for *res judicata* purposes, but

27  the allowed proof of claim is not a money judgment for purposes of Rule 69(a) as held

28

1  by the Eleventh Circuit in *Ziino v. Baker*, 613 F.3d 1326 (11th Cir. 2010).  While a

2  number of courts have followed the Eleventh Circuit's decision in *Ziino v. Baker* as

3  discussed below and there is no contrary authority based on this court's research, there

4  is no controlling case in the Ninth Circuit on the issue.  Based on the plain language of

5  Rule 69(a) and the applicable case law, the court concludes that it may not allow

6  Foremost to amend the allowed proof of claim filed in this bankruptcy case against the

7  bankruptcy estate of debtor Ayers Bath (U.S.A.) Co., Ltd., to include Tangshan Ayers, a

8  nondebtor third party, because the allowed claim is not an executable money judgment

9  within the meaning of Rule 69(a).

10      In its supplemental brief, Foremost argues that this court must apply Rule 69(a)

11  to allow it to amend its proof of claim under the doctrine of the law of the case without

12  questioning its applicability.  Specifically, Foremost contends that the doctrine of the law

13  of the case precludes this court "from reconsidering an issue already decided by the

14  same or a higher court in the same case."  Foremost Groups, Inc.'s Post-Hearing

15  Supplemental Brief, ECF 264 at 4:6-7 (internal citation page 1), citing to *Lucas*

16  *Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.,* 275 F.3d 762, 766 (9th Cir.

17  2001).

18      In considering Foremost's argument that the doctrine of the law of the case

19  precludes this court from deciding the issue of the applicability of Rule 69(a) to

20  Foremost's motion to amend the judgment of this court in the form of its allowed proof of

21  claim to add Tangshan Ayers as a judgment debtor, the court first reviews the

22  applicable law governing the doctrine of the law of the case and then the proceedings

23  before the District Court upon which Foremost's argument is based.

24      "For the doctrine [of law of the case] to apply, the issue in question must have

25  been 'decided explicitly or by necessary implication in [the] previous disposition.'"

26  *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (citation

27  omitted).  Moreover, "[a]pplication of the doctrine is discretionary."  *Id*. (citation omitted).

28  "The 'law of the case acts as a bar only when the issue in question was actually

1  considered and decided by the first court.'" *United Steelworkers of America v.*

2  *Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc*., 512 F.3d 555,

3  564 (9th Cir. 2008) (citation omitted); *see also, Mirchandani v. United States*, 836 F.2d

4  1223, 1225 (9th Cir. 1988) (the law-of-the-case doctrine does not apply where the court

5  did not previously reach a decision based on the merits).

6      Foremost argues the applicability of Rule 69(a) was raised in the Tangshan

7  Ayers Litigation and "necessarily decided" by the District Court prior to the referral of the

8  matter to this court "for a determination of alter ego."  Foremost Groups, Inc.'s Post-

9  Hearing Supplemental Brief, ECF 264 at 4:14-16 (internal citation page 1).  As such,

10  according to Foremost, "the District Court's decision constitutes the law of the case and

11  should not be reconsidered."  *Id*. at 4:16-18 (internal citation page 1).

12      Foremost argues that it "first invoked Rule 69(a) in its First Amended Complaint,

13  filed on November 17, 2015, after the District Court held that, while Foremost could not

14  bring standalone claims for tortious interference and unjust enrichment against

15  Tangshan Ayers due to the res judicata effect of the Proof of Claim, claims based on

16  alter ego or action upon the judgment could be pursued."  *Id*. at 4-5 (internal citation

17  pages 1-2) (citations omitted).  Then, Foremost argues that "[i]n the two motions to

18  dismiss that followed, Tangshan Ayers did not argue that the Proof of Claim cannot, as

19  a matter of law, be amended under Rule 69(a)."  *Id*. at 5 (internal citation page 2)

20  (citations omitted).  In support of this assertion, Foremost argues:

21          To the contrary, Tangshan Ayers expressly acknowledged that:

22          It is true Bankruptcy courts are allowed to amend their orders to add third-party
            judgment debtors under certain circumstances.  It is equally true that under Rule
23          69(a) federal courts are authorized to rely on state law which permits "permits
            judgment creditors to use any execution method consistent with the practice and
24          procedure of the state in which the district court sits" and, "Under California Code
            of Civil Procedure § 187, a court has authority to amend a judgment to add
25          additional judgment debtors, *In re Levander,* 180 F.3d 1114, 1121 (9th Cir.
26          1999).

27  *Id*. at 5:6-18 (internal citation page 2), *citing and quoting,* Tangshan's Reply to
28
    Foremost's Opposition to Rule 12(b)(6) Motion to Dismiss.

According to Foremost, "In ruling on Tangshan Ayers's Motion to Dismiss the First Amended Complaint, the District Court held only that Rule 69(a) is a procedural device and does not provide a cause of action." *Id.* at 5:19-23 (internal citation page 2), *citing, In Chambers Order Granting In Part and Denying In Part Defendant's Motion to Dismiss,* dated January 6, 2016, Exhibit P to Foremost's Supplemental Request for Judicial Notice, ECF 263.  In so ruling, according to Foremost, "The District Court did not hold that the Proof of Claim, which it had previously determined was a final judgment under *Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998), was not a 'money judgment' within the meaning of Rule 69(a)." *Id.* at 5:23-6:1 (internal citation pages 2-3) (citations omitted).[6]  Foremost then argues: "Had it believed that to be the case, it would have ruled and ended the litigation which, at that point, had been going on for nearly four-and-a-half years across multiple forums." *Id.* at 6:1-3 (internal citation page 3).  According to Foremost, "Instead, the District Court allowed Foremost to file an amended pleading which preserved its claim to enforce the judgment on the basis of alter ego, without asserting the standalone causes of action for alter ego or execution under Rule 69(a)." *Id.* at 6:3-6 (internal citation page 3).

Foremost explains that it did file the amended pleading, its Second Amended Complaint in the Tangshan Ayers Litigation, which asserts a single cause of action for "Action on Judgment." *Id.* at 6 (internal citation page 3).  Foremost notes that in response to the Second Amended Complaint:

Tangshan Ayers again moved to dismiss.  In its motion papers, Tangshan Ayers

---

[6] Foremost does recognize in a footnote in its post-hearing brief that in ruling on Tangshan Ayers's motion to dismiss Foremost's first amended complaint: "The District Court acknowledged that it was not making a finding as to the procedural manner in which Rule 69(a) would apply to the Ayers Bath Bankruptcy Case, i.e., through Rule 7069 of the Federal Rules of Bankruptcy Procedure."  Foremost Groups, Inc.'s Post-Hearing Supplemental Brief, ECF 264 at 3:27-28, n. 4.  In footnote 3 of the order on Tangshan Ayers's motion to dismiss Foremost's first amended complaint, the District Court stated: "The Court makes no finding regarding whether Federal Rule of Civil Procedure 69 would apply to the In re Ayers Bath (USA ) Co., Ltd., Case No. 2:13-bk-17409-RK action itself through the Federal Rules Bankruptcy Procedure Rule 7069 or another rule of bankruptcy procedure and what effect if any would have on this Court's jurisdiction."  In Chambers Order Granting in Part and Denying in Part Defendant's Motion to Dismiss [52], dated January 6, 2016, at 2-3 and nn. 2 and 3, Supplemental RJN, ECF 263, Exhibit P.  It appears to this court that the District Court was not just stating that it was not making a finding as to the procedural manner in which Rule 69(a) would apply to the Ayers Bath Bankruptcy Case as Foremost characterizes it, but rather as to whether the rule applied at all.

did not deviate from its previous acknowledgment that Rule 69(a) was available, but argued that due process concerns cautioned against the amendment of an uncontested proof of claim.  *See* Supp. RJN, Ex. T (Tangshan's Reply to Foremost's Opposition to its Motion to Dismiss the SAC Pursuant to FRCP 12(b)(1) and 12(b)(6)), at 11-13.  Tangshan Ayers also argued that the Second Amended Complaint should be dismissed for lack of subject matter jurisdiction and an equitable estoppel and issue and claims preclusion grounds.  *See id.,* Ex. B (Defendant Tangshan Ayers Bath Equipment Co. Ltd.'s Memorandum of Law Submitted in Support of Motion to Dismiss the Second Amended Complaint Pursuant to FRCP Rule 12(b)(1) and Rule 12(b)(6)).

*Id.* at 6:8-18 (internal citation page 3).  As Foremost states, "In response, the District Court issued the Stay Order, which states that the Tangshan Ayers Litigation 'is STAYED in order to give Foremost the opportunity to seek an amended judgment through the bankruptcy court.  *See In re Levander,* 180 F.3d 1114 (9th Cir. 1999)."  *Id.* at 6:19-22 (internal citation page 3), *citing In re Levander,* 180 F.3d 1114 (9th Cir. 1999).  Foremost further contends:

In *Levander,* the only case cited by the District Court, the Ninth Circuit expressly held that the bankruptcy court was authorized to amend an order awarding attorneys' fees to add an additional judgment debtor under Rule 69(a) if the requirements of California law (specifically, California Code of Civil Procedure section 187) are met. 180 F.3d at 1120-1121. **The Stay Order necessarily assumes that amendment under Rule 69(a) is possible (which had never been disputed),** but leaves to this Court to determine, in the first instance, whether the elements of California Code of Civil Procedure section 187---alter ego and control of the litigation---are satisfied.

*Id.* at 6:23 - 7:6 (internal citation pages 3-4) (emphasis in bold added).

Foremost argues: "If there was any question as to the District Court's intent, it was resolved when the District Court issued the Referral Order in November 2017."  *Id.* at 7:7-8 (internal citation page 4).  According to Foremost,

In that Order [i.e., the Referral Order], which was the result of Tangshan Ayers's frivolous argument that Foremost was required to re-serve Tangshan Ayers under the Hague Convention before proceedings in the Bankruptcy Court could resume, the District Court confirmed that, in issuing the Stay Order, it ***"intended that the alter-ego issue [be referred] to the Bankruptcy Court for proposed findings of fact and conclusions of law under 28 U.S.C. § 157."***  Supp. RJN , Ex. Y (In Chambers Order Lifting Stay, dated November 1, 2017) (emphasis added).  The Referral Order does not contemplate this Court opining on any issue in the Tangshan Ayers Litigation (which had been pending with the District

1

2

Court for nearly four years) other than alter ego.

*Id.* at 7:7-17 (internal citation page 4) (emphasis in original).

In Foremost's view, "The Stay Order and Referral Order reflect the District Court's assumption that the Proof of Claim is capable of being amended; the only question for this Court is whether the alter ego test is met, as the District Court stated." *Id.* at 7:18-20 (internal citation page 4). Thus, Foremost "respectfully submits that this Court lacks discretion to opine on the applicability of Rule 69(a) or decline to make proposed findings of fact and conclusions of law with respect to alter ego." *Id.* at 7:21-23 (internal citation page 4). Foremost then goes on to argue that "If the District Court's holding that the Proof of Claim is a final judgment subject to enforcement against Tangshan Ayers was in error, Tangshan Ayers may appeal the District Court's ultimate decision with respect to this Court's proposed findings of fact and conclusions on the issue of alter ego." *Id.* at 7:23-27 (internal citation page 4). Nevertheless, as Foremost finally argues, "[b]ut this Court should not second-guess the District Court with respect to whether the Proof of Claim is capable of amendment; it should simply determine whether amendment is proper on the basis of alter ego." *Id.* at 7:27 - 8:2 (internal citation pages 4-5).

This bankruptcy court has considered Foremost's argument that the law of the case precludes it from considering whether Rule 69(a) applies to Foremost's proof of claim based on the District Court's prior rulings, and the court has reviewed the various pleadings and orders in the Tangshan Ayers Litigation relating to Tangshan Ayers's motions to dismiss, including the District Court's Stay Order and Referral Order. Based on such consideration and review, the court determines that Foremost's argument lacks merit. In its post-hearing briefing, Foremost cited the applicable Ninth Circuit law regarding the doctrine of the law of the case that under the doctrine, a court is precluded from reconsidering an issue already decided by the same or a higher court in the same case; for the doctrine to apply, the issue must have been "decided explicitly or by necessary implication in [the] prior disposition"; and failure to apply the doctrine,

1  unless one or more exception is met, constitutes an abuse of discretion. [7]  *Id.* at 4:6-13

2  (internal citation page 1) (citing case law), *citing and quoting, Lucas Automotive*

3  *Engineering, Inc. v. Bridgestone/Firestone, Inc.,* 275 F.3d 762, 766 (9th Cir. 2001);

4  *United States v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir. 2000); and *United*

5  *States v. Alexander,* 106 F.3d 874, 876 (9th Cir. 1997).  However, Foremost has not

6  shown how under this case law that the doctrine applies here.  *Id.* at 4:14 - 8:2 (internal

7  citation pages 1-5) (Foremost's analysis).

8         In order for the doctrine of the law of the case to apply, the issue must have been

9  decided explicitly or by necessary implication in the prior disposition.  *United States v.*

10  *Lummi Indian Tribe,* 235 F.3d at 452.  Foremost in its analysis has not shown that the

11  issue of whether Rule 69(a) allows it to amend its proof of claim to add another party as

12  a judgment debtor was explicitly decided by the District Court.  To the contrary, the

13  District Court expressly stated in the Tangshan Ayers Litigation in granting Tangshan

14  Ayers's motion to dismiss Foremost's first amended complaint as follows: "The Court

15  makes no finding regarding whether Federal Rule of Civil Procedure 69 would apply to

16  the *In re Ayers Bath (USA) Co., Ltd.,* Case No. 2:13-bk-17409-RK action itself through

17  the Federal Rules Bankruptcy Procedure Rule 7069 or another rule of bankruptcy

18  procedure and what effect if any that would have on this Court's jurisdiction."   In

19  Chambers Order Granting in Part and Denying in Part Defendant's Motion to Dismiss

20  [52], dated January 6, 2016, at 2-3 and n. 3, Supplemental RJN, ECF 263, Exhibit P, In

21  granting Tangshan Ayers's motions to dismiss Foremost's original complaint in part,[8]

22  _____

23  [7]  If the doctrine of the law of the case applies, the court may have discretion to depart from it under
   specific circumstances:  "[A] court may have discretion to depart form the law of the case if:  1) the first
24  decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on
   remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would
25  otherwise result."  *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998) (citation omitted).  The
   court's failure to apply one of these requisite conditions is an abuse of discretion.  *Id.*  The court does not
26  have to exercise any discretion to depart from the law of the case because the doctrine does not apply.

27  [8]  Tangshan Ayers filed two separate motions to dismiss Foremost's original complaint, the first one being
   under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) on grounds that Foremost failed to join an
28  indispensable party, Tangshan Huida Ceramic Group Co., Ltd., and that any dispute arising out of
   Foremost's agreement with Huida was committed to mandatory arbitration, and the second one with
   leave of court under Federal Rule of Civil Procedure 12(b)(6) for Tangshan Ayers to address Foremost's

the District Court earlier stated, "The Court does not consider whether Plaintiff has a viable common law alter ego claim or action upon the judgment because the Complaint does not allege standalone claims to enforce the proof of claim against Tangshan."  In Chambers Order Granting Defendant's Motion to Dismiss [40] Denying Defendant's Motion to Dismiss as Moot [26] and Denying Plaintiff's Motion for Leave to File Surreply [47], dated October 28, 2015, at 9, n. 8, Supplemental RJN, ECF 263, Exhibit K.  These statements of the District Court in the Tangshan Ayers Litigation indicate that it had not explicitly decided whether Rule 69 would apply to Foremost's proof of claim in this bankruptcy case.  Foremost in its supplemental or other papers has not shown otherwise that there was an explicit holding of the District Court that Rule 69(a) applies to its proof of claim.

In reviewing the pleadings in the Tangshan Ayers Litigation relating to Tangshan Ayers's motions to dismiss Foremost's original complaint against it, the court notes that the original complaint alleged four standalone claims against Tangshan Ayers: (1) intentional interference with prospective economic advantage; (2) tortious interference with commercial relations; (3) statutory unfair competition under California Business & Professions Code §§ 17200 17203; and (4) common law unfair competition.  Complaint, Tangshan Ayers Litigation, filed on January 9, 2014, Supplemental RJN, ECF 263, Exhibit A; In Chambers Order Granting Defendant's Motion to Dismiss [40] Denying Defendant's Motion to Dismiss as Moot [26] and Denying Plaintiff's Motion for Leave to File Surreply [47], dated October 28, 2015, at 8 and n. 5, Supplemental RJN, ECF 263, Exhibit K.  In its original complaint in the Tangshan Ayers Litigation, Foremost alleged that Tangshan Ayers was Ayers Bath's alter ego and asserted its claims for tortious interference and unfair competition based on conduct at issue in Foremost's prior civil action against Ayers Bath in *Foremost Groups, Inc., f/k/a Foremost International*

---

theory of the case that its proof of claim in the Ayers Bath bankruptcy case had preclusive effect.  *See* In Chambers Order Granting Defendant's Motion to Dismiss [40] Denying Defendant's Motion to Dismiss as Moot [26] and Denying Plaintiff's Motion for Leave to File Surreply [47], dated October 28, 2015, at 1-2, Supplemental RJN, ECF 263, Exhibit K.

*Trading Co., Inc. v. Ayers Bath (USA) Corp.,* Civil Action No. CV11-7473 GAF (Ex) (C.D. Cal., complaint filed on September 12, 2011). [9]  Pretrial Stipulation Pursuant to Local Bankruptcy Rule 7016-1(b)(1)(B), ECF 208, filed on January 5, 2021, Stipulated Facts Nos. 15, 16, 17, 18, 19, 36 and 37.

In the original complaint in the Tangshan Ayers Litigation, Foremost referred to this bankruptcy case in paragraph 80 in alleging as follows:

> 80.  On March 22, 2013, Ayers filed a voluntary petition under chapter 7 of title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California, *In re Ayers Bath (USA) Co., Ltd.,* Case No. 2:13-bk-17409-RK (the "Ayers Bankruptcy").  As a result, the Ayers Litigation is stayed pursuant to section 362 of the Bankruptcy Code.

Complaint, Tangshan Ayers Litigation, filed on January 9, 2014, Supplemental RJN, ECF 263, Exhibit A; *see also,* Pretrial Stipulation Pursuant to Local Bankruptcy Rule 7016-1(b)(1)(B), ECF 208, filed on January 5, 2021, Stipulated Fact No. 38.  The complaint did not refer to Foremost's proof of claim filed in this bankruptcy case on December 12, 2013.  *Id.*  That is, while the original complaint mentions the Ayers Bath bankruptcy case, it does not refer to the proof of claim that Foremost filed in this case, nor does the original complaint allege that Tangshan Ayers would be potentially liable for the proof of claim.  *Id.*

After Foremost filed its original complaint in the Tangshan Ayers Litigation on January 14, 2015, the Chapter 7 trustee filed his final report in this case on April 14, 2015.  ECF 50.  The Chapter 7 trustee's notice of proposed payments, also filed on April 14, 2015, showed Foremost had an allowed claim against the Ayers Bath bankruptcy estate in the amount of $5,265,000 with a proposed payment of $7,757.24.  ECF 51; Pretrial Stipulation Pursuant to Local Bankruptcy Rule 7016-1(b)(1)(B), ECF 208, filed on January 5, 2021, Stipulated Fact No. 35.  On April 14, 2015, Foremost's uncontested proof of claim was deemed allowed in the amount of $5,265,000.  Pretrial

---

[9]  In the Ayers Bath civil action, Foremost alleged that Ayers Bath was distributing Huida products and interfering with Foremost's exclusive distribution rights under its agreement with Huida, which allegations Ayers Bath denied.  Pretrial Stipulation Pursuant to Local Bankruptcy Rule 7016-1(b)(1)(B), ECF 208, filed on January 5, 2021, Stipulated Facts Nos. 15 and 16.

Stipulation Pursuant to Local Bankruptcy Rule 7016-1(b)(1)(B), ECF 208, filed on

January 5, 2021, Stipulated Fact No. 34.  The bankruptcy court closed the Ayers Bath

bankruptcy case on July 27, 2015.  ECF 59; Pretrial Stipulation Pursuant to Local

Bankruptcy Rule 7016-1(b)(1)(B), ECF 208, filed on January 5, 2021, Stipulated Fact

No. 39.

Foremost first asserted its theory of Tangshan Ayers's liability for its allowed

claim in this bankruptcy case in its opposition to Tangshan Ayers's initial motion to

dismiss Foremost's original complaint in the Tangshan Ayers Litigation, filed on or about

July 13, 2015.  Plaintiff Foremost Groups, Inc.'s Opposition to Defendant Tangshan

Ayers Bath Equipment Co., Ltd.'s Motion to Dismiss the Complaint Pursuant to FRCP

12(b)(1), 12(b)(7) and 19, Tangshan Ayers Litigation, filed on or about July 13, 2015,

Supplemental RJN, ECF 263, Exhibit D.  In this opposition to Tangshan Ayers's motion

to dismiss, Foremost described the proceedings of this bankruptcy case as follows:

> On March 22, 2013, Ayers filed a voluntary petition under chapter 7 of title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California, *In re Ayers Bath (USA) Co., Ltd.,* Case No. 2:13-bk-17409-RK (the "Ayers Bankruptcy").

> In the Ayers Bankruptcy, Foremost sought to examine Ayers under Rule 2004 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2004-1. Ayers ultimately consented to an Bankruptcy Rule 2004 examination, though only after confronted with yet another motion to compel.  The testimony elicited during the Bankruptcy Rule 2004 examination left little doubt that Ayers is the alter ego of Tangshan Ayers, formed for the sole purpose of subverting Foremost's rights under the Exclusive Distribution Agreement.

> On December 12, 2013, Foremost filed a proof of claim in the Ayers Bankruptcy in an amount not less than $5,265,000 (the "Proof of Claim").  *See* Velocci Decl., Ex. B.  The Addendum to the Proof of Claim states that the Proof of Claim is for damages incurred by Foremost "as a result of Ayers' interference with Foremost's contractual relationship with Huida and Foremost's pursuit of prospective economic business advantage by Ayers' importation of Huida products and sale of those products to retail stores, wholesale channels and regional dealers in the United States." *Id*.  The Ayers Complaint was attached to the Proof of Claim as Exhibit A.  *See id.*

> Neither Ayers, the chapter 7 trustee or any other party in interest, including Tangshan Ayers, objected to Foremost's Proof of Claim.  Accordingly,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Foremost's Proof of Claim was deemed allowed in the amount of $5,265,000.
> See *Ayers Bath (USA) Co., Ltd.,* Case No. 2:13-bk-17409-RK, Chapter 7
> Trustee's Final Report, Application for Compensation and Application(s) for
> Compensation of Professionals (Dkt. No. 50). Despite having gross revenues of
> $424,71 in 2010, $2,011,663 in 2011 and $158,625 in 2013, the total assets of
> Ayers' bankruptcy case were approximately $50,000. As a result, Foremost
> received a distribution of $7,757.24, or approximately .15% of its allowed claim.
> *See id.*

*Id.* at 8-9.

After alleging these facts about the proceedings in this bankruptcy case,

Foremost stated its lead argument in opposition to Tangshan Ayers's motion to dismiss

the original complaint with the heading, **"The Scope of this Action Is Now Limited to**

**Whether Ayers is an Alter Ego of Tangshan Ayers."** *Id.* at 9 (emphasis in bold

added). According to Foremost, the allowance of its proof of claim in this bankruptcy

case changed the scope of the Tangshan Ayers Litigation because as Foremost put it,

"Because the allowance of the Proof of Claim constitutes a final judgment, Tangshan

Ayers may be bound by judgment under well-established principles of res judicata, or

claim preclusion." *Id.*

The circumstances that Foremost says were changed by the allowance of its

proof of claim in this bankruptcy case were described in its opposition to Tangshan

Ayers's motion to dismiss as follows:

> Tangshan Ayers fails to appreciate that the scope of this suit has dramatically
> narrowed following the allowance of Foremost's Proof of Claim in the Ayers
> Bankruptcy. In the Ayers Bankruptcy. Foremost filed the Proof of Claim seeking
> to recover the damages caused by the same tortious conduct alleged in the
> Complaint---namely, Ayers' unlawful distribution of Huida products. As neither
> Ayers, the chapter 7 trustee or any other party in interest objected to the Proof of
> Claim, it was deemed allowed. Because the allowance of the Proof of Claim
> constitutes a final judgment, Tangshan Ayers may be bound by judgment under
> well-established principles of res judicata, or claim preclusion.

*Id.* In this opposition, Foremost further argued that all but one of the elements of claim

preclusion under Ninth Circuit precedent in *Siegel v. Federal Home Loan Mortgage*

*Corp.,* 134 F.3d 525, 529 (9th Cir. 1998) were met here: (1) the first element of

preclusion that there is a final judgment is met by the allowance of the proof of claim by

the bankruptcy court in this bankruptcy case; (2) the second element of preclusion that

the judgment is by a court of competent jurisdiction is also met by the allowance of the

proof of claim by the bankruptcy court in this bankruptcy case; (3) the third element that

the same cause of action is involved in both cases is met by the fact that the claims in

the Tangshan Ayers Litigation formed the basis of, and was attached to, the proof of

claim in this bankruptcy case; and (4) the fourth and final element, the identity of the

parties was yet to be determined, and Foremost alleged in the complaint that there

existed a unity of interest and ownership between Tangshan Ayers and Ayers Bath that

the individuality and separateness of those entities ceased to exist, and Ayers Bath was

Tangshan Ayers's alter ego.  *Id.* at 10.  In the opposition, Foremost posited that if it

"establishes Ayers is Tangshan Ayers' alter ego, Tangshan Ayers is bound by the

judgment under claim preclusion principles."  *Id.*  As stated in the opposition, in

Foremost's view, "Such a finding would bar Tangshan Ayers from litigating whether the

alleged conduct was tortious and eliminate any need to consider Foremost and Huida's

respective rights and obligations under the Exclusive Distribution Agreement."  *Id.* at 11.

In other words, Foremost was asserting its view that it would no longer have to

prove up the merits of the substantive claims in its complaint in the Tangshan Ayers

Litigation, but rather, based on its allowed claim in this bankruptcy case, which has

preclusive effect, it need only establish that Ayers Bath, the debtor in this bankruptcy

case, was Tangshan Ayers's alter ego to prove Tangshan Ayers's liability for the claims

alleged in the complaint.  As reflected in its decision of October 28, 2015 on Tangshan

Ayers's motions to dismiss Foremost's complaint, the District Court queried counsel for

Foremost about its new theory of recovery at the hearing on the motions as described

by the District Court as follows:

> At the hearing, Counsel for Plaintiff stated: "And we believe that under the *Siegel*
> case, the Ninth Circuit opinion that's cited in our papers, in which no response
> from the defendant is included in their papers addressing that opinion, that, in
> fact, that proof of claim serves as a judgment not only against the debtor but
> against Tangshan Ayers as the alter ego.  And we believe that this case should

1
2
3

only be about whether, in fact, Tangshan Ayers is the alter ego of Ayers USA. And if it is, then it should be liable under that claim which was not objected to." Dkt. 44, 6:5-13.  The Court asked whether Plaintiff was "basically executing on a judgment" and Counsel answered "Correct."  *Id.,* 6:14-16.

4

In Chambers Order Granting Defendant's Motion to Dismiss [40] Denying Defendant's

5

Motion to Dismiss as Moot [26] and Denying Plaintiff's Motion for Leave to File Surreply

6

[47], dated October 28, 2015, at 7 and n. 4, Supplemental RJN, ECF 263, Exhibit K.

7

Having heard the arguments of the parties on Tangshan Ayers's motion to

8

dismiss Foremost's original complaint in the Tangshan Ayers Litigation, the District

9

Court stated:

10
11
12
13
14

Though the parties' arguments are somewhat convoluted, both parties attempt to dispose of the case on the basis of res judicata.  The Defendant asks the Court to bar the Plaintiff's claim on the basis of the Ayers Litigation and the Plaintiff argues that its claims are conclusively established through the proof of claim accepted in the Ayers Bankruptcy.  After considering the arguments for each party, the Court finds that the Plaintiff's claims, as currently characterized, must be dismissed.

15
16
17
18

Defendant argues that Plaintiff's claim is foreclosed by the Ayers Litigation.  *See* Dkt. 40-1, 9-15.  To the extent that Plaintiff relies upon the same claims that were at issue in the Ayers Litigation and accepted by the bankruptcy court in the proof of claim, the Court agrees that the principle of res judicata bars relitigation of the same claims.  But, for the reasons stated below, the Court reaches this decision by a different logic.

19
20
21

Plaintiff rightly directs the Court to the Ninth Circuit's opinion in *Siegel v. Fed. Home Loan Mortgage Corp.,* 131 F.3d 525 (9th Cir. 1998), but does not follow the opinion to its logical conclusion . . . .

22

****

23
24
25
26
27

The Ninth Circuit held that the plaintiff was barred from bringing the action under the doctrine of res judicata.  "The 'doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered a final judgment on the merits of the claim in a previous action involving the same parties or privies.'"  *Id.*  (quoting *In re Int'l Nutronics, Inc.,* 28 F.3d 965 (9th Cir. 1994). Significantly, the court held that a proof of claim acts as a final judgment regardless of whether it was contested.  *See id.* at 529-30.  "In short, the validity of the claim has been determined on the merits, and attacks upon it that 'could have been asserted' cannot be raised in later proceedings."  *Id.* at 530.

28

Here, because the proof of claim was based on the Ayers Litigation, the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Complaint, as styled, must be dismissed. The Complaint alleges four claims against Defendant, but under Plaintiff's theory of the case, these claims merged with its judgment in the Ayers Bankruptcy action. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Owenby,* 42 F. App'x 59, 63 (9th Cir. 2002); *see also* Restatement (Second) of Judgments § 18(1) (1982) ("The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment.")  Plaintiff cannot relitigate the claims that are the basis of the Ayers Bankruptcy proof of claim.

Put simply, Plaintiff cannot have it both ways.  The doctrine of res judicata will not allow a plaintiff to both vindicate its underlying claims and seek to enforce a judgment.  Plaintiff's attempt to do both in the same action fails as a matter of law.

*Id.* at 7-9.  The District Court granted Tangshan Ayers's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), but not pursuant to Federal Rule of Civil Procedure 12(b)(1) or (7) as moot, and with leave to amend the complaint within 21 days of the order.  *Id.* at 9.

On or about November 17, 2015, Foremost served and filed its First Amended Complaint in the Tangshan Ayers Litigation.  First Amended Complaint, Tangshan Ayers Litigation, filed on or about November 17, 2015, Supplemental RJN, ECF 263, Exhibit L.  The First Amended Complaint alleged three causes of action: (1) for alter ego liability of Tangshan Ayers as to Ayers Bath; (2) for action on the judgment based on the allowed claim in the Ayers Bath bankruptcy case; and (3) for execution of judgment in form of the allowed claim in the Ayers Bath bankruptcy case pursuant to Federal Rule of Civil Procedure 69.  *Id.*  On or about December 8, 2015, Tangshan Ayers filed and served a motion to dismiss Foremost's first amended complaint pursuant to Federal Rules of Civil Procedure 4(m), 12(b)(1) and 12(b)(6).  *See* Defendant Tangshan Ayers's Memorandum of Law Submitted in Support of Its Motion to Dismiss the FAC Pursuant to FRCP Rule 4(m), Rule 12(b)(1) and Rule 12(b)(6), Tangshan Ayers Litigation, filed on or about December 8, 2015, Supplemental RJN, ECF 263, Exhibit M.

On January 6, 2016, the District Court issued its order granting Tangshan Ayers's motion to dismiss Foremost's first amended complaint, which dismissed the first

-21-

1    and third causes of action for alter ego liability and execution on the judgment under

2    Rule 69, but with leave to amend within 21 days of the order.  In Chambers Order

3    Granting in Part and Denying in Part Defendant's Motion to Dismiss [52], dated January

4    6, 2016, at 2-3 and nn. 2 and 3, Supplemental RJN, ECF 263, Exhibit P.  The District

5    Court stated:

6            Tangshan argues that Foremost's FAC is simply a "procedural vehicle through
             which Foremost seeks to impose liability on Tangshan for its $5,265,000 Proof of
7            Claim."  Dkt. 52, 2.  The Court finds that several of Foremost's purported causes
             of action cannot act as appropriate vehicles to state a claim upon which relief
8            may be granted.

9

10   *Id.* at 2.  As to Foremost's first cause of action for alter ego liability against Tangshan

11   Ayers, the District Court stated:

12           California law does not recognize a substantive alter ego claim.  *Shaoxing Cty.*
             *Huayue Imp. & Exp. v. Blaumi,* 120 Cal.Rptr.3d 303, 310 (Cal. Ct. App. 2011);
13           *see also, Alcom, Ltd. v. Smeding,* 623 F.3d 1248, 1250 (9th Cir 2010) (finding the
             alter ego doctrine is a procedural rather than substantive claim).  Instead, the
14           alter ego doctrine is a theory of liability that must be alleged in the complaint.
             *Leek v. Cooper,* 125 Cal.Rptr.3d 56, 68 (Cal. Ct. App. 2011).  Accordingly,
15           Plaintiff's first cause of action is dismissed with prejudice.

16   *Id.*[10]

17           As to Foremost's third cause of action for execution on the judgment under

18   Federal Rule of Civil Procedure 69, the District Court stated in its order:

19           Likewise, Federal Rules of Civil Procedure Rule 69(a) is procedural and does not
20           provide a substantive claim.  Rule 69(a) provides: "[a] money judgment is
             enforced by a writ of execution, unless the court directs otherwise.  The
21           procedure on execution---and in proceedings supplementary to and in aid of
             judgment or execution---must accord with the procedure of the state where the
22           court is located, but a federal statute governs to the extent it applies."  Fed. R.
             Civ. P. 69(a).  In the opposition, Plaintiff argues that Rule 69(a) authorizes the
23           Court to add additional judgment debtors to an amended judgment.  *See* Dkt. 54,
24           13.  Through the Court harbors serious concerns about whether it would have
             jurisdiction to amend the judgment of another court, for purposes of this motion
25           the Court only finds that Rule 69(a) does not provide an independent cause of
             action.  Accordingly, Plaintiff's third cause of action is dismissed with prejudice.
26

27   _____

28   [10]  In footnote 2 of the order relating to this text, the District Court stated: "In an amended complaint,
     Plaintiff need not remove the allegation of alter ego liability, but Plaintiff should not style the allegation as
     a cause of action."  *Id.* at 2, n. 2.

1  *Id.* at 2-3.  In footnote 3 of the order relating to the above text, the District Court stated:

2  "The Court makes no finding regarding whether Federal Rule of Civil Procedure 69

3  would apply to the *In re Ayers Bath (USA) Co., Ltd.,* Case No. 2:13-bk-17409-RK action

4  itself through the Federal Rules Bankruptcy Procedure Rule 7069 or another rule of

5  bankruptcy procedure and what effect if any would have on this Court's jurisdiction."  *Id.*

6  at 2-3, n. 3.

7  On or about January 25, 2016, Foremost served and filed its Second Amended

8  Complaint in the Tangshan Ayers Litigation.  Second Amended Complaint, Tangshan

9  Ayers Litigation, filed on or about January 25, 2016, Supplemental RJN, ECF 263,

10  Exhibit Q.  The First Amended Complaint alleged one cause of action for action on the

11  judgment based on the allowed claim in the Ayers Bath bankruptcy case, but alleged in

12  the complaint that Ayers Bath was the alter ego of Tangshan Ayers.  *Id.*  In the prayer

13  for relief in the second amended complaint, Foremost prayed for judgment that the

14  District Court issue an order finding that Tangshan Ayers to be the alter ego of Ayers

15  Bath, amending the judgment against Ayers Bath to add Tangshan Ayers as a judgment

16  debtor and for a writ of execution against Tangshan Ayers.  *Id.* at 11.

17  On or about February 7, 2016, Tangshan Ayers filed and served a motion to

18  dismiss Foremost's second amended complaint pursuant to Federal Rules of Civil

19  Procedure 12(b)(1) and 12(b)(6).  *See* Defendant Tangshan Ayers's Memorandum of

20  Law Submitted in Support of Its Motion to Dismiss the Second Amended Complaint

21  Pursuant to FRCP Rule 12(b)(1) and Rule 12(b)(6), Tangshan Ayers Litigation, filed on

22  or about February 7, 2016, Supplemental RJN, ECF 263, Exhibit R.  On or about

23  February 16, 2016, Foremost filed its opposition to Tangshan Ayers's motion to dismiss

24  the second amended complaint.  Plaintiff Foremost Groups, Inc.'s Opposition to

25  Defendant Tangshan Ayers's Motion to Dismiss the Second Amended Complaint

26  Pursuant to FRCP Rule 12(b)(1) and Rule 12(b)(6), Tangshan Ayers Litigation, filed on

27  or about February 16, 2016, Supplemental RJN, ECF 263, Exhibit S.  On or about

28  February 22, 2016, Tangshan Ayers filed its reply to Foremost's opposition to its motion

1  to dismiss the second amended complaint.  Tangshan's Reply to Foremost's Opposition

2  to its Motion to Dismiss the Second Amended Complaint Pursuant to FRCP 12(b)(1)

3  and 12(b)(6), Tangshan Ayers Litigation, filed on or about February 22, 2016,

4  Supplemental RJN, ECF 263, Exhibit T.

5        Having considered the parties' papers relating to Tangshan Ayers's motion to

6  dismiss Foremost's second amended complaint, the District Court issued its "In

7  Chambers Order Staying Proceedings," dated March 8, 2016.  In Chambers Order

8  Staying Proceedings, dated March 8, 2016, Supplemental RJN, ECF 263, Exhibit U

9  This order, which has been previously referred to as the Stay Order, stated as follows:

> The Court has extensively considered the tangled procedural context of the
> present motion and concludes that, as a first measure, Foremost should seek an
> amended judgment through the bankruptcy court.  Whichever way Foremost has
> portrayed its case, ultimately, it is an effort to amend the judgment of the
> bankruptcy court.  In that regard, the action is STAYED in order to give Foremost
> the opportunity to seek an amended judgment through the bankruptcy court.  *See
> In re Levander,* 180 F.3d 1114 (9th Cir. 1999).
>
> The hearing scheduled to take place on March 14, 2016 is VACATED and OFF-
> CALENDAR.

*Id.* at 1.

On or about September 18, 2017, Foremost filed its motion to lift stay in the

Tangshan Ayers Litigation.  *See* Memorandum of Points and Authorities in Support of

Motion of Foremost Groups, Inc., f/k/a Foremost International Trading Co., Inc., to Lift

Stay, Tangshan Ayers Litigation, filed on or about September 18, 2017, Supplemental

RJN, ECF 263, Exhibit V.  In this motion, Foremost moved for the District Court to issue

an order lifting the stay imposed by its Stay Order in order to allow: (1) the filing of a

motion pursuant to Federal Rule of Civil Procedure 69(a) amending the judgment

against Ayers Bath to add Tangshan Ayers as a judgment debtor; and (2) the

subsequent referral of the motion to amend to the United States Bankruptcy Court for

proposed findings of fact and conclusions of law.  *Id.* at 2.  By that time, Foremost had

filed its motion to reopen the bankruptcy case and its motion to amend the judgment in

the bankruptcy case to add Tangshan Ayers as an additional judgment debtor, but

Tangshan Ayers filed an opposition to the motion to amend the judgment on grounds

that Foremost had not served process on Tangshan Ayers in the bankruptcy case in

accordance with the Hague Convention.  *Id.* at 2-3.  Foremost had argued in the

bankruptcy court that additional service was not required when a matter is referred from

the district court to the bankruptcy court as held in *In re Chase & Sanborn Corp.*, 58

B.R. 721 (Bankr. S.D. Fla. 1986).  *Id.* at 7.  Foremost argued in its motion:

> Tangshan Ayers argued, and the Bankruptcy Court apparently agreed, that
> *Chase & Sanborn* is distinguishable because, in that matter, the district court
> directly referred the litigation to the bankruptcy court.  Because this Court did not
> formally refer or transfer this action to the Bankruptcy Court pursuant to 28
> U.S.C. § 157(a), Tangshan Ayers contended, additional service is required.
> Foremost disagreed, as it seems implausible that this Court, in directing
> Foremost to the Bankruptcy Court for the sole purpose of determining whether
> Foremost is entitled to an amended judgment, intended for Foremost to re-serve
> Tangshan Ayers under the Hague Convention before that limited issue could be
> decided.  Notwithstanding, if the lack of a formal referral order is what is
> preventing this matter from moving forward, the solution is simple---this Court
> should grant Foremost leave to file the Motion to Amend in this action and then
> refer the matter to the Bankruptcy Court pursuant to 28 U.S.C. § 157.

*Id.* at 8.

On or about October 10, 2017, Tangshan Ayers filed its opposition to Foremost's

motion to lift stay, arguing that the bankruptcy court lacked personal jurisdiction over it

because it had not been served in accordance with the Hague Convention and that

there was no formal referral of proceedings from the District Court to the bankruptcy

court.  *See* Defendant's Memorandum of Points and Authorities in Opposition to

Plaintiff's Motion to Lift Stay, Tangshan Ayers Litigation, filed on or about October 10,

2017, Supplemental RJN, ECF 263, Exhibit W.

On or about October 16, 2017, Foremost filed its reply to Tangshan Ayers's

opposition to its motion to lift stay in the Tangshan Ayers Litigation.  *See* Reply in

Support of Motion of Foremost Groups, Inc., f/k/a Foremost International Trading Co.,

Inc., to Lift Stay, Tangshan Ayers Litigation, filed on or about October 16, 2017,

1 Supplemental RJN, ECF 263, Exhibit X.  In its reply to Tangshan Ayers's opposition,

2 Foremost pointed out that there was no dispute that service on Tangshan Ayers was

3 perfected in the Tangshan Ayers Litigation and the District Court had personal

4 jurisdiction over Tangshan Ayers and stated that all that it was asking was for the

5 District Court to grant it leave to file the motion to amend in the Tangshan Ayers

6 Litigation and then formally refer the matter to the bankruptcy court as the parties were

7 in agreement that additional service on Tangshan Ayers under the Hague Convention

8 would not be required.  *Id.* at 4.  In this way, Foremost argued that "this outcome would

9 further this Court's prior determination that the Bankruptcy Court should consider, in the

10 first instance, whether Foremost is entitled to an amended judgment from the

11 Bankruptcy Court while simultaneously serving judicial economy, facilitating the efficient

12 resolution of this case, and promoting timeliness and fairness."  *Id.*

13 Having considered the parties' papers relating to Foremost's motion to lift stay,

14 the District Court issued its "In Chambers Order Lifting Stay," dated November 1, 2017.

15 In Chambers Order Lifting Stay, dated November 1, 2017, Supplemental RJN, ECF

16 263, Exhibit Y.  This District Court in this order, which has been previously referred to as

17 the Referral Order, summarized the prior proceedings, and the District Court cited and

18 quoted the Stay Order verbatim as follows:

19 The Court has extensively considered the tangled procedural context of the
20 present motion and concludes that, as a first measure, Foremost should seek an
amended judgment through the bankruptcy court.  Whichever way Foremost has
21 portrayed its case, ultimately, it is an effort to amend the judgment of the
bankruptcy court.  In that regard, the action is STAYED in order to give Foremost
22 the opportunity to seek an amended judgment through the bankruptcy court.  *See*
*In re Levander,* 180 F.3d 1114 (9th Cir. 1999).
23

24 *Id.* at 1-2.  Then the District Court stated its ruling in the Referral Order as follows:

25 On October 24, 2017, Foremost argued before the Court that it interpreted the
Stay Order to be a referral to the Bankruptcy Court, and requested this Court
26 issue an Order clarifying that the Stay Order be treated as such.  The Court
agrees.  In issuing the Stay Order, the Court intended that the alter ego issue to
27 the Bankruptcy Court for proposed findings of fact and conclusions of law under
28 U.S.C. § 157.
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> Under 28 U.S.C. § 157 classifies maters as either "core proceedings," in which the bankruptcy court "may enter appropriate orders and judgments," or "non-core proceedings," which the bankruptcy court may hear but for which it may only submit proposed findings of fact and conclusions of law to the district court for de novo review.  28 U.S.C. § 157 (1994).  *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers,* 134 F.3d 999, 1008 (9th Cir. 1997).  A bankruptcy judge can hear a non-core matter if it is "related to" a bankruptcy proceeding when the outcome of that proceeding could conceivably have an effect on the estate being administered in bankruptcy.  *In re S & S 31 Flavors,Inc.,* 118 B.R. 202, 204 (Bankr.E.D.N.Y. 1990).

> Here, Foremost's alter ego claim is a non-core proceeding because it relates to Foremost's ability to collect the final judgment from Ayers Bath parent company Tangshan Ayers.  *See re J. Baranello & Sons, Inc.,* 149 B.R. 19 (E.D.N.Y. 1992) (holding that a piercing the corporate veil claim relates to a debtors case under title 11 as a non-core proceeding.).  The Court hereby refers this matter to the Bankruptcy Court for proposed findings of fact and conclusions of law.

> The matter is placed on the Court's inactive calendar pending a ruling from the Bankruptcy Court.  The parties shall notify the Court, in writing, if and when the matter should be restored to this Court's active calendar.

*Id.* at 1-2.  Thereupon, on December 14, 2017, Foremost filed in this bankruptcy court the pending renewed motion to amend the judgment of this court in the form of its allowed proof of claim against the debtor, Ayers Bath, to add Tangshan Ayers as an additional judgment debtor pursuant to Federal Rule of Civil Procedure 69(a) and California Code of Civil Procedure § 187.

In considering Foremost's objection to this court's consideration of the issue of the applicability of Rule 69(a) to the allowed proof of claim in this case based on the doctrine of the law of the case, this court proceeds very cautiously, and as indicated above, it has closely examined the prior proceedings before the District Court to assure itself that it is not running afoul of a prior decision of the District Court.  As previously observed, the Ninth Circuit has stated, "For the doctrine [of law of the case] to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition,'" *United States v. Lummi Indian Tribe*, 235 F.3d at 452, and "The 'law of the case acts as a bar only when the issue in question was actually considered and decided by the first court,'" *United Steelworkers of America v. Retirement Income*

1    *Plan for Hourly-Rated Employees of ASARCO, Inc*., 512 F.3d at  564 (citation omitted);

2    *see also, Mirchandani v. United States*, 836 F.2d at 1225 (the law-of-the-case doctrine

3    does not apply where the court did not previously reach a decision based on the merits).

4           In the Tangshan Ayers Litigation, the operative orders of the District Court were

5    its orders granting Tangshan Ayers's motions to dismiss the original and first amended

6    complaint, the Stay Order and the Referral Order as described above.  The court has

7    examined the District Court's orders granting Tangshan Ayers's motions to dismiss, and

8    concludes that there were no explicit decisions in these orders that determined that

9    Rule 69(a) applied to Foremost's allowed bankruptcy claim.  Functionally, it is difficult to

10   consider the orders granting motions to dismiss Foremost's prior complaints in the

11   Tangshan Ayers Litigation as ruling on the issue of applicability of Rule 69(a) because

12   the motions were granted pursuant to Federal Rule of Civil Procedure 12(b)(6) for

13   failure to state a claim upon which relief can granted, but with leave to amend, which

14   meant that Foremost was required to replead its claims.  The District Court in such

15   orders was not determining that Foremost had valid claims which permitted it to utilize

16   Rule 69(a).  As previously observed, the District Court chose its words in its orders

17   granting the motions to dismiss very carefully, stating that it was not making findings

18   under Rule 69(a): (1) in the order granting Tangshan Ayers's motion to dismiss

19   Foremost's original complaint, the District Court stated: "The Court does not consider

20   whether Plaintiff has a viable common law alter ego claim or action upon the judgment

21   because the Complaint does not allege standalone claims to enforce the proof of claim

22   against Tangshan," Supplemental RJN, Exhibit K at 9, n. 8; and (2) in the order granting

23   Tangshan Ayers's motion to dismiss Foremost's first amended complaint, the District

24   Court made the following statements: "Though the Court harbors serious concerns

25   about whether it would have jurisdiction to amend the judgment of another court, for the

26   purposes of this motion the Court only finds that Rule 69(a) does not provide an

27   independent cause of action" and "The Court makes no finding regarding whether

28   Federal Rule of Civil Procedure 69 would apply to the *In re Ayers Bath (USA) Co., Ltd.,*

1
2
3
4
5
6
7
8

Case No. 2:13-bk-17409-RK action itself through the Federal Rules Bankruptcy Procedure Rule 7069 or another rule of bankruptcy procedure and what effect if any that would have on this Court's jurisdiction," Supplemental RJN, Exhibit P at 2-3 and n. 3. Under these circumstances and based on these statements by the District Court, this court concludes that the District Court in its orders on Tangshan Ayers's motions to dismiss Foremost's original and first amended complaints neither explicitly nor implicitly decided the issue of whether Rule 69(a) applies to Foremost's allowed bankruptcy claim to permit it to add Tangshan Ayers as an additional judgment debtor.

9
10
11
12

In its post-hearing brief, Foremost states its reliance on the Stay Order and the Referral Order as indicating the District Court's intent that the bankruptcy court only need decide whether Tangshan Ayers is the alter ego of Ayers Bath and need not address any other issue.  ECF 264 at 7 (internal citation page 4).

13

Regarding the Stay Order, the operative text is brief, stating as follows:

14
15
16
17
18

The Court has extensively considered the tangled procedural context of the present motion and concludes that, as a first measure, Foremost should seek an amended judgment through the bankruptcy court.  Whichever way Foremost has portrayed its case, ultimately, it is an effort to amend the judgment of the bankruptcy court.  In that regard, the action is STAYED in order to give Foremost the opportunity to seek an amended judgment through the bankruptcy court.  *See In re Levander,* 180 F.3d 1114 (9th Cir. 1999).

19
20
21
22
23
24
25
26
27
28

In the text of the Stay Order, the District Court stated its conclusion that "as a first measure, Foremost should seek an amended judgment through the bankruptcy court," observing, "Whichever way Foremost has portrayed its case, ultimately, it is an effort to amend the judgment of the bankruptcy court."  *Id.*  Thus, the District Court decided to stay the Tangshan Ayers Litigation "in order to give Foremost the opportunity to seek an amended judgment through the bankruptcy court."  *Id., citing, In re Levander,* 180 F.3d 1114 (9th Cir. 1999).  This court construes the District Court's Stay Order as not substantive in deciding the merits of Foremost's claim for amendment of judgment, but procedural in staying the Tangshan Ayers Litigation, so that Foremost could "as a first measure" to seek amendment of its judgment through the bankruptcy court.  As this

court interprets the Stay Order, the District Court instructed Foremost to seek relief on

the merits from the bankruptcy court.  This court observes that nowhere in the Stay

Order does the District Court make a substantive ruling explicitly stating that Rule 69(a)

applies to an amendment of a proof of claim. [11]  Foremost apparently acknowledges this

in its post-hearing brief by arguing that the District Court did not hold that its proof of

claim was not a money judgment within the meaning of Rule 69(a), but Foremost does

not argue that the District Court explicitly held that its proof of claim was a money

judgment within the meaning of Rule 69(a).  ECF 264 at 5-6 (internal citation page 2-3).

Instead, Foremost argues that the District Court in the Stay Order referring the matter to

this court "necessarily assumes that amendment under Rule 69(a) is possible (which

had never been disputed), but leaves to this Court to determine, in the first instance,

whether the elements of California Code of Civil Procedure section 187---alter ego and

control of the litigation---are satisfied."  Foremost Groups, Inc.'s Post-Hearing

Supplemental Brief, ECF 264 at 7:2-6 (internal citation page 4).

Foremost's "necessary assumption" argument was stated as follows:

> In response [to Tangshan Ayers's motion to dismiss Foremost's second amended complaint], the District Court issued the Stay Order, which states that the Tangshan Ayers Litigation "is STAYED in order to give Foremost the opportunity to seek an amended judgment through the bankruptcy court.  *See In re Levander,* 180 F.3d 1114 (9th Cir. 1999)."  *See id.,* Ex. U (In Chambers Order Staying Proceedings, dated March 8, 2016).  In *Levander,* the only case cited by the District Court, the Ninth Circuit expressly held that the bankruptcy court was authorized to amend an order awarding attorneys' fees to add an additional judgment debtor under Rule 69(a) if the requirements of California law (specifically, California Code of Civil Procedure section 187) are met.  180 F.3d at 1120-1121.  The Stay Order necessarily assumes that amendment under Rule 69(a) is possible (which had never been disputed), but leaves to this Court to determine, in the first instance, whether the elements of California Code of Civil Procedure section 187---alter ego and control of the litigation---are satisfied.

---

[11]  As the court previously noted, the District Court had determined Rule 69(a) was not a substantive cause of action as it previously stated on Tangshan Ayers's motion to dismiss the litigation against it: " . . . for purposes of this motion [to dismiss] the Court only finds that Rule 69(a) does not provide an independent cause of action." (emphasis added).  In Chambers Order Granting in Part and Denying in Part Defendant's Motion to Dismiss [52], dated January 6, 2016, at 2, Supplemental RJN, ECF 263, Exhibit P,

1  *Id.* at 3:19 - 4:6.

2      Foremost's argument is based on a presupposition that just because it is

3  possible that a judgment of the bankruptcy court can be amended pursuant to Rule 69

4  and applicable state law to add a judgment debtor under *In re Levander* that all

5  judgments of the bankruptcy court can be so amended, but such a presupposition is

6  unwarranted in this court's view, as shown by *Ziino v. Baker* and the cases following it

7  that an allowed bankruptcy proof of claim, while a final judgment for *res judicata*

8  purposes, is not a money judgment within the meaning of Rule 69, to allow methods of

9  execution pursuant to that rule and state law, such as adding other parties as judgment

10  debtors. [12]

11      The case of *In re Levander,* which Foremost heavily relies upon does not support

12  its presupposition that it is possible to utilize Rule 69 and state law to amend all

13  bankruptcy court judgments.  Foremost's Supplemental Brief in Response to the Court's

14  Tentative Ruling, filed on May 10, 2021, ECF 255 at 8:9-22 (internal citation page 4).

15  While *In re Levander* stands for the general proposition that a bankruptcy court money

16  judgment may be amended to add a judgment debtor pursuant to Federal Rule of Civil

17  Procedure 69 and California Code of Civil Procedure § 187, it did not involve the precise

18  issue now before the court, that is, whether an allowed bankruptcy claim is a money

19  judgment under Rule 69 as the judgment amended in that case was a money judgment

20  in granting the debtors a monetary award against a creditor on their motion for

21  attorneys' fees, which was amended to add the transferee entity to which the creditor

22  had transferred its assets.[13]  *In re Levander,* 180 F.3d at 1116-1118.  In *Levander,* the

23

24  [12]  *Ziino v. Baker,* decided in 2010, is the only circuit authority on point on the issue of whether Rule 69(a)
applies to an allowed bankruptcy claim.  Inexplicably, Foremost did not cite, or refer, to it as adverse legal

25  authority when it first made its arguments to the District Court five years later in 2015 in opposing
Tangshan Ayers's motions to dismiss its complaints in the Tangshan Ayers Litigation and to this court in

26  its motions to amend judgment in 2017 that it can rely upon the rule to amend the allowed claim to add
Tangshan Ayers as an additional judgment debtor.  Neither did Tangshan Ayers in its initial opposing

27  papers.

28  [13]  Foremost in stating in its post-hearing brief that the Ninth Circuit in *Levander* had "expressly held that
the bankruptcy court was authorized to amend an order awarding attorneys' fees to add an additional
judgment debtor under Rule 69(a) if the requirements of California law" were met, it implicitly recognized

1   Chapter 11 debtors filed a motion for attorneys' fees against a creditor, a corporation,

2   after litigation over confirmation of debtors' Chapter 11 reorganization plan and

3   disallowance of the creditor's proof of claim in which the debtors prevailed.  *Id.* at 1116-

4   1117.  The bankruptcy court granted the debtors' motion for attorneys' fees and

5   awarded attorneys' fees against the corporation, but at the same time the fee motion

6   was pending, the corporation had transferred its assets to a related partnership entity

7   without knowledge of the bankruptcy court, apparently to defeat payment of any award

8   of attorneys' fees against it.  *Id.* at 1117-1118.  The debtors found out about the

9   corporation's transfer of its assets to a related entity, and they filed a motion to amend

10  the judgment awarding them attorneys' fees to add the transferee partnership as an

11  additional judgment debtor, which the bankruptcy court granted, stating that "equity

12  screams for some remediation" for the transfer which was a fraud on the court.  *Id.* at

13  1117.  On appeal, the district court reversed, holding that the ten-day time limit of

14  Federal Rule of Civil Procedure 59(e) for a motion to amend or alter judgment applied

15  and had expired and that California Code of Civil Procedure § 187 did not apply

16  because federal, not state, rules of procedure control in the bankruptcy court.  *Id.* at

17  1118.  The Ninth Circuit reversed, holding that the bankruptcy debtors as the judgment

18  creditors of the creditor corporation based on the money judgment they held from the

19  bankruptcy court's order awarding them attorneys' fees could seek relief to amend the

20  judgment to add the transferee corporation as a judgment debtor under two alternative

21  grounds: (1) under the trial court's inherent power to prevent a fraud on the court; and

22  (2) as provided in Federal Rule of Civil Procedure 69 and California Code of Civil

23  Procedure § 187.  *Id.* at 1118-1121.

24      Regarding the federal court's inherent power to prevent a fraud on the court, the

25  Ninth Circuit stated in *In re Levander*:

26      The inherent powers of federal courts are those that "are necessary to the
        exercise of all others."  This inherent power, which is based on equity, not only
27      springs forth from courts' traditional power "to manage their own affairs so as to
        achieve the orderly and expeditious disposition of cases."  *Chambers v. NASCO,*

28

that the case did not involve an allowed proof of claim.  ECF 264 at 3-4.

501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 21 (1991), but also "furthers the pursuit of achieving complete justice by enabling the court to suspend those judgments whose enforcement leads to inequitable results." In *Chambers*, the Supreme Court observed that the inherent power of federal courts includes, *inter alia,* the power to vacate judgments on proof that a fraud upon the court has been committed. *See Chambers*, 501 U.S. at 44, 111 S.Ct. at 2123.

The Court justified "the historic power of equity to set aside fraudulently begotten judgments" on the basis that "tampering with the administration of justice in this manner involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."

Just as a court may use its inherent power to protect its integrity by vacating a judgment obtained by fraud, it may also amend a judgment for the same purpose. When a court vacates a judgment obtained by fraud, it not only rids itself of the defilement caused by the fraud, but also restores the balance and fairness between the parties by removing the benefit gained by the party that committed the fraud. Amending a judgment serves these same goals by removing the benefit---for example, the avoidance of a judgment against itself---that the parties gained by committing fraud on the court.

We therefore hold that a federal court may amend a judgment or order under its inherent power when the original judgment or order was obtained through fraud on the court.

*Id.* at 1118-1119 (footnote and citations omitted).

Citing a prior decision, the Ninth Circuit further stated in *In re Levander,* addressing the impact of Rule 69(a):

We have held that Federal Rule of Civil Procedure 69(a) empowers federal courts to rely on state law to add judgment-debtors under Rule 69(a), which "permits judgment creditors to use any execution method consistent with the practice and procedure of the state in which the district court sits." *Cigna Property & Casualty Insurance Co. v. Polaris Pictures Corp.,* 159 F.3d 412, 421 (9th Cir. 1998) (*quoting Peacock v. Thomas,* 516 U.S. 349, 359 n. 7, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996)) (internal quotation marks omitted). In *Cigna,* the appellant, much like the appellees in the instant case, argued that the motion to amend the judgment to add a judgment-debtor was untimely under Rule 59(e), and that the court therefore had no jurisdiction. *See id.* We rejected this argument, holding that Rule 69(a) allows judgment-debtors to use state law to collect on their debts. *See id.* Because California law allows amendment of a judgment to add a judgment-debtor, we held that the district court did not abuse its discretion in so doing. *See id.* at 431-32.

The instant case is analogous since the Levanders also were judgment-debtors attempting to collect a debt. As such, Rule 69(a) authorized the use of California

law to collect on their debt, and the district court erred by holding that the
bankruptcy court did not have jurisdiction to allow them to do so.

*Id.* at 1120-1121 (footnotes omitted).  Thereupon, the Ninth Circuit determined in
*Levander* whether the requirements of California law pursuant to California Code of Civil
Procedure § 187 were met in order to add the transferee partnership as a judgment
debtor to the bankruptcy court's order granting the attorneys' fee motion and held that
they were.  *Id.* at 1121-1123. [14]

It is significant for the purposes of this case now before the court to observe that
the Levanders, the judgment creditors in their case, were not holders of an allowed
bankruptcy claim as in this case because they did not hold an allowed claim against the
bankruptcy estate as creditors in their bankruptcy case, but were the debtors in the
bankruptcy case who held a money judgment from the bankruptcy court which had
granted their motion for attorneys' fees against their creditor and added a transferee of
that creditor as an additional judgment debtor on the money judgment from the fee
award.  Thus, *Levander* is relevant because it recognizes that a judgment creditor
holding a money judgment from a bankruptcy court sitting in California may utilize
Federal Rule of Civil Procedure 69(a) and California Code of Civil Procedure § 187 to
enforce the money judgment and add a judgment debtor, but *Levander* is
distinguishable from the case before the court in that it did not involve a creditor which
seeks to enforce an allowed bankruptcy claim as a money judgment under Rule 69(a)
and California Code of Civil Procedure § 187.  Accordingly, Foremost's presupposition
that all bankruptcy court judgments may be amended under Rule 69 and state law to
add additional judgment debtors is not warranted based on *In re Levander,* even if as

---

[14]  The Ninth Circuit's decision in *In re Levander* was not entirely unanimous.  All three members of the panel agreed on the holding that the bankruptcy court could utilize Rule 69(a) and California Code of Civil Procedure § 187 to amend its order granting the motion of the bankruptcy debtors for an award of attorneys' fees against the creditor to add its transferee entity as an additional judgment debtor, but one panel member, Judge O'Scannlain, in a separate specially concurring opinion, held that it was sufficient to hold that Rule 69(a) allowed recourse to state procedures for execution of federal judgments, but that it was not necessary for the court to reach the alternative ground of the federal court's inherent power to amend a judgment based on a fraud on the court.  *Id.* at 1123.  Judge Ferguson in a separate concurring opinion stated that the majority's opinion stated two independent bases for the court's disposition.  *Id.*

Foremost points out, it was the only case cited by the District Court in the Stay Order.

As previously observed, the Ninth Circuit has stated, "The 'law of the case acts as a bar only when the issue in question was actually considered and decided by the first court.'" *United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d at 564 (citation omitted).  Based on the circumstances described above, Foremost has not shown that the District Court in the Stay Order actually considered and decided the issue of whether Rule 69 applies to an allowed bankruptcy claim, so that this court is barred from considering the issue based on the doctrine of law of the case.  That is, Foremost has not shown that the District Court explicitly or implicitly decided the issue of whether Rule 69 applies to an allowed bankruptcy claim because the ruling of the District Court was procedural to stay the Tangshan Ayers Litigation in that court "in order to give Foremost the opportunity to seek an amended judgment through the bankruptcy court."  Supplemental RJN, Exhibit U.

Alternatively, Foremost argues that the law of the case doctrine precludes this court from considering the issue of the applicability of Rule 69 to its allowed claim based on the District Court's intent expressed in the Referral Order.  Foremost Groups, Inc.'s Post-Hearing Supplemental Brief, ECF 264 at 7:7-17 (internal citation page 4).  Foremost's argument is as follows:

> If there was any question as to the District Court's intent, it was resolved when the District Court issued the Referral Order in November 2017.  In that Order, which was the result of Tangshan Ayers's frivolous argument that Foremost was required to re-serve Tangshan Ayers under the Hague Convention before proceedings in the Bankruptcy Court could resume, the District Court confirmed that, in issuing the Stay Order, it "***intended that the alter ego issue [be referred] to the Bankruptcy Court for proposed findings of fact and conclusions of law under 28 U.S.C. § 157.***"  Supp. RJN, Ex. Y (In Chambers Order Lifting Stay, dated November 1, 2017) (emphasis added).  The Referral Order does not contemplate this Court opining on any issue in the Tangshan Ayers Litigation (which had been pending with the District Court for nearly four years) other than alter ego.

*Id.* (emphasis in bold in original).  At the risk of being overly repetitive, as previously

observed, the Ninth Circuit has stated, "For the doctrine [of law of the case] to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition,'" *United States v. Lummi Indian Tribe*, 235 F.3d at 452, and "The 'law of the case acts as a bar only when the issue in question was actually considered and decided by the first court,'" *United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc*., 512 F.3d at 564 (citation omitted); *see also, Mirchandani v. United States*, 836 F.2d at 1225 (the law-of-the-case doctrine does not apply where the court did not previously reach a decision based on the merits). In its briefing, Foremost has not shown that the District Court explicitly decided the issue of the applicability of Rule 69 to an allowed bankruptcy claim.  Foremost is hard pressed to do so because its motion to lift the stay in the Stay Order, which resulted in the District Court's issuance of the Referral Order, was procedural, not substantive, that is, Foremost's motion was made in order to allow for the filing of a Rule 69(a) motion to amend the judgment against Ayers Bath to add Tangshan Ayers as a judgment debtor and to subsequently refer the motion to amend judgment to the bankruptcy court for proposed findings of fact and conclusions of law.  Supplemental RJN, Exhibit V. Foremost did not request in its motion to lift the Stay Order that the District Court determine on the merits that Rule 69 applied to its allowed bankruptcy claim; rather, Foremost was requesting permission of the District Court to file the Rule 69 motion to amend judgment in the Tangshan Ayers Litigation and have the District Court refer it over to the bankruptcy court for proposed findings of fact and conclusions of law.  *Id.* That is, Foremost was not asking the District Court to decide substantive issues relating to its motion to amend judgment, but to decide procedural issues to have the bankruptcy court first rule on the substantive issues and propose findings of fact and conclusions of law for *de novo* review by the District Court.

Nor can it be said that the District Court implicitly decided the issue of the applicability of Rule 69 to Foremost's allowed bankruptcy claim because as stated in the Referral Order, its intent was to refer Foremost's Rule 69 motion to amend judgment to

1  the bankruptcy court in the first instance when it stated that it agreed with Foremost that

2  the Stay Order should be interpreted as a referral to the bankruptcy court.

3  Supplemental RJN, Exhibit Y.  Therefore, the District Court stated in the Referral Order

4  that it was agreeing to grant Foremost's request that it "issue an Order clarifying that the

5  Stay Order be treated as such."  *Id.*

6        Foremost's strongest argument that the Referral Order is the law of the case is

7  that in its words, "the District Court confirmed that, in issuing the Stay Order, it 'intended

8  that the alter-ego issue [be referred] to the Bankruptcy Court for proposed findings of

9  fact and conclusions of law under 28 U.S.C. § 157.'"  Foremost Groups, Inc.'s Post-

10  Hearing Supplemental Brief, ECF 264 at 7:11-15 (internal citation page 4).  In other

11  words, according to Foremost, in referring to the "alter-ego issue" alone, the District

12  Court implicitly decided: (1) the issue whether Rule 69 applied to its allowed bankruptcy

13  claim, (2) that Rule 69 so applied and (3) that the Bankruptcy Court need only decide

14  whether Tangshan Ayers is alter ego of Ayers Bath.  Regarding this argument, this court

15  must examine the full context of the District Court's statements about the alter ego issue

16  in the Referral Order, which are as follows:

17      On October 24, 2017, Foremost argued before the Court that it interpreted the

18      Stay Oder to be a referral to the Bankruptcy Court, and requested this Court
    issue an Order clarifying that the Stay Order be treated as such.  The Court

19      agrees.  In issuing the Stay Order, the Court intended that the alter-ego issue to
    the Bankruptcy Court for proposed findings of fact and conclusions of law under

20      28 U.S.C. § 157.

21                             ****

22      Here, Foremost's alter-ego claim is a non-core proceeding because it relates to
    Foremost's ability to collect the final judgment from Ayers Bath parent company

23      Tangshan Ayers.  *See In re J. Baranello & Sons, Inc.,* 149 B.R. 19 (E.D.N.Y.
    1992) (holding that a piercing the corporate veil claim relates to a debtors case

24      under title 11 as a non-core proceeding.). The Court hereby refers this matter to
    the Bankruptcy Court for proposed findings of fact and conclusions of law.

25

26  Supplemental RJN, Exhibit Y at 2.  The full context of the District Court's express

27  statements about Foremost's alter ego claim in the Referral Order indicates that as a

28  procedural matter, the District Court was expressly referring the matter of Foremost's

motion to amend a judgment of the bankruptcy court based on Foremost's alter ego theory to that court as a non-core proceeding for initial determination and preparation and submission of proposed findings of fact and conclusions of law for de novo review by the District Court, and not that the District Court was rendering substantive rulings on the alter ego claim itself, including the issue of whether Rule 69 applied to Foremost's allowed bankruptcy claim.  There is nothing in the express language of the District Court's Referral Order that limits the bankruptcy court's consideration of the Foremost's motion to amend the judgment of the bankruptcy court in the form of the allowed proof of claim.

Foremost is essentially asking that this court "read between the lines" of the District Court's Referral Order that the District Court already decided the issue of the applicability of Rule 69 to the allowed bankruptcy claim.  Foremost's interpretation of the Referral Order is inconsistent with the District Court's express statements in prior proceedings in the Tangshan Ayers Litigation that it was not making any findings as to Rule 69.  Moreover, Foremost's motion to lift the stay from the Stay Order was a procedural motion simply asking for clarification from the District Court that the "matter" of its motion to amend the bankruptcy court's judgment was referred to that court for initial determination, i.e., the preparation and submission of proposed findings of fact and conclusions of law for its motion to amend judgment, which is a non-core proceeding that may be heard by the bankruptcy court.  Finally, in this court's view, given the parties were addressing Foremost's procedural motion to lift stay, it would be uncharacteristic of the District Court to make substantive rulings on a procedural motion without providing the parties the opportunity to brief and be heard on substantive issues like whether Rule 69 applied to Foremost's allowed claim.  The substantive issues arising from Foremost's motion to amend the bankruptcy court's judgment were not addressed in the briefing of the parties on Foremost's motion to lift stay, and thus, this court concludes that the District Court did not address such issues in ruling on the motion to lift stay in the Referral Order.

Having considered the post-hearing supplemental pleadings filed by Foremost and Tangshan Ayers, the court determines that the law of the case does not apply to the issue of whether this court may allow an amendment of the Foremost's proof of claim under Rule 69(a) because the evidence shows that such issue was not explicitly or implicitly decided by the District Court. *United States v. Lummi Indian Tribe*, 235 F.3d at 452. Accordingly, this court determines that the law of the case doctrine does not apply to this bankruptcy case as to the question of whether Rule 69(a) allows Foremost to amend their proof of claim to add Tangshan Ayers.

V.    BANKRUPTCY COURT'S ANALYSIS OF APPLICABILITY OF FEDERAL RULE OF CIVIL PROCEDURE 69(a)

Federal Rule of Civil Procedure 69(a) provides: "A money judgment is enforced by a writ of execution, unless the court directs otherwise." Generally, "[t]he proper means [   ] to secure compliance with a money judgment is to seek a writ of execution." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147 (9th Cir 1983). According to *Moore's Federal Practice*, "A writ of execution is an order issued by a court, in the form of a final process designed to enforce a money judgment of that court, directing an officer of the court to seize the property of a judgment debtor and transfer the proceeds over to the judgment creditor. Such execution only applies to money judgments." 13 *Moore's Federal Practice - Civil*, § 69.02 and n. 2 (3rd ed. online ed. 2021 update) (footnotes omitted), *citing inter alia*, *NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 615-616 (9th Cir. 1973) (Fed. R. Civ. P. 69 is applicable only to money judgments and could not be used to enforce NLRB cease and desist order) and *Ziino v. Baker*, 613 F.3d 1326, 1328-1329 (11th Cir. 2010) (bankruptcy order allowing claim against debtor's estate is not money judgment for purposes of Fed. R. Civ. P. 69).

Federal Rule of Civil Procedure 69(a) further provides that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal

statute governs to the extent it applies." The Ninth Circuit has interpreted Rule 69(a) as "empower[ing] federal courts to rely on state law to add judgment-debtors[.]" *Cadence Design Systems, Inc. v. Pounce Consulting, Inc*., Case No. 17-cv-04732-PJH, 2019 WL 3576900 at *3 (N.D. Cal. Aug. 6, 2019), *citing and quoting*, *In re Levander*, 180 F.3d 1114, 1120-1121 (9th Cir. 1999).

Here, the applicable state law is Section 187 of the California Code of Civil Procedure. *Cadence Design Systems, Inc. v. Pounce Consulting, Inc*., Case No. 17-cv-04732-PJH, 2019 WL 3576900 at *3-4. "Under section 187, the court has the authority to amend a judgment to add additional judgment debtors." *Id*., citing and quoting, *NEC Elecs. v. Hurt*, 208 Cal.App.3d 772, 778 (1989) ("*NEC*"). "This is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." *Id*. The doctrine "does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." *Id*., *citing and quoting*, *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 539 (2000); *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 677 (9th Cir. 2017) (same).

"A § 187 amendment requires (1) that the new party be the alter ego of the old party and (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." *Cadence Design Systems, Inc. v. Pounce Consulting, Inc*., Case No. 17-cv-04732-PJH, 2019 WL 3576900 at *4, *citing and quoting*, *Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004) (internal quotation marks omitted; emphasis in original) (henceforth, "*Katzir*"); *Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc*., 217 Cal.App.4th 1096, 1106 (2013) (same); *NEC*, 208 Cal.App.3d at 778-79 (same). The judgment creditor bears the burden of satisfying both requirements by a preponderance of the evidence. *Id*., *citing*, *Wollersheim v. Church of Scientology*, 69 Cal.App.4th 1012,

1  1018 (1999); *Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*, No. CV 16-00663-GHK, 2018
2  WL 6267823, at *3 (C.D. Cal. Sept. 19, 2018).

3  However, in this case, the asserted final judgment is an allowed bankruptcy
4  claim, and the courts which have addressed the issue of the applicability of Federal
5  Rule of Civil Procedure 69(a) to allowed bankruptcy claims have held that allowed
6  bankruptcy claims are not, and are not entitled to be treated as, money judgments.
7  *Ziino v. Baker*, 613 F.3d 1326 (11th Cir. 2010); *Kerr v. American Alternative Insurance*
8  *Corp.* (*In re One World Adoption Services, Inc.*), 577 B.R. 474 (Bankr. N.D. Ga. 2017);
9  *In re Soelberg*, Case No. 15-01355-TLM, 2019 WL 3805980 (Bankr. D. Idaho Aug. 13,
10  2019); *In re 3109, LLC*, Case No. 10-00757, 2014 WL 1655415 (Bankr. D.D.C. Apr. 25,
11  2014); *see also*, *In re Southern California Plastics, Inc.,* 165 F.3d 1243 (9th Cir. 1999)
12  (holding that allowance of a bankruptcy claim is not the equivalent of a judgment to
13  perfect an attachment lien under California law); 13 Moore's Federal Practice – Civil, §
14  69.02 n. 2, *citing, Ziino v. Baker*, 613 F.3d 1326, 1328-1329 (11th Cir. 2010) (treatise
15  citing case for the proposition that bankruptcy order allowing claim against debtor's
16  estate is not money judgment for purposes of Fed. R. Civ. P. 69).  As the court
17  previously stated, the Ninth Circuit has not ruled on the issue of whether an allowed
18  bankruptcy claim is a money judgment for the purposes of Rule 69.

19  The leading decision on the issue of whether an allowed bankruptcy claim is a
20  money judgment within the meaning of Federal Rule of Civil Procedure 69(a) is the
21  Eleventh Circuit's decision in *Ziino v. Baker,* or as the Eleventh Circuit put it, the issue
22  was "the potence of an allowed claim in a bankruptcy proceeding."  613 F.3d at 1328.
23  The case involved a couple named Ziino and Wellman who had lived together in
24  California for a number of years in a nonmarital domestic partnership, and during their
25  relationship, they had a son, of whom they shared joint custody.  *Id.* at 1327.  When the
26  relationship terminated, the parties negotiated a settlement whereby Wellman executed
27  two promissory notes for a total of $800,000 in favor of Ziino, which amount represented
28  half of Wellman's estimated future inheritance from her father.  *Id.*  According to Ziino,

the notes were to equalize their assets for the benefit of their child, but the notes were

not incorporated into any court order regarding child custody, visitation or support.  *Id.* at

1327-1328.  Subsequently, Wellman filed a Chapter 7 bankruptcy case, and Ziino filed a

proof of claim in her bankruptcy case for the principal on the promissory notes executed

by her.  *Id.* at 1328.  Wellman objected to Ziino's proof of claim on grounds that the

promissory notes lacked consideration, but the bankruptcy court rejected the objection

and allowed Ziino's claim against Wellman's bankruptcy estate.  *Id.*  The Ninth Circuit

Bankruptcy Appellate Panel affirmed the bankruptcy court's order allowing Ziino's claim,

and Ziino received nearly $160,000 on his claim from the bankruptcy estate.  *Id.*  The

bankruptcy court also denied Wellman a Chapter 7 bankruptcy discharge.  *Id.*  Ziino

then filed a civil action in the federal district court for the Middle District of Florida

seeking to enforce his allowed bankruptcy claim through a levy against assets held in

trust for Wellman.  *Id.* at 1327-1328.  A magistrate judge made a recommendation that

summary judgment be granted against Ziino's claims, the district court adopted the

magistrate judge's recommendation, and Ziino appealed.  *Id.*

The Eleventh Circuit affirmed the district court's grant of summary judgment

against Ziino, holding that his claims fail because it concluded that the bankruptcy court

order allowing Ziino's claim was not a final, executable money judgment for purposes of

Federal Rule of Civil Procedure 69(a).  *Id.* at 1327-1328.  The Eleventh Circuit

addressed and rejected Ziino's arguments that his allowed bankruptcy claim was a final,

executable judgment under Rule 69(a) as follows:

> At issue in this case is the potence of an allowed claim in a bankruptcy
> proceeding.  Ziino argues that his allowed bankruptcy claim is an executable
> judgment, one that enables him to levy against any asset belonging to the
> bankruptcy debtor.  For this proposition, Ziino cites a number of cases holding
> that an allowed claim in bankruptcy is a "final judgment" for purposes of *res
> judicata.  See EDP Med. Computer Sys., Inc. v. United States,* 480 F.3d 621, 625
> (2d Cir. 2007) (holding "that a bankruptcy court order allowing an uncontested
> proof of claim constitutes a "final judgment" and is thus a predicate for *res
> judicata*"); *In re Baudoin,* 981 F.2d 736, 742 (5th Cir. 1993)(noting "that
> bankruptcy court orders authorizing the sale of part of the estate or confirming
> such sale are final judgments on the merits for *res judicata* purposes").

Ziino fails to acknowledge, however, that a "judgment" is a term whose meaning depends on the context in which it is used.  For instance, a "final judgment" can simply be "any order from which an appeal lies."  Fed.R.Civ.P. 54(a).  Additionally, as Ziino correctly notes, a "final judgment" can be any resolution of a dispute from which a preclusive effect flows.  *See, e.g., Baudoin,* 981 F.2d at 242.  But, in terms of a judgment subject to execution, a "money judgment" must exist.  *See* Fed.R.Civ.P. 69(a)(1) ("A money judgment is enforced by a writ of execution, unless the court directs otherwise.").

An allowed claim in bankruptcy serves a different objective from that of a money judgment---it permits the claimant to participate in the distribution of the bankruptcy estate.  *See* 11 U.S.C. § 507 (2006); 4 *Collier on Bankruptcy* ¶ 501.01[2][b] (Alan N. Resnick & Henry J. Sommer, eds.,16th ed. 2010).  "[T]he assertion of a claim in bankruptcy is, of course, not an attempt to recover a judgment against the debtor but to obtain a distributive share in the immediate assets of the proceeding."  *Matter of Mobile Steel Co.,* 563 F.2d 692, 700 (5th Cir. 1977) (quoting *In re Kansas City Journal-Post Co.,* 144 F.2d 792, 803-04 (8th Cir. 1944)); *see also,* 10 *Collier on Bankruptcy* ¶ 7069.01 (Alan N. Resnick & Henry J. Sommer, eds.,15th ed. rev. 2009) ("By its terms, Civil Rule 69 is applicable to enforcement of only judgments for the payment of money….If the underlying cause of action against the estate arose prepetition, it normally will be dealt with as a claim to be satisfied by a distribution upon liquidation or under a reorganization plan….").

In order to execute on a judgment under Rule 69, Ziino must have obtained a money judgment.  The district court correctly concluded that an allowed claim in bankruptcy and a money judgment are not functionally identical.  The bankruptcy court order allowing Ziino's claim bears little resemblance to a money judgment.  *See* R. 1, Ex. C at 3 ("overruling Wellman's objection to Ziino's proof of claim" on the two promissory notes).  The order contains no clear designation of Ziino's entitlement, especially in view of his significant recovery from the bankruptcy estate after the order issued.

*Id.* at 1328-1329. [15]  The Eleventh Circuit finally addressed Ziino's argument that his agreement with his former partner was an enforceable judgment for child support:

We finally reject Ziino's argument that his privately negotiated agreement with Wellman qualifies as an enforceable judgment for child support.  The underlying bankruptcy court order acknowledged the professed purpose for the promissory notes, but did not render a judgment for child support that would be enforceable

---

[15]  In the Eleventh Circuit's observation that the bankruptcy court's order allowing Ziino's claim "bears little resemblance" to a money judgment, noting the language of the order "overruling Wellman's objection to Ziino's proof of claim," the *Ziino* court was commenting that the allowance of the claim through overruling the objection to the claim did not have the directive language of a money judgment.  That is, a claim being allowed meant in a Chapter 7 bankruptcy case, that the creditor holding an allowed claim was eligible for a distribution of assets from the bankruptcy estate of the debtor.

under Florida law.  Fla. Stat. § 88.6031 (2004) (providing for the enforceability of foreign child support orders).  Without a judgment on which to execute, Ziino's remaining arguments about the validity of the trusts are moot.

*Id.* at 1329.

In conclusion, the Eleventh Circuit in *Ziino v. Baker* held:

Ziino's allowed claim in the prior bankruptcy proceeding in the prior bankruptcy proceeding is not a judgment on which he can execute against assets of the debtor.  Ziino's proper recourse is to file a direct action against Wellman for her breach of the promissory note obligations.  Until an executable money judgment against Wellman exists, it is improper to attempt to levy against assets held by or for her.  For these reasons, we affirm the district court's grant of summary judgment in favor of the trustees and estate representatives.

*Id.*

In *Ziino v. Baker,* the Eleventh Circuit concluded that an allowed proof of claim in a bankruptcy case is not equivalent to a money judgment because the purpose of allowance of a proof of claim is to determine eligibility for a distribution from the bankruptcy estate of the debtor in a bankruptcy case, which is a different purpose than a money judgment subject to execution through Federal Rule of Civil Procedure 69, which requires a direct action against the debtor.  *Id.* at 1328.  The Eleventh Circuit also concluded that just because an allowed bankruptcy claim has *res judicata* effect does not mean that it is a money judgment because not all judgments are money judgments, recognizing that a "'final judgment' can be any resolution of a dispute from which a preclusive effect flows."  *Id., citing, In re Baudoin,* 981 F.2d 736, 742 (5th Cir. 1993) (noting "that bankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for *res judicata* purposes"); *see also, Hamilton v. MacDonald,* 503 F.2d 1138, 1147-1149 (9th Cir. 1974) (judgments for equitable relief are not money judgments and may not be enforced through Federal Rule of Civil Procedure 69).  Thus, the Eleventh Circuit in *Ziino v. Baker* also concluded that if Ziino as the creditor holding an allowed claim sought to enforce collection of the claim by levy, he had to bring a direct action against the debtor and her assets to obtain an executable money judgment.  613 F.3d at 1329.

The statutory scheme for allowance of a proof of claim in a bankruptcy case does not indicate that an allowed claim has the attributes of a money judgment enforceable by a writ of execution or a levy.  When a debtor files a Chapter 7 bankruptcy case, its creditors may file a proof of claim to assert a right of payment against the debtor's bankruptcy estate.  11 U.S.C. §§ 101(5)(A), 501 and 502 [16]; *see also, Travelers Casualty* and *Surety Co. of America v. Pacific Gas and Electric Co.,* 549 U.S. 443, 449 (2007) ("When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim—i.e., a document providing proof of a "right to payment," 11 U.S.C. § 101(5)(A)—**against the debtor's estate**.") (emphasis in bold added).

"A proof of claim is a written statement setting forth a creditor's claim."  Federal Rule of Bankruptcy Procedure 3001(a).  As *Collier on Bankruptcy* explains, the policy reasons for requiring the filing of proofs of claim in a bankruptcy case are:

> The rationale for requiring the filing of a formal proof of claim or interest in accordance with section 501 is to ensure that "all those involved in the proceeding will be made aware of the claims against the debtor's estate." **A proof of claim or interest should be filed when "some purpose would be served." The primary purpose is, of course, to share in any distribution**. Other purposes may be to make others aware of a claim and to allow for the opportunity to contest a claim.

4 Levin and Sommer, *Collier on Bankruptcy,* ¶ 501.01[1] (16th ed. online ed. 2021 update) (emphasis in bold added; footnotes omitted), *citing and quoting inter alia, In re PCH Associates*, 949 F.2d 585, 605 (2nd Cir. 1991) and *Kipp Flores Architects, L.L.C. v. Mid-Continent Casualty Co.*, 852 F.3d 405, 410-411 (5th Cir. 2017).

The proof of claim is executed by the creditor or the creditor's authorized agent. Federal Rules of Bankruptcy Procedure 3001(b).  "A creditor or an indentured trustee may file a proof of claim."  11 U.S.C. § 501(a).  A "creditor," under 11 U.S.C. § 101(1) means- - (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate

---

[16]   11 U.S.C. § 101(5)(A) defines the term "claim" in pertinent part as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 501 governs the filing of proofs of claim or interests.  11 U.S.C. § 502 governs allowance of claims or interests.

. . .; or (C) entity that has a community claim.  A "debtor" is the person which a case under this title [Title 11] has been commenced.  11 U.S.C. § 101(13).  The definition of a "person" includes a corporation. 11 U.S.C. § 101(41).  Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."  If a proof of claim or interest is timely filed with the court, and if no party in interest files an objection, the claim or interest is deemed "allowed" and thus constitutes a valid claim against the debtor's bankruptcy estate pursuant to 11 U.S.C. § 502(a), which provides: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."

Regarding the allowance and disallowance of claims under Section 502 of the Bankruptcy Code, *Collier on Bankruptcy* explains:

> Section 502 of the Bankruptcy Code deals with the allowance and disallowance of claims.  Under this section, a claim becomes allowed in one of three ways: first, a proof of claim is filed or deemed filed and no party objects; second, a claim is allowed by the court after an objection is filed; or third, the bankruptcy court estimates the claim.  A claim may be disallowed under any of the paragraphs of section 502(b) or under section 502(d) or (e).
>
> Section 502 is important because it provides the rules for determining the allowability of claims.  Holders of allowed claims may receive distributions in chapter 7 cases or under confirmed plans in chapter 9, 11, 12 and 13 cases. Only holders of allowed claims may vote on chapter 11 plans under section 1126. A claim holder's rights with respect to a proposed plan are measured by the allowed amount of its claim under sections 943, 1129(b),1225 and 1325 of the Bankruptcy Code.  Thus, the process of allowing and disallowing claims is an essential part of the bankruptcy process and as such, is within the bankruptcy court's constitutional authority to decide.

4 Levin and Sommer, *Collier on Bankruptcy,* ¶ 502.01, *citing,* 11 U.S.C. § 502(a), (b) and (c); 28 U.S.C § 157(b)(2)(B); *Stern v. Marshall,* 564 U.S. 462, 499, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).  Allowed unsecured claims are entitled to a distribution from the available assets of a bankruptcy estate in a Chapter 7 bankruptcy case pursuant to Section 726(a)(1)-(4) of the Bankruptcy Code, 11 U.S.C., and such claims are classified in order of priority set forth in 11 U.S.C. § 507 and paid on a pro rata basis by priority

1  class pursuant to 11 U.S.C. § 726(b).  The Bankruptcy Code does not provide for direct
2  liability of a debtor to a creditor based on the allowance of the claim of the creditor filed
3  in the debtor's bankruptcy case.  *Ziino v. Baker,* 613 F.3d at 1328-1329.

4  In a Chapter 7 bankruptcy case, such as this one, the Chapter 7 trustee must
5  prepare and file a final report and account of administration of the estate; and must
6  close the estate as expeditiously as compatible with the best interests of parties in
7  interest.  March, Ahart and Shapiro, *Rutter Group California Practice Guide:*
8  *Bankruptcy,* ¶ 10:147 (online edition December 2020 update), *citing,* 11 U.S.C. §
9  704(a)(1) and (9); Federal Rule of Bankruptcy Procedure 5009.  Distributions
10 ("dividends") from assets of the debtor's bankruptcy estate liquidated in the Chapter 7
11 bankruptcy case are to be made to creditors in Chapter 7 on their claims "as promptly
12 as practicable" pursuant to Federal Rule of Bankruptcy Procedure 3009.  *Id*.  In most
13 cases, no distributions are made until the Chapter 7 trustee has liquidated the estate
14 assets and filed a final account.  *Id*.

15 In this Chapter 7 bankruptcy case, Foremost filed its proof of claim, which was
16 deemed allowed as no objection was made to it, the Chapter 7 trustee prepared and
17 filed his final report and account of administration of the estate, paid distributions on
18 claims, including Foremost's allowed claim, from the liquidated assets of Ayers Bath's
19 bankruptcy estate, and the bankruptcy case was closed.  Foremost's proof of claim was
20 deemed allowed when the Chapter 7 trustee filed his final report and account of
21 administration of the estate on April 14, 2015.  Although there was no specific order
22 allowing Foremost's unobjected-to claim, its allowed proof of claim was a final judgment
23 for *res judicata* purposes.  *Siegel v. Federal Home Loan Mortgage Corp.,* 143 F.3d at
24 529.

25 However, there is nothing in the Bankruptcy Code or Rules that indicates that an
26 allowed bankruptcy claim would be an executable money judgment against a
27 bankruptcy debtor.  Under Federal Rule of Bankruptcy Procedure 7001(1), a proceeding
28 to recover money or property from a debtor or other party in a bankruptcy case must be

brought as an adversary proceeding, which requires service of a summons and

complaint pursuant to Federal Rule of Bankruptcy Procedure 7004. *In re Perkins,* 902

F.2d 1254, 1257-1258 (7th Cir. 1990); *In re Haber Oil Co., Inc.,* 12 F.3d 426, 437-440

(5th Cir. 1994); *In re Wheeler Technology, Inc.,* 139 B.R. 235 (9th Cir. BAP 1992); *In re

Grand View Financial, LLC,* No. 2:17-bk-20125-RK, 2018 WL 3025273 (Bankr. C.D.

Cal. Jun. 19, 2018); 10 Levin and Sommer, *Collier on Bankruptcy,* ¶ 7001.01.

　　　*Collier on Bankruptcy* explains what are adversary proceedings in a bankruptcy

case as follows:

> Federal Rule of Bankruptcy Procedure 7001 lists 10 separate categories of
> proceedings specifically denominated as adversary proceedings governed by the
> rules of Part VII [of the Federal Rules of Bankruptcy Procedure]. Certain of these
> contain specific exclusions, introduced by the words "other than" or "except
> when," which are governed by other rules or sections of the [Bankruptcy] Code.
>
> Adversary proceedings are separate lawsuits within the context of a particular
> bankruptcy case and have all of the attributes of a lawsuit, including the filing and
> service of a formal complaint and application, with certain modifications, of the
> Federal Rules of Civil Procedure, as provided in Part VII of the Bankruptcy Rules.

10 Levin and Sommer, *Collier on Bankruptcy,* ¶ 7001.01 (footnotes omitted).

　　　In contrast, as *Collier on Bankruptcy* explains, contested matters are different

from adversary proceedings and may proceed by motion:

> Contested matters that are not denominated as adversary proceedings are
> governed by other rules, including Rule 9014 [of the Federal Rules of Bankruptcy
> Procedure], which provides that in contested matters not otherwise governed by
> the Bankruptcy Rules, relief shall be requested by motion. Rule 9014 makes
> specific Part VII rules applicable to motions, unless the court otherwise directs,
> and gives the court the power and discretion to direct, at any stage, that one or
> more of the other rules in Part VII shall apply.

*Id.* (footnote omitted).

　　　A proof of claim filed in a bankruptcy case does not constitute an adversary

proceeding, but may become a contested matter if an objection is filed and may also

become an adversary proceeding if the proof of claim is joined with a request for certain

relief under the Federal Rules of Bankruptcy Procedure as further explained by *Collier

on Bankruptcy*:

The filing and subsequent objection to allowance of a proof of claim ordinarily does not commence an adversary proceeding even if priority or security is also claimed. The filing of an objection to the allowance of a claim is governed by Rule 3007 and commences a contested matter governed by Rule 9014. However, prior to the 2007 amendments to Rule 3007, when an objection was joined with a demand for relief of the kind specified in Rule 7001, Rule 3007 dictated that the matter became an adversary proceeding. Thus, if the trustee or debtor in possession asserted a counterclaim in response to a proof of claim, the entire matter ordinarily became an adversary proceeding, subject to the rules of Part VII, unless the counterclaim was not of the type specified in Rule 7001. However, as amended by the 2007 amendments, Rule 3007 prohibits the inclusion in a claim objection of a request for relief that requires an adversary proceeding, and allows, but does not require, the inclusion of the objection in an adversary proceeding. If a claim objection is filed separately from a related adversary proceeding, the court may consolidate the objection with the adversary proceeding pursuant to Rule 7042.

*Id.* (footnotes omitted).

Absent a money judgment against the debtor obtained through an adversary proceeding or other direct action to recover money against the debtor, an allowed bankruptcy claim is not an executable money judgment against the debtor because the Bankruptcy Code only provides that the allowance of a claim in a bankruptcy case means that the holder of an allowed bankruptcy claim is entitled to a distribution from the bankruptcy estate of a debtor in a Chapter 7 bankruptcy case, and the entity that is liable for payment of the claim through distributions from assets of the bankruptcy estate is the bankruptcy estate itself, not the debtor directly, based on the statutory scheme for filing and allowance of claims in a bankruptcy case under the Bankruptcy Code described above.  11 U.S.C. §§ 501, 502 and 726; *Ziino v. Baker,* 613 F.3d at 1328-1329.  In a bankruptcy case, a money judgment is obtained through an adversary proceeding brought against the debtor pursuant to Federal Rule of Bankruptcy Procedure 7001(1) or other direct action against the debtor.  *Zinno v. Baker,* 613 F.3d at 1329.  Foremost did not obtain a money judgment in this bankruptcy case because it did not obtain a money judgment as its judgment in the form of an allowed proof of claim was not obtained in an adversary proceeding against the debtor pursuant to Federal Rule of Bankruptcy Procedure 7001(1).

In a Chapter 7 bankruptcy case, a creditor who has a claim for a prepetition debt owed by the debtor may have a dischargeable debt, in which case the creditor is limited to a distribution, if any, from the bankruptcy case because the debt is subject to discharge under 11 U.S.C. § 524, or the creditor may have a nondischargeable debt, in which case the creditor will have to institute a proceeding to liquidate the debt to a judgment, normally in an adversary proceeding to determine that the debt is excepted from discharge under Federal Rule of Bankruptcy Procedure 7001(6).  This is true for individual Chapter 7 debtors whose debts allowed as general unsecured claims are discharged pursuant to 11 U.S.C. § 727(a).  *See Siegel v. Federal Home Loan Mortgage Corp.,* 143 F.3d at 531.[17]  The debts of corporate Chapter 7 bankruptcy debtors, such as Ayers Bath, are not generally subject to discharge pursuant to 11 U.S.C. § 727(a)(1); *see, In re Dow Corning Corp.,* 237 B.R. 380, 411-412 (Bankr. E.D. Mich. 1999).  The court in *Dow Corning* observed: "On the other hand, a corporate debtor whose assets are liquidated in chapter 7 does indeed remain liable for claims not paid in full since such claims are not discharged.  11 U.S.C. § 727(a)(1)."  237 B.R. at 411.  The court in *Dow Corning* made this observation in addressing a creditor's argument that postpetition interest on unsecured claims in a Chapter 7 bankruptcy case of a solvent debtor under 11 U.S.C. § 726(a)(5) should be paid at a higher state law rate than the federal judgment rate of 28 U.S.C. § 1961(a) and that such interest continues to accrue on claims that are not discharged.  *Id.*   The court in *Dow Corning* rejected the creditor's argument, stating:

> . . . And in fact, when estate proceeds are sufficient, the Bankruptcy Code requires all claims to be paid with interest, thereby leaving nothing upon which to sue.  In other words, the most that an unsecured creditor is entitled to receive in a chapter 7 proceeding is the value of its claim as of the petition date plus post-

---

[17]  In discussing why the allowed proof of claim in Siegel's bankruptcy case was *res judicata* and why his challenge to the allowed proof of claim as a final judgment was impermissible, the Ninth Circuit in *Siegel* set forth the need for finality of claim adjudication and the impact of the bankruptcy discharge, stating that "we . . . conclude that it is better to see the debtor's attack for what it is---an attempt to undercut the order of a bankruptcy court, deemed or otherwise, which allowed a creditor's claims and achieved finality for the debtor and the creditor by granting the former's discharge and barring the latter from further pursuit of the claims.  Thus, the district court did not err when it treated the bankruptcy court's allowance of Freddie Mac's claims as a final judgment."  143 F.3d at 531. This language indicates that the creditor has its allowed claim, the individual debtor has its discharge, and the resolution of the dispute between them over the debt owed by the debtor to the creditor in the bankruptcy case would be final.  This language does not indicate that there would be continuation of the dispute through a money judgment from the allowed claim for the creditor to collect.

petition "interest at the legal rate."  Once an unsecured claim is paid in accordance with the above formula, it is satisfied and the claimant will have no further recourse against the debtor.  Were this not the case, Congress would not have expressly provided for estate proceeds remaining after such distribution to be returned to the debtor. *See* 11 U.S.C. § 726(a)(6).

*Id.* at 412, *citing,* 11 U.S.C. § 726(a).  Similar to the situation involving an individual Chapter 7 debtor, if "estate proceeds are sufficient," i.e., the bankruptcy estate is solvent, there is finality of the dispute between the creditor holding an allowed unsecured claim and a corporate debtor in a Chapter 7 case as "the most the unsecured creditor is entitled to receive in a chapter 7 proceeding is the value of its claim as of the petition date plus post-petition 'interest at the legal rate.'"  *Id.*  Once a claim is paid in accordance with this formula, the claim is satisfied, and there is no further recourse against the debtor, "thereby leaving nothing upon which to sue." *Id.*  If estate proceeds are not insufficient in the Chapter 7 case of a corporate debtor, there is no entitlement to postpetition interest, and the creditor receives its pro rata distribution on its unsecured claim pursuant to 11 U.S.C. § 726(a) and (b), but the debt is not discharged, and as *Dow Corning* suggests there may be left something "upon which to sue," [18] or in other words, the creditor would have to sue the debtor in an action for a money judgment for further collection as the claim allowance and distribution process in a Chapter 7 bankruptcy case does not confer a money judgment on an unsecured creditor for an allowed claim that is not fully satisfied.  11 U.S.C. §§ 101(5)(A), 501, 502 and 726; *see also, Ziino v. Baker,* 613 F.3d at 1328-1329.

To obtain a money judgment against the debtor, a creditor would have to bring a direct action against the debtor to reduce its claim to a money judgment in an adversary proceeding or other separate proceeding.  *Ziino v. Baker,* 613 F.3d at 1329.  In an action by a creditor to reduce its claim to a monetary judgment and/or determine dischargeability of debt, if the claim is deemed allowed under 11 U.S.C. § 502(a), the determination of amount of the debt should have *res judicata* effect as to the debtor

---

[18]  Since Foremost heavily relies upon *Dow Corning* in its briefing, the court discusses the case in greater detail, *infra.*  Foremost's Supplemental Brief, ECF 255 at 9:12-28 (internal citation page 5).

unless the debtor contests the claim by filing an objection to the claim under Federal Rule of Bankruptcy Procedure 3007. *Siegel v. Federal Home Loan Mortgage Corp.,* 143 F.3d at 528-531; *Ziino v. Baker,* 613 F.3d at 1328-1329; *see also, Trustees of Operating Engineers Local 324 Pension Fund v. Bourdow Contracting, Inc.,* 919 F.3d 368, 380-384 and n. 9 (6th Cir. 2019) (holding that res judicata effect of a creditor's allowed bankruptcy claim in the debtor's bankruptcy case did not bar litigation of the amount of liability of the entity alleged to be the alter ego of the debtor in the creditor's subsequent civil action in federal district court against the alleged alter ego nondebtor party as its alter ego liability was not an issue litigated in the allowance of the claim in the bankruptcy case of the debtor, but suggesting in dicta that the allowed proof of claim may bar further litigation of the amount of liability based on collateral estoppel rather than res judicata). [19] Any judgment obtained in a proceeding to liquidate a claim and/or

---

[19] In *Bourdow Contracting*, a union pension fund brought a civil action in federal district court against a corporation in the construction site preparation and excavation business, alleging that the company was the alter ego of a defunct corporation substantially in the same business that incurred statutory liability of $1,163,279 for completely withdrawing from a multi-employer pension plan pursuant to Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1381(a). 919 F.3d at 373-374 and n. 2. The union pension plan demanded that the defunct corporation pay this withdrawal liability in installments, and when it defaulted, the union pension fund filed a lawsuit against it to recover the liability. *Id.* at 373-374. Subsequently, the defunct corporation filed a Chapter 7 bankruptcy case, and the union pension fund's lawsuit against it was stayed. *Id.* at 374. The union pension fund filed a proof of claim in the defunct corporation's bankruptcy case for $1,272,187, which was the amount of the liability, plus interest, and because there was no objection to the claim, the claim was deemed allowed pursuant to 11 U.S.C. § 502(a). *Id.* The union pension fund received $52,034 on its allowed proof of claim at the conclusion of the defunct corporation's bankruptcy proceedings. *Id.* Meanwhile, while the defunct corporation was ending its business, a new corporation was formed with some of the same family members who were the principals of the defunct corporation, and the new corporation engaged in substantially the same business as the defunct corporation. *Id.* The union pension fund filed the instant civil action in federal district court against the new corporation, seeking to recover the outstanding ERISA withdrawal liability that was not satisfied in the defunct corporation's bankruptcy proceedings, alleging that the new corporation was created for the purpose of evading the defunct corporation's withdrawal liability and thereby responsible for the liability pursuant to 29 U.S.C. § 1392(c) and the new corporation was the alter ego of the defunct corporation and thereby responsible for the withdrawal liability pursuant to the equitable doctrine of alter ego. *Id.* Following discovery, the parties filed cross-motions for summary judgment, and the district court denied the corporation's motion for summary judgment and granted the union pension fund's motion for summary judgment on grounds that the new corporation was the alter ego of the defunct corporation. *Id.* The district court further determined that the pension fund was entitled to judgment in the amount of $3,221,981, representing the amount of the withdrawal liability of the defunct corporation, less the amount paid on the pension fund's claim from the defunct corporation's bankruptcy case, plus interest and attorneys' fees pursuant to 29 U.S.C. § 1132(g)(2). *Id.* at 374-375. The new corporation appealed on grounds that the district court erroneously applied the alter ego standard under the National Labor Relations Act ("NRLA") and that the pension fund's allowed bankruptcy claim was a judgment that had *res judicata* effect and the district court erred in awarding a greater amount than the amount of the judgment

1

2

in the form of the proof of claim.  *Id.* at 375-384.  The Sixth Circuit affirmed the district court's judgment applying the NLRA alter ego test to the new corporation, holding that it was an alter ego of the defunct corporation as "merely the disguised continuance" of the prior business, on grounds that the corporation waived its objection to use of the NLRA test because it had requested the district court to grant summary judgment in its favor on the basis of the test and the evidence presented by the cross-motions for summary judgment supported the district court's grant of summary judgment to the pension fund in that six of the eight relevant factors under the NLRA test supported alter ego liability and the other two factors did not outweigh the six factors supporting alter ego.  *Id.* at 375-380.  As to the *res judicata* effect of the allowed bankruptcy claim, the Sixth Circuit stated that it was an issue of first impression in that circuit, but considering the state of the case law, it held, following the Second and Ninth Circuits in *EDP Medical Computer Systems, Inc. v. United States,* 480 F.3d 621 (2nd Cir. 2007) and *Siegel v. Federal Home Loan Mortgage Corp.,* 143 F.3d 525 (9th Cir. 1998), that "an uncontested proof of claim that is allowed pursuant to 11 U.S.C. § 502(a) is a final judgment on the merits for the purposes of res judicata, with or without a separate court order specifically allowing the claim." *Id.* at 380-383.  However, on the appeal before it, the Sixth Circuit held that the *res judicata* effect of the pension fund's proof of claim did not bar litigation of the amount of the new corporation's liability and the district court did not err in determining that the pension fund was entitled a judgment in excess of the amount on the proof of claim.  *Id.* at 383-384.  The new corporation argued that the *res judicata* effect of the pension fund's allowed proof of claim barred the pension fund from seeking more than was stated on the proof of claim, i.e., the interest and attorneys' fees under 29 U.S.C. § 1132(g)(2), which the Sixth Circuit could have been asserted on the proof of claim.  The Sixth Circuit held that three of the four required elements for *res judicata* applied: (1) a final decision on the merits by a court of competent jurisdiction was met in the allowed proof of claim; (2) a subsequent action between the same parties or their privies was met in that the subsequent action involved the same parties as the new corporation was the alter ego of the defunct corporation; and (3) an issue in the subsequent action which was litigated or could have been litigated in the prior action was met in that the amount of the interest and fees under 29 U.S.C. § 1132(g)(2) could have been asserted on the proof of claim along with the withdrawal liability of the defunct corporation, but it was not.  *Id.* at 380-383.  (The issue of whether the defunct corporation incurred the amount of the withdrawal liability was not an issue on appeal as the defendant, the new corporation, conceded the issue in its briefing, and in fact, based its *res judicata* argument on the amount as stated on the allowed proof of claim of the creditor.  *Id.* at 380-384.)  However, the Sixth Circuit held that the fourth element of *res judicata* of an identity of the causes of action was not met in the case because the pension fund's proof of claim arose out of, and was created by, the defunct corporation's failure to make the withdrawal liability payments to the pension fund while the pension fund's claim arose out of, and was created by, the new corporation's status as the defunct corporation's alter ego, and the operative facts to prove these claims are different, and "[t]hus, there is not an identity of 'the facts creating the right of action and of the evidence necessary to sustain each action" for *res judicata* to apply.  *Id., citing and quoting, Sanders Confectionary Prods., Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 484 (6th Cir. 1992).  In footnote 9 of the opinion, the Sixth Circuit commented that collateral estoppel may have been a better argument for the new corporation, but it had not properly raised it: ". . . collateral estoppel---which does not require an identity of the causes of action----may have been a more successful argument for Defendant.  Indeed, the relief Defendant alludes to throughout its briefs to this Court is the type of relief typically sought in collateral estoppel cases---barring litigation of an *issue*---not the type of relief typically sought in res judicata cases, i.e., barring litigation of a *claim.*"  *Id. see Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 582 (6th Cir. 1994).  However, Defendant did not raise a collateral estoppel argument until its reply brief.  *See supra,* note 6."  *Id.* at 384 and n. 9.  *Bourdow Contracting* is procedurally different from this case in that it was a civil action in federal district court brought by the creditor against an entity alleged alter ego of a bankruptcy debtor, seeking to collect the liability of the bankruptcy debtor not satisfied by the distribution on the creditor's proof of claim from the bankruptcy estate of the debtor, based on the equitable doctrine of alter ego, and the creditor recovered.  In this case, the creditor, Foremost, has moved to amend the proof of claim in the debtor's bankruptcy case to add the entity alleged to be alter ego of the bankruptcy debtor as an additional judgment debtor on the judgment in the form of the allowed proof of claim pursuant to Federal Rule of Civil Procedure 69(a) and state law, which is procedurally impermissible as the court discusses herein.

determine the nondischargeable status of a claim is subject to Federal Rules of Bankruptcy Procedure 7058 and 7062, which make Federal Rules of Civil Procedure 58 and 62 governing entry of a judgment and stay of proceedings to enforce a judgment applicable to adversary proceedings.  *See In re 3109, LLC*, Case No. 10-00757, 2014 WL 1655415, at *2-3.

An allowed proof of claim does not have the attributes of a money judgment in a proceeding before the bankruptcy court to recover money or property required to be brought under Federal Rules of Bankruptcy Procedure 7001 *et seq.* as an adversary proceeding.  *See, e.g., Ziino v. Baker, supra; In re 3109, LLC*, Case No. 10-00757, 2014 WL 1655415, at *2-3 (discussed in detail below).  As such, a creditor holding an allowed bankruptcy claim cannot collect on the claim against the bankruptcy debtor through levy or writ of execution without first reducing the amount of the claim to a money judgment through an adversary proceeding in the bankruptcy court or other proceeding in another court.  *Id.*  As *Collier on Bankruptcy* comments:

> **Execution would be necessary or appropriate only in an action to recover money or property, which would generally require an adversary proceeding to be commenced under Bankruptcy Rule 7001**. Principally for that reason, it is difficult to see how execution ever would be appropriate in connection with a contested matter. While money could be sought on a motion for payment of an administrative expense, which would be a contested matter, the chances that a bankruptcy court would permit execution to collect on an administrative expense are remote, by reason of Bankruptcy Code section 362(a)(3) and the other reasons discussed below.

10 Levin and Sommer, *Collier on Bankruptcy,* ¶ 7069.01, n. 2 (emphasis in bold added).[20]  As *Collier on Bankruptcy* further comments:

---

[20]  The reference to a contested matter is to Federal Rule of Bankruptcy Procedure 9014, which may include a motion for payment of an administrative expense claim if objected to by a party in interest. *Collier on Bankruptcy* recognizes that the allowance of such an administrative expense claim does not normally result in automatic allowance of execution to collect unless specifically permitted by the bankruptcy court.  The reference to Bankruptcy Code section 362(a)(3) in the quoted text from *Collier on Bankruptcy* pertains to the automatic stay that stays acts to obtain possession or exercise control over property of the bankruptcy estate.  11 U.S.C. § 362(a).  The "other reasons" mentioned in the text are not listed here.  It is also questionable how Federal Rule of Civil Procedure 69 applies to Foremost's allowed proof of claim.  Federal Rule of Bankruptcy Procedure 7069 provides that Federal Rule of Civil Procedure 69 applies in adversary proceedings, that is, judgments obtained in adversary proceedings.  Foremost's judgment in the form of an allowed proof of claim was not obtained through an adversary proceeding

By its terms, Civil Rule 69 is applicable to enforcement of only judgments for the payment of money. As a practical matter, therefore, it almost always will apply only when the underlying cause of action is not against an estate. If the underlying cause of action against the estate arose prepetition, it normally will be dealt with as a claim to be satisfied by a distribution upon liquidation or under a reorganization plan in the same manner as other similar claims. Even when relief from the stay is granted to permit an action on a prepetition claim to be commenced or continued in another forum, the order granting that relief will typically provide for leave only to obtain a judgment liquidating the claim or to proceed against non-estate assets, and will not permit execution on assets of the estate to enforce any resulting judgment. Permitting execution would materially risk impairing statutory priorities or the equality of treatment among similarly situated claims, one of the most important objectives of bankruptcy law.

Even when a judgment against the estate has been obtained with respect to a postpetition claim and the automatic stay is inapplicable, or the court has ordered the estate to make a postpetition payment (as for rent due under a lease), enforcement of the judgment against assets of the estate will run afoul of section 362(a)(3) of the Code—staying acts, among others, to obtain property from the estate or to exercise control over property of the estate. Accordingly, such judgments, if not otherwise satisfied, normally will be enforced by filing a motion for an order requiring payment of an administrative expense, and not by execution.

*Id.,* ¶ 7069.01 (footnotes and citations omitted).  This commentary from one of the leading bankruptcy law treatises, *Collier on Bankruptcy,* "Permitting execution [on bankruptcy claims] would materially risk impairing statutory priorities or the equality of treatment among similarly situated claims, one of the most important objectives of bankruptcy law," identifies a serious policy concern presented by Foremost's argument that its allowed bankruptcy claim is a monetary judgment within the meaning of Rule

---

within the meaning of Federal Rule of Bankruptcy Procedure 7001(1)-(10).  Federal Rule of Bankruptcy Procedure 9014 provides that Federal Rule of Bankruptcy Procedure 7069 applicable to contested matters, and thus, Federal Rule of Civil Procedure 69 applies to contested matters, that is, judgments obtained in contested matters.  However, Foremost's judgment in the form of its allowed proof of claim was not obtained through a contested matter as it was an uncontested matter.  It may be that Federal Rule of Civil Procedure 69 is applicable to Foremost's judgment in the form of the allowed proof of claim by reason of the holding in *In re Levander,* but the judgment in that case was obtained through the contested matter of the bankruptcy debtors' motion for an award of attorneys' fees, which was a contested matter under Federal Rule of Bankruptcy Procedure 9014.  Thus, it is unclear how procedurally Federal Rule of Civil Procedure 69 applies to Foremost's judgment in the form of its allowed proof of claim as it was not obtained through an adversary proceeding or a contested matter, and thus, Federal Rules of Bankruptcy Procedure 7069 and 9014 would not apply to make Federal Rule of Civil Procedure 69 applicable. However, in this court's view, it is a moot point in this case because the court concludes that the allowed proof of claim is not a money judgment for Federal Rule of Civil Procedure 69 to apply.

1   69(a).  As the case law and commentary discussed herein indicates, it is not.  As *Collier*

2   *on Bankruptcy* observes, "If the underlying cause of action against the estate arose

3   prepetition, it normally will be dealt with as a claim to be satisfied by a distribution upon

4   liquidation or under a reorganization plan in the same manner as other similar claims."

5   *Id.*

6         The case law is consistent that the above-described attributes of an allowed

7   bankruptcy claim do not make it a money judgment enforceable by a writ of execution

8   for purposes of Federal Rule of Civil Procedure 69(a).  *Ziino v. Baker*, *supra; In re One*

9   *World Adoption Services, Inc.,* 577 B.R. at 482-486; *In re Soelberg*, Case No. 15-

10  01355-TLM, 2019 WL 3805980; *In re 3109, LLC*, Case No. 10-00757, 2014 WL

11  1655415.  The case of *Siegel v. Federal Home Loan Mortgage Corp.,* which Foremost

12  heavily relies upon is not inconsistent as that case did not involve Rule 69(a).  In *Siegel,*

13  two partners took out two loans on two parcels of real property and executed

14  promissory notes and deeds of trust in favor of the lender to secure the loans.  143 F.3d

15  at 527.  The lender sold and assigned the notes and deeds of trust to the Federal Home

16  Loan Mortgage Corp. ("Freddie Mac").  *Id.*  The partners, or borrowers, defaulted on the

17  loans, and Freddie Mac foreclosed on one property and filed an action in federal district

18  court seeking a deficiency judgment against the borrowers.  *Id.* at 528.  Prior to trial in

19  this action, one borrower, Siegel, filed for bankruptcy.  *Id.*  Freddie Mac filed two proofs

20  of claim in Siegel's bankruptcy case, one for each real property loan, and neither Siegel

21  nor the bankruptcy trustee filed an objection to those proofs of claim.  *Id.*  The

22  bankruptcy court granted Freddie Mac relief from the automatic stay so that it could

23  foreclose the other property.  *Id.*  Siegel was discharged from bankruptcy, and the

24  bankruptcy case was closed.  *Id.*  Subsequently, Freddie Mac foreclosed on the other

25  property.  *Id.*  Meanwhile, the borrowers had filed an action in state court against

26  Freddie Mac for tort and breach of contract regarding the foreclosures upon the two

27  properties, which Freddie Mac removed to federal district court.  *Id.*  Freddie Mac then

28  moved for summary judgment against Siegel on all claims on grounds that his action

was barred by the res judicata effect of the bankruptcy proceeding.  *Id*.  The district

court granted Freddie Mac's summary judgment motion against Siegel and its

subsequent motion for attorneys' fees against Siegel.  *Id*.  The Ninth Circuit affirmed.

*Id.* at 528-533.  As to *res judicata*, the Ninth Circuit stated that an allowed bankruptcy

claim was entitled to *res judicata* effect because it met its four-factor test for res

judicata: "(1) whether rights or interests established in the prior judgment would be

destroyed or impaired by prosecution of the second action; (2) whether substantially the

same evidence is presented in the two actions; (3) whether the two suits involved

infringement of the same right; and (4) whether the two suits arise out of the same

transactional nucleus of facts."  *Id.* at 529, *citing and quoting, In re International

Nutronics,* 28 F.3d 965, 970 (9th Cir. 1994).

      According to the Ninth Circuit in *Siegel*, Freddie Mac's allowed proof of claim met

this standard:

> Application of this test indicates that the district court correctly concluded that
> Siegel's claims were barred by res judicata.  Freddie Mac filed two proofs of
> claim (Windell and Dalton Place) in Siegel's bankruptcy proceeding.  No
> objection was filed to the claims in the bankruptcy action.  Siegel's present suit
> against Freddie Mac in contract and tort states a variety of causes of actions all
> of which are premised on Freddie Mac's failure to repair projects on the Windell
> and Dalton Place properties, and its failure to approve the sale and transfer of
> the Dalton Place property.  The gravamen is that Freddie Mac violated its duties
> under the notes and deeds of trust and, among other things, should not have
> been able to proceed against Siegel due to its own defaults and wrongdoing.
> Clearly, Freddie Mac's right to recover on its proofs of claim in the bankruptcy
> court could have been attacked on that basis.  Just as clearly, its rights
> established in the bankruptcy would be affected by resolution of the present
> action.  Similarly, the present suit and the proofs of claim stem from the same
> nucleus of facts, and involve similar evidence, i.e., the loan documentation and
> the surrounding circumstances.  Again, the interests at stake in both actions
> involve Freddie Mac's right to recovery under the loan agreements.  As such, the
> district court correctly concluded that res judicata bars Siegel's claims in the
> present action.

*Id.* at 529.  The Ninth Circuit further rejected Siegel's argument that a separate order of

the bankruptcy court expressly allowing the proofs of claim was required before the

allowed claims would have *res judicata* effect.  *Id.* at 530.  The Ninth Circuit affirmed the

1    award of attorneys' fees based on the contractual provisions for such an award in the

2    loan agreements.  *Id.* at 531-533.  *Siegel* did not involve the attempt of a creditor to

3    enforce an allowed bankruptcy claim as a money judgment under Rule 69, but rather,

4    the creditor used its allowed proof of claim in debtor's bankruptcy case, having *res*

5    *judicata* effect, as a defense against the debtor's lawsuit alleging causes of action for

6    tort and breach of contract arising out of the same nucleus of facts from which both the

7    creditor's allowed proof of claim and the debtor's lawsuit stemmed.  The precise issue in

8    the case now before the court in this case, that is, the applicability of Rule 69 to an

9    allowed bankruptcy claim was not involved in *Siegel* and thus, it is not directly on point

10   on that issue.

11          In the case of *In re 3109, LLC*, the court expressly followed the Eleventh Circuit's

12   decision in *Ziino v. Baker* stated that its reliance on *Ziino v. Baker* was reinforced by the

13   Federal Rules of Bankruptcy Procedure governing how to obtain a money judgment in

14   bankruptcy proceedings.  *In re 3109, LLC,* No. 10-00757, 2014 WL 1655415, at *1-3.  In

15   this case, the court issued an order striking writs of attachment to enforce a money

16   judgment, holding that an order allowing 11 U.S.C. § 330(a)(1) compensation as an

17   administrative expense claim was not a monetary judgment to warrant issuance of such

18   writs, and discussing the distinctions between an allowed bankruptcy claim and a

19   money judgment.  *Id.*  The party filing the writs of attachment was the attorney

20   employed as counsel for the debtor-in-possession in a Chapter 11 bankruptcy case who

21   held an allowed administrative expense claim for his professional fees in the case.  *Id.*

22   As the court noted, the attorney's allowed claim was for services rendered before

23   confirmation of the Chapter 11 plan, and the confirmed Chapter 11 reorganization plan

24   provided for treatment of the claim, which was binding on the attorney.  *Id.*  As the court

25   noted, the order allowing the administrative expense claim did not direct that the claim

26   was to be treated as a monetary judgment.  *Id.*  The court held that the attorney could

27   not obtain writs of attachment to collect the unpaid portion of his allowed administrative

28   expense claim in the bankruptcy case against the bankruptcy debtor, holding that it was

not a monetary judgment executable through writs of attachment. *Id*. at *1-3.  In so

holding, the court explained the differences between an allowed bankruptcy claim and a

monetary judgment, following the Eleventh Circuit's holding in *Ziino v. Baker* and

discussing how Federal Rules of Bankruptcy Procedure reinforced its concurrence with

the holding in *Ziino v. Baker*, stating:

> An order allowing a claim in a bankruptcy case, regardless of whether the claim is an administrative claim or instead a prepetition claim of a creditor, adjudicates the amount owed to the holder of the claim, but does not amount to a monetary judgment unless the court so directs. The distinction between an order allowing a claim and a monetary judgment was aptly described in *Ziino v. Baker*, 613 F.3d 1326 (11th Cir. 2010). That case involved an action brought by Ziino seeking to enforce an order allowing his claim in a prior bankruptcy proceeding against assets held in trust for his former domestic partner, Wellman.  *Id*.  The Eleventh Circuit determined that the court order allowing Ziino's claim in Wellman's prior bankruptcy proceeding was not a final, executable money judgment. *Id*. at 1327. As explained by the court:
>
> > An allowed claim in bankruptcy serves a different objective from that of a money judgment–it permits the claimant to participate in the distribution of the bankruptcy estate. *See* 11 U.S.C. § 507 (2006); 4 Collier on Bankruptcy ¶ 501.01[2][b] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2010). "[T] he assertion of a claim in bankruptcy is, of course, not an attempt to recover a judgment against the debtor but to obtain a distributive share in the immediate assets of the proceeding." *Matter of Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir.1977) (quoting *In re Kansas City Journal–Post Co*., 144 F.2d 791, 803-04 (8th Cir.1944)); see also 10 Collier on Bankruptcy ¶ 7069.01 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2009) ("By its terms, Civil Rule 69 is applicable to enforcement of only judgments for the payment of money.... If the underlying cause of action against the estate arose prepetition, it normally will be dealt with as a claim to be satisfied by a distribution upon liquidation or under a reorganization plan....").
>
> *Id*. at 1328-29. Here, similarly, the court's award in favor of Johnson for postpetition services was the section 330 predicate for his being allowed to obtain a distribution under the terms of the confirmed plan. The court did not indicate that the award in favor of Johnson was to go beyond that and be treated as a monetary judgment.
>
> This conclusion is reinforced by the Federal Rules of Bankruptcy Procedure. Under Rule 7001(1), with exceptions of no relevance here, "a

proceeding to recover money or property" is an adversary proceeding, which, under Rule 7003, must be commenced by the filing of a complaint. Johnson's application was not filed as a complaint commencing an adversary proceeding. Instead, Johnson's application was filed under Rule 2016(a). As in the case of a proceeding pursuant to Rule 3007 or Rule 3008 (the rules regarding allowance or disallowance of disputed prepetition claims), the proceeding commenced by Johnson's application created merely a contested matter governed by Rule 9014.

Unlike an adversary proceeding monetary judgment to which Rules 7058 and 7062 apply, an order adjudicating a contested matter is, under Rule 9014(c), not automatically subject to the strictures of Rules 7058 and 7062. If Johnson had wished to obtain a monetary judgment when he sought an award of fees, he ought to have filed a complaint commencing an adversary proceeding, with any monetary judgment being subject to the 14-day stay after entry under Rule 7062.

True, the court's order fixed the amount of compensation owed to Johnson, and is entitled to preclusive effect. *See EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 625 (2d Cir.2007) (holding that "a bankruptcy court order allowing an uncontested proof of claim constitutes a 'final judgment' and is thus a predicate for res judicata."). However, unlike a monetary judgment, the order allowing the claim did not provide that interest would commence to run in accordance with 28 U.S.C. § 1961. Moreover, by the terms of the confirmed plan, Johnson's claim for pre-confirmation fees was not payable until 30 days following the entry of the court's order allowing his claim. *See* Dkt. No. 97, section 3.02. This means that at the time the order allowing the claim was entered, there was not yet a default pursuant to which Johnson could seek a monetary judgment for the unpaid fees. Both the lack of judgment interest and the lack of any obligation for which payment was past due when Johnson sought his award distinguish the court's order awarding compensation and a reimbursement of expenses from a monetary judgment.

*In re 3109, LLC,* No. 10-00757, 2014 WL 1655415, at *2-3 (footnotes omitted); *see also*, 11 U.S.C. §§ 501, 502, 503, 507 and 726; *In re Trigee Foundation, Inc.,* Case No. 12–00624, 2017 WL 3190737, at *1-3 (Bankr. D.D.C. July 26, 2017) (determining that the allowance of a claim as an administrative expense or as a claim against the estate does not constitute entry of a money judgment but merely determines that the claimant is entitled to a distribution from the bankruptcy estate being administered, and that fee orders were not intended to be money judgments collectible by writs of execution after

the dismissal of the case; holding that fee orders are not civil judgments, and 28 U.S.C. § 1961 providing for post-judgment interest does not apply; and finding Fed. R. Civ. P. 69(a) is inapplicable as it only permits the enforcement of money judgments). Thus, the case law recognizes that an allowed claim does not have the attributes of a money judgment under Federal Rule of Civil Procedure 69(a) as it is not enforced by a writ of execution.

In a case not involving Federal Rule of Civil Procedure 69, the Ninth Circuit held in *In re Southern California Plastics, Inc*., that the attributes of an allowed bankruptcy claim were not equivalent to a state court judgment to perfect an attachment lien under state law, observing:

> Nonetheless, the BAP's conclusion may be justified if an allowance of claim were truly equivalent to obtaining a judgment. The procedure for allowance of a claim, however, is similar but not identical to that for obtaining a judgment. In the allowance process, the validity and legality of claims are determined by applicable nonbankruptcy law. *See e.g., Christison v. Norm Ross Co.* (*In re Eastview Estates II*), 713 F.2d 443, 447 (9th Cir. 1983). A claim cannot be allowed if it is unenforceable under nonbankruptcy law. *See* 11 U.S.C. § 502(b)(1). The Trustee therefore may raise state law defenses to the claim. Unlike in a state court judgment, however, the proof of claim is prima facie evidence of the validity of the claim. *See* 4 Collier on Bankruptcy at ¶ 502.02[2][f] (15th ed., 1998). Although the creditor bears the ultimate burden of persuasion, the debtor must come forward with evidence to rebut the presumption of validity. *See id*. Additionally, because the allowance of a claim is a contested matter, the proceeding is before the bench not a jury.

> Because of these differences, we hold that an allowance of claim is not equivalent to a judgment for purposes of perfecting an attachment lien. Attachment liens "can be created and continue to exist only in the cases and to the extent to which the [California] Legislature by statutory enactment has authorized their creation and continued existence." *Arcturus Mfg. Corp.*, 35 Cal.Rptr. at 503. Because attachment is a "harsh remedy," as the debtor loses some control of its property without the protection of a full adjudication, "the provisions related thereto should be strictly construed." *United States Liab. Ins. Co. v. Superior Court*, 252 Cal.App.2d 557, 60 Cal.Rptr. 723, 725 (1967) (citations omitted). One of the protections for the debtor built into the process is that the attachment creditor cannot proceed against the attached property until a judgment, with all of its procedural protections, is obtained. The BAP's solution upsets this balance and gives an advantage to the attachment creditor.

1

2

3

4

5

6

7

8

9

10

11

> We recognize that the BAP's holding preserves many of the objectives of the automatic stay and that it results in a straightforward procedure for dealing with attachment liens. We also recognize that at times bankruptcy law may define what otherwise would be defined by state law. *See*, *e.g.*, *California Dept. of Health Serv. v. Jensen* (*In re Jensen*), 995 F.2d 925, 929–30 & n. 5 (9th Cir. 1993) (recognizing that, because of the Code's broad definition of "claim," bankruptcy law defines when a claim arises even though the claim is based on nonbankruptcy law). But it is axiomatic that, even in the bankruptcy context, state law governs the validity and extent of liens. Moreover, the Bankruptcy Code intends to preserve, to the extent possible, the state law rights possessed by parties outside of the bankruptcy context. *See HAL, Inc. v. United States* (*In re Hal, Inc.*), 122 F.3d 851, 852 (9th Cir. 1997). Permitting an allowance of claim to substitute for a judgment perfecting an attachment lien undermines the rights and protections created by the California Legislature. We therefore reverse the BAP.

12 163 F.3d at 1247-1248; *see also*, *In re One World Adoption Services, Inc.,* 577 B.R. at

13 485-486 (citing *In re Southern California Plastics, Inc.,* for the proposition that an

14 allowed claim may be a final judgment under *Siegel v. Federal Home Loan Mortgage*

15 *Corp*., but being a final judgment does not make it necessarily a money judgment).

16     Foremost attempts to distinguish *In re Southern California Plastics, Inc.*, by

17 arguing "the Ninth Circuit's limited finding that an allowed bankruptcy claim is not a

18 'judgment in the underlying action' for purposes of California lien law does not support

19 this Court's tentative ruling that an allowed bankruptcy claim is not a 'money judgment'

20 for purposes of federal law."  Foremost's Supplemental Brief, ECF 255 at 10:8 - 11:7

21 (internal citation pages 6-7).  While it is correct for Foremost to state that the Ninth

22 Circuit was considering application of California lien law in *In re Southern California*

23 *Plastics, Inc.*, the Ninth Circuit had nonetheless considered whether an allowed

24 bankruptcy claim was the equivalent of a judgment, "whether that be in state or federal

25 court," and held that it was not, stating "that an allowance of claim is not equivalent to a

26 judgment for purposes of perfecting an attachment lien."  *In re Southern California*

27 *Plastics, Inc.*, 165 F.3d at 1248.  As the above-quoted text from the opinion indicates,

28 an allowed bankruptcy claim had different attributes which set it apart from a standard

1  federal or state court judgment.  Moreover, the Ninth Circuit in *Southern California*

2  *Plastics* noted that it had previously decided in the case of *Federal Deposit Insurance*

3  *Corp. v. Jenson (In re Jenson),* 980 F.2d 1254 (9th Cir. 1992) that a judgment by the

4  bankruptcy court on a deficiency claim initiated in a lawsuit in the federal district court

5  before the debtor filed bankruptcy and later referred by the district court to the

6  bankruptcy court was sufficient to perfect an attachment lien relating back to the date of

7  writ of attachment. *In re Southern California Plastics, Inc.,* 165 F.3d at 1246, *citing, In re*

8  *Jenson,* 980 F.2d at 1258-1259.  The Ninth Circuit observed that "[u]nder state law, an

9  attachment lien is perfected by obtaining judgment in the underlying action," the

10  allowance of a bankruptcy proof of claim is not the equivalent of a judgment to perfect

11  an attachment lien under state law.  *Id.* at 1247-1248.

12        The holding of *Southern California Plastics* supports the conclusion that the

13  allowance of a proof of claim in a bankruptcy case is not the equivalent to a money

14  judgment for purposes of amending a judgment under Rule 69(a) because the decision

15  shows that an allowed claim, though a final judgment, is not a judgment for all purposes

16  as it cannot serve as a judgment to base an attachment lien under California law to

17  collect the amount owed on the proof of claim.  This court concludes that similarly, an

18  allowed proof of claim in a bankruptcy case is not a money judgment that can be the

19  basis of a writ of execution as held by the Eleventh Circuit in *Ziino v. Baker.*

20        Foremost relies upon language in the Ninth Circuit's opinion in *In re Cardelucci*,

21  285 F.3d 1231 (9th Cir. 2002) to support its argument that its allowed bankruptcy claim

22  is a money judgment under Rule 69(a).  Foremost's Supplemental Brief, ECF 255 at

23  8:23 - 11:24 (internal citation pages 4-7).  Foremost argued in its brief:

24        In *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002), the question before the Ninth
25        Circuit was whether interest on an allowed bankruptcy claim should be calculated
        under California's state statutory interest rate or the federal post-judgment
26        interest rate.  *See id.* at 1233.  In holding that the claimant was entitled to interest
        at the federal poset-judgment rate, the Ninth Circuit observed that an allowed
27        claim is equivalent to a money judgment:

28             Upon the filing of the bankruptcy petition, creditors with a claim against the
             estate must pursue their rights to the claim in federal court and entitlement

to a claim is a matter of federal law . . . . Absent a timely objection, all claims filed against the bankruptcy estate are "deemed allowed" as of the date of the filing.  11 U.S.C. § 502(a).  This allowed claim, like a judgment, gives the creditor a legal "right to payment" of a specific sum of money against the debtor.  11 U.S.C. § 101(5); 11 U.S.C. § 502(b).

*Id.* at 1235 (citations omitted)(emphasis added).  Because "[i]n bankruptcy, an allowed claim becomes a federal judgment," the Ninth Circuit held that the holder of the claim is entitled to post-judgment interest at the federal rate.

Foremost's Supplemental Brief, ECF 255 at 8:23 - 11:24 (internal citation pages 4-7).

Regarding *Ziino v. Baker* and its progeny, Foremost argues: "The Eleventh Circuit's ruling and, by extension, the bankruptcy courts' decisions in *Soelberg* and *3109*, are simply at odds with the Ninth Circuit's holding in *Cardelucci* that a deemed allowed claim is the equivalent of a judgment in that it gives the creditor 'a legal right to payment' of a specific sum of money against the debtor."  *Id.* at 11:20-24 (internal citation page 7), *citing and quoting, In re Cardelucci,* 285 F.3d at 1235 (citation omitted).

*Cardelucci* is not directly on point because it did not involve the issue of the applicability of Rule 69(a) to an allowed bankruptcy claim.  The issue in *Cardelucci* was how to interpret 11 U.S.C. § 726(a)(5) providing for payment of interest "at the legal rate" on claims to be paid in full under the confirmed reorganization plan in a Chapter 11 bankruptcy case of a solvent debtor required under the "best interests of creditors" test of 11 U.S.C. §1129(a)(7)(A)(ii).[21]  *Id.* at 1233-1234.  In *Cardelucci,* unsecured creditors holding a claim based on a state court judgment objected to the debtor's proposed Chapter 11 reorganization plan on grounds that the legal rate of interest on their claim

---

[21]  Under the "best interests of creditors" test of 11 U.S.C. §1129(a)(7)(A)(ii), in order for a reorganization plan to be confirmed under Chapter 11 of the Bankruptcy Code, 11 U.S.C., the plan must pay each holder of a claim of a class that has not accepted the plan by paying an amount not less than the claim holder would receive in a Chapter 7 liquidation bankruptcy case, and in the case of a solvent debtor, where there are sufficient assets to pay 100 percent of unsecured claims, postpetition interest "at the legal rate" must be paid on such claims pursuant to 11 U.S.C. §726(a)(5).  The Ninth Circuit in *Cardelucci* observed: "Where a debtor in bankruptcy is solvent, an unsecured creditor is entitled to 'payment of interest at the legal rate from the date of the filing of the petition' prior to any distribution of remaining assets to the debtor."  *Id.* at 1234, citing, 11 U.S.C. § 726(a)(5)).  "Under [the best interests of creditors test of 11 U.S.C. § 1129(a)(7).] the bankruptcy court must compare what a dissenting creditor would receive if the estate were liquidated under the provisions of chapter 7 of the Bankruptcy Code with what the claimant would receive under the plan.  If the creditor would get more in a chapter 7 liquidation, then the plan cannot be confirmed."  *In re Dow Corning Corp.,* 237 B.R. 380, 384 (Bankr. E.D. Mich. 1999).

should have been the 10 percent interest on judgments as provided under state law rather than the lower interest rate on federal court judgments under 28 U.S.C. §1961(a). *Id.* at 1233.  The Ninth Circuit stated in *Cardelucci* that the case presented "the narrow but important issue of whether such post-petition interest is to be calculated using the federal judgment interest rate or is determined by the parties' contract or state law," and held that the legal rate of interest for an allowed claim is determined by federal law.  *Id.* That is, the issue in *Cardelucci* was to determine what Congress meant in 11 U.S.C. § 726(a)(3) by the term "payment of interest at the legal rate" in referring to payment of post-petition interest in solvent Chapter 7 bankruptcy estates.  The Ninth Circuit noted: "The Bankruptcy Code does not define the term 'interest at the legal rate' and there is a paucity of legislative history regarding this statutory provision."  285 F.3d at 1234.  The Ninth Circuit addressed whether the provision meant a rate fixed by federal statute or by the parties' contract or by state law.  *Id.* Congress did not specify federal or state statute or other law to determine what would be the legal rate of interest, such as 28 U.S.C. § 1961(a).

The Ninth Circuit in *Cardelucci* reasoned that the federal rate of interest was the appropriate rate because the statute referred to the definite article "the" as opposed to indefinite article of "a" or "an" in referring to "the legal rate of interest," indicating congressional intent for a single source to calculate the rate of interest, suggesting one uniform rate set by federal statute, such as the federal judgment rate under 28 U.S.C. §1961(a).  285 F.3d at 1234-1235.  The Ninth Circuit further reasoned that using the federal rate promotes uniformity within federal law as once a bankruptcy petition is filed, creditors with claims against the bankruptcy estate must pursue their rights to their claims in federal court and entitlement to a claim is a matter of federal law.  *Id.* at 1235, *citing and quoting, Bursch v. Beardsley & Piper,* 971 F.2d 108, 114 (8th Cir. 1992) ("[O]nce a bankruptcy petition is filed, federal law, not state law, determines a creditor's rights.").

In *Cardelucci,* the Ninth Circuit described the process for allowing creditor claims

1    in a federal bankruptcy case as follows:

2          Upon the filing of the bankruptcy petition, creditors with a claim against the estate
3          must pursue their rights to the claim in federal court and entitlement is a matter of
          federal law. Absent a timely objection, all claims filed against the bankruptcy
4          estate are "deemed allowed" as of the date of filing.  11 U.S.C. § 507(a).  This
          allowed claim, like a judgment, gives the creditor a legal "right to payment": of a
5          specific sum of money against the debtor.  11 U.S.C. § 110(5); 11 U.S.C. §
          502(b).  As of the date of the filing of the petition, creditors hold a claim, similar to
6          a federal judgment, against the estate, the payment of which is only dependent
          upon the completion of the bankruptcy process.  In this respect, the purpose of
7          post-petition interest makes the award analogous to an award of post-judgment
          interest.  *See Kaiser Aluminum and Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835-
8          36, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (stating that the purpose of post-
          judgment interest is "to compensate the successful plaintiff for being deprived of
9          compensation for the loss from the time between the ascertainment of the
          damages and the payment by the defendant") (citation omitted).
10
11          It has long been the rule that an award of post-judgment interest is procedural in
          nature and thereby dictated by federal law.  *Hanna v. Plumer,* 380 U.S. 460, 473-
12          74, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (stating that procedural matters arising in
          federal court are decided by federal law).  This rule is best illustrated by the
13          difference in treatment of pre-judgment and post-judgment interest in diversity
          actions.  In diversity actions brought in federal court a prevailing plaintiff is
14          entitled to pre-judgment interest at state law rates while post-judgment interest is
          determined by federal law.  *See Northrup Corp. v. Triad Int'l Mktg., S.A.,* 842
15          F.2d 1154, 1155 (9th Cir. 1988).  In bankruptcy, an allowed claim becomes a
          federal judgment and therefore entitles the holder of the judgment to an award of
16          interest pursuant to federal statute.  *In re Chiapetta,* 159 B.R. 152, 160-61
          (Bankr. E.D. Penn. 1993); *In re Melenyzer,* 141 B.R. [829,] at 833 [(Bankr. W.D.
17          Tex. 1992)].

18    *Id.* at 1235 (citations omitted).

19          In its supplemental brief, Foremost relies upon the following language from this

20    passage from the Ninth Circuit's opinion in *Cardelucci*: "This allowed claim, like a

21    judgment, gives the creditor a legal 'right to payment' of a specific sum of money

22    against the debtor."  Foremost's Supplemental Brief, ECF 255 at 8:23 - 9:9 (internal

23    citation pages 4-5), *citing and quoting, In re Cardelucci,* 235 F.3d at 1235, citing 11

24    U.S.C. §§ 101(5) and 502(b).  From this quoted language, Foremost argues that its

25    allowed claim is the equivalent of a judgment which entitles it to a right to payment, or a

26    money judgment under Rule 69(a).  Foremost reads too much into this particular

language in *Cardelucci* because the language is selectively quoted as Foremost does not quote the following sentence which puts the language of the sentence quoted by Foremost into context, which states: "As of the filing of the petition, creditors hold a claim, similar to a federal judgment, against the estate, the payment of which is only dependent upon the completion of the bankruptcy process." *In re Cardelucci,* 285 F.3d at 1235.

These two sentences read together state:

This allowed claim, like a judgment, gives the creditor a legal 'right to payment' of a specific sum of money against the debtor. 11 U.S.C. § 101(5); 11 U.S.C. § 502(b). As of the filing of the petition, creditors hold a claim, similar to a federal judgment, against the estate, the payment of which is only dependent upon the completion of the bankruptcy process.

*Id.* These two sentences reflect the express understanding of the Ninth Circuit in *Cardelucci* that creditors holding allowed claims "hold a claim, similar to a federal judgment, **against the estate**," which gets paid through the bankruptcy process (i.e., through distributions after administration of the bankruptcy estate in the bankruptcy case, *see* 11 U.S.C. §§ 502 and 726), which do not support Foremost's argument that the quoted language supports its argument that creditors hold a money judgment against the debtor directly. *Id.* (emphasis in bold added); *see also, Travelers Casualty and Surety Co. of America v. Pacific Gas and Electric Co.,* 549 U.S. at 449 ("When a debtor declares bankruptcy, each of its creditors is entitled to file **a** proof of claim—i.e., a document providing proof of a "right to payment," 11 U.S.C. § 101(5)(A)—against the debtor's estate.").

The two sentences support the following sentence in *Cardelucci*, which concluding that an award of postpetition interest on an allowed claim is "analogous" to an award of post-judgment interest:

In this respect, the purpose of post-petition interest makes the award analogous to an award of post-judgment interest. *See Kaiser Aluminum and Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835-836, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (stating that the purpose of post-judgment interest is "to compensate the successful plaintiff for being deprived of compensation for the loss from the time

between the ascertainment of the damages and the payment by the defendant")
(citation omitted).

*Id. Cardelucci* only involved the issue of how much was needed to be paid on a claim to
be paid through distributions in a bankruptcy case, or specifically, how much interest
needed to be paid on such a claim when distributions from the bankruptcy estate are to
be made through a reorganization plan or a liquidation, which is clearly indicated from
the text of the opinion:

> Absent a timely objection, all claims filed against the bankruptcy estate are
> "deemed allowed" as of the date of filing.  11 U.S.C. § 507(a).  This allowed
> claim, like a judgment, gives the creditor a legal "right to payment": of a specific
> sum of money against the debtor.  11 U.S.C. § 110(5); 11 U.S.C. § 502(b).  As of
> the date of the filing of the petition, creditors hold a claim, similar to a federal
> judgment, against the estate, the payment of which is only dependent upon the
> completion of the bankruptcy process.  In this respect, the purpose of post-
> petition interest makes the award analogous to an award of post-judgment
> interest. . . . In bankruptcy, an allowed claim becomes a federal judgment and
> therefore entitles the holder of the judgment to an award of interest pursuant to
> federal statute.

*In re Cardelucci,* 285 F.3d at 1235 (citations omitted).  In other words, a creditor with an
allowed claim in a bankruptcy case holds a claim: (1) which is **similar** to a federal
judgment; (2) which is **against the bankruptcy estate**; (3) for which payment is only
**dependent on the completion of the bankruptcy process**; and (4) which is entitled to
an **award of interest** pursuant to federal statute.  [22]

---

[22] In the last sentence of its argument based on *Cardelucci* that its allowed claim is a money judgment for
purposes of Federal Rule of Civil Procedure 69(a), Foremost asserted: "Because "[i]n bankruptcy, an
allowed claim becomes a federal judgment," the Ninth Circuit held that the holder of the claim is entitled to
post-judgment interest at the federal rate." Foremost's Supplemental Brief, ECF 255 at 8:23 - 11:24
(internal citation pages 4-7). The entire sentence of the *Cardelucci* opinion partially quoted by Foremost
reads as follows: "In bankruptcy, an allowed claim becomes a federal judgment and therefore entitles the
holder of the judgment to an award of interest pursuant to federal statute.  *In re Chiapetta*, 159 B.R. 152,
160-61 (Bankr. E.D. Penn. 1993); *In re Melenyzer*, 141 B.R. [829,] at 833 [(Bankr. W.D. Tex. 1992)]."  *In
re Cardelucci,* 285 F.3d at 1235.  The *Chiapetta* and *Melenyzer* cases cited by the Ninth Circuit in
*Cardelucci* similarly are not directly on point as they only addressed the issue of whether postpetition
interest was to be paid on allowed claims in a solvent Chapter 7 bankruptcy case under the federal
postjudgment rate of 28 U.S.C. § 1961(a) pursuant to 11 U.S.C. § 726(a)(5), holding that it did, and these
cases did not involve the issue of whether an allowed bankruptcy claim is a money judgment for purposes
of Federal Rule of Civil Procedure 69. The court in *Melenyzer* stated its rationale for adopting the federal
postjudgment interest rate as "interest at the legal rate" under 11 U.S.C. § 726(a)(5):

The instant case now affords us another opportunity to consider the meaning of "interest at the

1      That *Cardelucci* concerned payment on a claim through a distribution from the

2  bankruptcy estate in a bankruptcy case bears emphasis because *Cardelucci* did not

3  involve Federal Rule of Civil Procedure 69 or payment of a money judgment through

4  enforcement against the debtor through that rule, which is different from payment of a

5  claim through a distribution from a bankruptcy estate in a bankruptcy case.  *Cardelucci*

6  is inapplicable here because Foremost is not seeking an award of postpetition interest

7  on an allowed claim paid through a confirmed plan in the Chapter 11 reorganization

8  case of a solvent bankruptcy debtor, which Ayers Bath was not; rather, Foremost is

9  seeking to collect against Tangshan Ayers outside the bankruptcy case through what it

10 considers to be an amendment of an enforceable money judgment, which its allowed

11 proof of claim against Ayers Bath is not.  *Cardelucci* does not support such an

12 argument.

13     Foremost also cites to the case of *In re Dow Corning Corp.*, 237 B.R. 380 (Bankr.

14 E.D. Mich. 1999), which presented the same legal issue as *Cardelucci,* that is, whether

15 "the legal rate of interest" under 11 U.S.C. § 726(a)(5) was governed by federal or state

16 law.  Foremost's Supplemental Brief, ECF 255 at 9:12-28 (internal citation page 5).  The

---

legal rate," and once again we conclude that the appropriate rate of interest payable to unsecured creditors pursuant to 11 U.S.C. § 726(a)(5) is the federal judgment rate. As we pointed out in *Laymon,* use of the federal judgment rate not only assures a ratable distribution, but it also meets the requirement that federal law decide a federal issue. *In re Laymon*, 117 B.R. [856,] at 862 [(Bankr. W.D. Tex. 1990)]. Using the federal judgment rate, moreover, affords all affected parties a predictable, easily ascertainable, nationally uniform rate and best comports with the analytical posture of claims vis-a-vis the federal bankruptcy. *Id.* **Upon bankruptcy, absent a timely objection, all claims against the estate are "deemed allowed" as of the filing. 11 U.S.C. § 502(a). From and after the petition date, then, creditors hold the equivalent of a federal judgment against estate assets, enforceable only in federal court.** Id. (citing 28 U.S.C. § 1334(a) (original and exclusive jurisdiction over bankruptcy), § 1334(d) (exclusive jurisdiction over property of the estate); 28 U.S.C. § 157(b)(2)(B) (claims adjudication a core proceeding); 11 U.S.C. § 524(a) (discharge bars further assertion of prepetition claims against the debtor); 11 U.S.C. § 362(a) (automatic stay of acts to collect claims against property of the estate); 11 U.S.C. § 726 (distribution of assets in satisfaction of claims); 11 U.S.C. § 1141 (confirmed plan binds all holders of claims against the debtor)).

*In re Melenyzer,* 141 B.R. at 833 (footnote omitted' emphasis in bold added). *Melenyzer* does not support Foremost's assertion that an allowed bankruptcy claim is a money judgment directly against the debtor; as opposed to the bankruptcy estate of the debtor; rather, the opinion contradicts such an argument in stating the general understanding of the courts that creditors holding an allowed claim in a bankruptcy case "**hold the equivalent of a federal judgment against estate assets.**"  *Id.* (emphasis in bold added).

court in *Dow Corning* held that an "order allowing claim in bankruptcy case is equivalent

of 'money judgment' within meaning of federal postjudgment interest statute" in

interpreting 11 U.S.C. § 726(a)(5) providing for payment of interest "at the legal rate" on

claims to be paid in full under the confirmed reorganization plan in a Chapter 11

bankruptcy case of a solvent debtor required under the "best interests of creditors" test

of 11 U.S.C. §1129(a)(7)(A)(ii).[23]  *Id*. at 380.  Similar to *Cardelucci*, *Dow Corning*

involved a Chapter 11 bankruptcy case in which the official committee of unsecured

creditors and certain unsecured creditors objected to plan confirmation based on the

rate of interest on allowed unsecured claims pursuant to 11 U.S.C. §§ 726(a)(5) and

1129(a)(7)(A)(ii).

In *Dow Corning*, the issue before the court was "on how, for purposes of

distribution within the bankruptcy case, the treatment of a deemed-allowed claim

compares with that of a claim allowed pursuant to a [11 U.S.C.] § 502(b) order."  *Id*. at

392.  The court determined that: "It is only where estate proceeds are sufficient that

post-petition interest becomes payable pursuant to [11 U.S.C.] § 726(a)(5)."  *Id*. at 393.

For purposes of its case, the court had defined a money judgment as follows: "[A]

'money judgment' consists of three elements: it must be a judgment; entitling the plaintiff

to specified sum of money; and such entitlement must be against an identifiable party."

*Id*. at 386, *citing, In re Commonwealth Oil Ref. Co.*, 805 F.2d 1175, 1186 (5th Cir.

1986)).  In *Dow Corning*, the court determined that each allowed unsecured claim was a

money judgment under this definition because the creditor's allowed claim gave the

creditor a right to payment of a specified sum of money pursuant to 11 U.S.C. § 502(b),

the allowed claim identified the party against whom such right of payment is enforceable

is the bankruptcy estate of the debtor, and third, the allowed claim being deemed

allowed is a judgment having preclusive effect.  *Id., citing inter alia, Siegel v. Federal*

---

[23]  The "best interests of creditors" test of 11 U.S.C. §1129(a)(7)(A)(ii) is explained in footnote 16, *supra*.
The court and the parties in *Dow Corning* had assumed for purposes of the opinion that there would be
sufficient funds on hand to pay post-petition interest pursuant to 11 U.S.C. §§ 726(a)(5) and
1129(a)(7)(A)(ii).  237 B.R. at 385.

*Home Loan Bank Corp.,* 143 F.3d at 530.  The court concluded in *Dow Corning* that there was no meaningful difference because claims allowed in contested claim objection proceedings under an order pursuant to 11 U.S.C. § 502(b) and claims "deemed allowed" without objection pursuant to 11 U.S.C. § 502(a).  Thus, the court further concluded that "for purposes of distribution a claim that is 'deemed allowed' will be treated as if were also a 'money judgment.'"  *Id.* at 392.  The court then considered and concluded that the legal rate of interest under 11 U.S.C. § 726(a)(5) meant the federal judgment rate of 28 U.S.C. § 1961(a) and overruled the creditors' objection to the proposed reorganization plan of the debtor providing for post-petition interest on allowed unsecured claims at the federal judgment rate of 28 U.S.C. § 1961(a).  *Id.* at 392-412.

Applying the "money judgment" test of *Dow Corning* here has limited utility, that is, regarding *Dow Corning's* element of right of payment against an identifiable party.  As indicated by *Siegel,* Foremost's allowed claim was a judgment, and Foremost had a right of payment based on its allowed proof of claim as to the debtor, Ayers Bath, which entitled Foremost to a specific amount as shown on the allowed proof of claim filed in the debtor's bankruptcy case, but such entitlement was only against the bankruptcy estate of the debtor, which is the identifiable party, and only to the extent there were assets in the debtor's bankruptcy estate.  The allowed bankruptcy claim against the debtor, Ayers Bath, is not a money judgment directly against the debtor under the *Dow Corning* test in its present form as the identifiable party liable for the judgment is only the bankruptcy estate of the debtor, Ayers Bath.  *See* 11 U.S.C. §§ 101(5)(A), 501 and 502; *In re Dow Corning Corp.,* 237 B.R. at 387 ("Second, it identifies the party against whom such right of payment is enforceable---**the estate**.") (emphasis in bold added); *see also, Travelers Casualty* and *Surety Co. of America v. Pacific Gas and Electric Co.,* 549 U.S. at 449 ("When a debtor declares bankruptcy, each of its creditors is entitled to file **a proof of claim—i.e., a document providing proof of a "right to payment," 11 U.S.C. § 101(5)(A)—against the debtor's estate**.") (emphasis in bold added).

The identifiable party liable for the judgment is also not Tangshan Ayers as

Tangshan Ayers would have to be added to the judgment to meet the *Dow Corning* test

through Rule 69(a) and California Code of Civil Procedure § 187, if that were legally

permitted.  The issue of such extension of liability under Rule 69(a), such as based on

an alter ego theory, was not presented in *Dow Corning*, and therefore, it is not

determinative of the issue in this case of applicability of Rule 69(a) to an allowed

bankruptcy claim.

The Ninth Circuit in the case of *Ministry of Defense and Support for the Armed*

*Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.,* 665 F.3d 1091

(9th Cir. 2011), adopted its own definition of the term "money judgment" in determining

whether post-judgment interest under 28 U.S.C. § 1961(a) may be paid on an order of

the district court confirming an international arbitration award.  *Id.* at 1101.  The Ninth

Circuit adopted the Third Circuit's definition in its case law:

> We have not previously defined the term "money judgment." The Third Circuit
> has done so, however, and we find its definition persuasive.
>
> Under this definition, a money judgment consists of two elements: "(1) an
> identification of the parties for and against whom judgment is being entered, and
> (2) a definite and certain designation of the amount which plaintiff is owed by
> defendant." *Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 275 (3d
> Cir.1984) (defining the term "money judgment" for purposes of former Bankruptcy
> Code § 362(b)(5)); *see also Eaves v. Cnty. of Cape May*, 239 F.3d 527, 533 (3d
> Cir.2001) (extending Penn Terra's definition to § 1961(a)); *cf. In re Haugen*, 998
> F.2d 1442, 1448 (8th Cir.1993) (employing a similar definition).

*Id.*  Recently, the Ninth Circuit in an unpublished disposition applied this definition of

money judgment in upholding a civil contempt order against a defendant compelling

discovery, apparently with monetary sanctions, as a money judgment, and stating that

plaintiffs were also entitled to conducted post-judgment discovery under Rule 69.

*Invesco High Yield Fund v. Jecklin,* __ Fed. Appx. __, No. 21-15809, 2021 WL

3778595 (9th Cir. Aug. 25, 2021).  Applying this test to an allowed proof of claim would

be problematic for Foremost's theory of the case because Foremost's "deemed allowed"

claim does not mean that it has a money judgment directly against the debtor, Ayers

Bath.  Allowance of Foremost's bankruptcy claim means under the Bankruptcy Code

1  that it holds an allowable claim against the bankruptcy estate of the debtor, Ayers Bath,

2  representing the amount that is owed by the debtor to Foremost.  *See, e.g., In re Dow*

3  *Corning Corp.,* 237 B.R. at 387 ("Second, it identifies the party against whom such right

4  of payment is enforceable---the estate."). This judgment in the form of the allowed proof

5  of claim under the Bankruptcy Code only entitles Foremost to a pro rata share of the

6  distributable assets of the bankruptcy estate in order of priority under the Bankruptcy

7  Code.  11 U.S.C. § 501, 502, 507 and 726.  Allowance of Foremost's bankruptcy claim

8  does not mean that Foremost has a money judgment directly against the debtor, Ayers

9  Bath, as the Bankruptcy Code does not provide for such a direct judgment against the

10  debtor for recovery of money unless obtained through an adversary proceeding.  Thus,

11  the parties for and against whom the judgment is being entered by Foremost's allowed

12  claim is that Foremost has a judgment in the form of its proof of claim against the

13  bankruptcy estate of the debtor, which represents the debt owed by the debtor to

14  Foremost, and the amount of which the bankruptcy estate owes Foremost as the

15  claimant is not fixed and determined by the amount of the allowed claim, but only after

16  administration of the estate by the Chapter 7 trustee and payment of administrative

17  expenses and other claims entitled to priority over Foremost's claim paid on a pro rata

18  basis with other claims of its claim, i.e., general unsecured claims. 11 U.S.C. § 501,

19  502, 507 and 726; *see also, Travelers Casualty* and *Surety Co. of America v. Pacific*

20  *Gas and Electric Co.,* 549 U.S. at 449 ("When a debtor declares bankruptcy, each of its

21  creditors is entitled to file a proof of claim—i.e., a document providing proof of a "right to

22  payment," 11 U.S.C. § 101(5)(A)—against the debtor's estate.").

23         As discussed above, by allowing Foremost's unopposed claim, this bankruptcy

24  court did not enter a money judgment in its favor against the debtor, Ayers Bath, in this

25  bankruptcy case.  There was no order of this court specifically allowing Foremost's

26  claim as it was deemed allowed since no party in interest objected to it pursuant to 11

27  U.S.C. § 502(a), and the Chapter 7 bankruptcy trustee made a distribution to Foremost

28  on its allowed claim after the court entered an order approving the Chapter 7 trustee's

final report and account which proposed distributions on claims, including Foremost's.

As discussed herein, Foremost's allowed claim does not have the attributes of an

executable money judgment under Federal Rule of Civil Procedure 69(a).  Despite

Foremost's contentions and citations to Federal Rule of Civil Procedure 69 and *In re*

*Levander*, *supra,* the authorities do not support the assertion that the order deeming

Foremost's claim as allowed was a money judgment enforceable by a writ of execution.

Thus, this bankruptcy court concludes that while Foremost obtained an allowed proof of

claim against the debtor, Ayers Bath, and now seeks to add a nondebtor party,

Tangshan Ayers, to its "judgment" based on its allowed proof of claim, which Foremost

seeks to enforce against Tangshan Ayers as an executable money judgment, this is not

proper because an allowed proof of claim, which entitles the claim holder to a

distribution from the bankruptcy estate of the bankruptcy debtor, is not an executable

money judgment in that there is no legal mechanism to enforce it through levy or a writ

of execution.  Foremost cannot convert its allowed proof of claim against the bankruptcy

estate of one party, the bankruptcy debtor, which is not an executable money judgment,

into an executable money judgment against a non-bankruptcy debtor party.  Under the

above-recited provisions of the Bankruptcy Code, based on its "judgment" from its

allowed proof of claim, Foremost can only have a "claim" against the bankruptcy debtor

or its estate, which is Ayers Bath, and not Tangshan Ayers. 11 U.S.C. §§ 101(13), 501,

502, 507 and 726.  Foremost has not cited any specific legal authority to support the

amendment of an allowed bankruptcy proof of claim to include a nondebtor party, and

as Tangshan Ayers asserts, no such legal authority exists.   Moreover, amending a

claim still means that the holder only has a claim, not an executable money judgment.

Amending a claim to add another party as the debtor is not theoretically possible by

simply amending a claim to add another party as the "debtor" pursuant to 11 U.S.C. §

101(13) as the term "debtor" means the "person . . .concerning which a case under this

title has been commenced."  Under this definition, that is only Ayers Bath. [24]

---

[24]  Foremost apparently wants to bring in the assets of Tangshan Ayers into the Ayers Bath bankruptcy

For the foregoing reasons, Foremost is not entitled to amend its allowed proof of claim add Tangshan Ayers as a judgment debtor pursuant to Federal Rule of Civil Procedure 69(a) and California Code of Civil Procedure § 187, and Foremost's renewed motion to amend the judgment of this court should be denied. [25]

_____

estate, but that cannot be done by just amending a claim against the bankruptcy estate in the Ayers Bath bankruptcy case to assert the claim against an entity, which is not the bankruptcy debtor which filed the voluntary bankruptcy petition to commence the bankruptcy case. What Foremost is trying to do is to hold Tangshan Ayers, a third party, liable for the debts of its subsidiary, Ayers Bath, and collect upon Tangshan Ayers's assets to satisfy these debts by disregarding the separate legal entities of the parent and subsidiary entities, piercing their corporate veils and reaching the assets of a related corporation to satisfy such debts. There is an equitable remedy called substantive consolidation which may permit this and Foremost is apparently aware of, but Foremost has not utilized this remedy. *See* In re Bonham, 229 F.3d 750, 763-769 (9th Cir. 2000). Foremost in its briefing in response to the court's tentative ruling indicated a prior awareness of a substantive consolidation remedy, acknowledging: "The Proof of Claim was filed against Ayers Bath because it was the named debtor and that there had been not a finding of alter ego, substantive consolidation, or some other basis to assert a claim under section 501 of the Bankruptcy Code against Tangshan Ayers." ECF 255 at 13 (internal citation page 9). Although the sentence for Foremost's acknowledgment is written in the passive voice, it indicates Foremost's knowledge and intent for filing the proof of claim in the Ayers Bath bankruptcy case at the time when it filed its proof of claim in this bankruptcy case, that is, it only meant to assert a claim against Ayers Bath, and not against Tangshan Ayers, because it did not yet find a basis to assert a claim against Tangshan Ayers on an alter ego, substantive consolidation or other theory under Section 501 of the Bankruptcy Code. Since there is no substantive consolidation claim before the court, the court does not opine whether Foremost would have a viable claim for substantive consolidation.

[25] Foremost argues in one of its supplemental briefs as follows:

> If the Tentative Ruling stands, the Court will be condoning the following course of conduct by a foreign entity: (1) create a U.S. subsidiary in order to breach or subvert contractual obligations; (2) when, inevitably, the U.S. subsidiary is sued, frustrate any effort to uncover the extensive connections between the U.S. subsidiary and foreign parent; (3) when that is no longer possible, put the now asset-less company into bankruptcy; (5) when creditors, having received pennies on the dollar on account of their bankruptcy claims, look to the foreign entity for the deficiency, argue that they are foreclosed from bringing any standalone claims against the parent due to res judicata effect of the allowed claim, while also arguing that the allowed claim cannot, as a matter of law, be amended to add the parent as a judgment debtor, leaving the creditor without any recourse whatsoever. This cannot be the Court's intent, but it will be the road map that future tortfeasors will follow if Foremost's Renewed Motion to Amend is denied for the reasons set forth in the Tentative Ruling.

Foremost Groups, Inc.'s Supplemental Brief in Response to the Court's Tentative Ruling on Foremost's Renewed Motion and Judgment, ECF 255 at 5:6-19 (internal citation page 1). This argument is an appeal to emotion. The argument lacks merit not only because it is not based on legal analysis, but because Foremost was not without recourse as shown by the example of the *Bourdow Contracting* alter ego case discussed *supra*. As the plaintiff pension fund had alleged in its complaint in *Bourdow Contracting,* Foremost as the plaintiff in the Tangshan Ayers Litigation had alleged in its original complaint standalone claims in a civil action filed in federal district court in which it could have asserted alter ego as a theory of liability as pointed out by the District Court in its order ruling on Tangshan Ayers's motion to dismiss the first amended complaint. In *Bourdow Contracting,* the plaintiff prevailed on its alter ego claim to collect the liability stated on its allowed bankruptcy claim, plus interest and attorneys' fees, by pursuing standalone claims in a civil action in the district court, and not by amending the judgment of the

1

2

VI.    BANKRUPTCY COURT'S ANALYSIS OF APPLICABILITY OF

CALIFORNIA CODE OF CIVIL PROCEDURE §187

3    Assuming *arguendo* that Foremost may assert a claim under California Code of

4    Civil Procedure § 187 against Tangshan Ayers through Federal Rule of Civil Procedure

5    69(a), the evidence does not support that claim on due process grounds.

6    As discussed above, a California Code of Civil Procedure § 187 amendment

7    requires that the plaintiff prove by a preponderance of the evidence "(1) that the new

8    party [is] the alter ego of the old party and (2) that the new party [ ] controlled the

9    litigation, thereby having had the opportunity to litigate, in order to satisfy due process

10    concerns."  *Katzir*, 394 F.3d at 1148.  The court finds no cause to reach the alter ego

11    issue because Foremost has failed to show that Tangshan Ayers "controlled" the

12    litigation in a manner that satisfies due process. As explained above, under *Katzir* and

13    *NEC*, due process requires that Tangshan Ayers (1) controlled the litigation and (2) had

14    occasion to conduct that control with a diligence corresponding to the risk of personal

15    liability that was involved.

16    Arguably, the three seminal California cases on the topic of due process

17    concerns regarding relief under California Code of Civil Procedure § 187 are: *Motores*

18    *De Mexicali, S. A. v. Superior Court in & for Los Angeles County*, 51 Cal.2d 172, 173

19    (1958); *NEC Electronics Inc. v. Hurt*, 208 Cal.App.3d at 775-781; and *Wolf Metals Inc.*

20    *v. Rand Pac. Sales, Inc.*, 4 Cal.App.5th 698 (2016).  *See Cadence Design Systems, Inc.*

21

22    bankruptcy court in the form of the allowed claim as if it were a money judgment for purposes of Federal
Rule of Civil Procedure 69(a).  This is where Foremost has gone astray by making a legally unsound

23    argument to the District Court in opposing Tangshan Ayers's motion to dismiss Foremost's original
complaint in the Tangshan Ayers Litigation that because its allowed proof of claim in the Ayers Bath

24    bankruptcy case became a judgment when the Ayers Bath bankruptcy trustee filed his final report, this
judgment has *res judicata* effect as to the alleged tortious conduct of Ayers Bath, and Foremost was only

25    "executing on a judgment" from its allowed claim based on its legally unsupported assumption that its
allowed claim was an executable money judgment, contrary to existing case law.  *See, e.g., Ziino v.*

26    *Baker*, 613 F.3d at 1328-1329.  As discussed herein, the court concludes that the allowed proof of claim
that Foremost has in this bankruptcy case is not an executable money judgment for purposes of Federal

27    Rule of Civil Procedure 69.  *Id.*  Foremost should have pursued a different procedure to assert and prove
its claims that Tangshan Ayers is liable to it as the alter ego of Ayers Bath, which in this court's view is

28    suggested by the result in *Bourdow Contracting*.  However, this court does not opine on what that
procedure might have been because this court's role is limited based on the referral from the District
Court to rule on Foremost's motion to amend the judgment of this court.

*v. Pounce Consulting, Inc*., Case No. 17-cv-04732-PJH, 2019 WL 3576900 (N.D. Cal. Aug. 6, 2019), at *2, *citing,* 2 Ahart, *Rutter Group California Practice Guide: Enforcing Judgments and Debts,* Chapter 6G-15 (Amending Judgment to Add Nonparty Alter Egos as Judgment Debtors) (2019).

In an unpublished opinion in the case of *Cadence Design Systems, Inc. v. Pounce Consulting, Inc*., Case No. 17-cv-04732-PJH, 2019 WL 3576900, the United States District Court for the Northern District of California discussed the due process concerns raised by a motion to amend judgment and add judgment debtors to a default judgment pursuant to California Code of Civil Procedure § 187 applicable through Federal Rule of Civil Procedure 69(a) with extensive and detailed analysis of the case law, including three seminal cases in *Motores, NEC* and *Wolf Metals*, with which the court substantially agrees with and quotes at length below.

The court in *Cadence Design Systems* first analyzed the California Supreme Court's decision in *Motores*:

> In *Motores*, the California Supreme Court first recognized the due process concerns implicated by California Code of Civil Procedure § 187. There, after suing a corporation and obtaining a default judgment, plaintiff sought to add three individuals as judgment debtors on an alter ego theory. *Motores*, 51 Cal. 2d at 173. The California Supreme Court held that adding the alleged debtors to a default judgment would violate their due process rights. *Id.* at 176. In reaching that conclusion, *Motores* distinguished two prior California appellate court opinions, by explaining that, unlike in those cases, the proposed judgment debtors in *Motores* "in no way participated in the defense of the alleged basic action[.]" *Id.* at 175. The proposed judgment debtors "did not have attorneys subsidized by them appearing and defending the action against the corporation [ ] alleged to be their alter ego. Instead, the judgment was entered against [the corporation] strictly by default." *Id.* at 175-76. *Motores* explained that due process "guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses." *Id*. "To summarily add" the proposed debtors "to the judgment ... without allowing them to litigate any questions beyond their relation to the allegedly alter ego corporation would patently violate this constitutional safeguard." *Id.* at 176. Nor were the proposed judgment debtors under any "duty to appear and defend personally in that action, since no claim had been made against them personally." *Id.*

*Cadence Design Systems, Inc. v. Pounce Consulting, Inc.,* Case No. 17-cv-04732-PJH,

1    2019 WL 3576900, at *2.

2         Second, the court in *Cadence Design Systems* discussed the California Court of

3    Appeal's decision in *NEC* 30 years later:

4         Thirty years later, in *NEC*, a California appellate court applied *Motores* to a
     situation where the corporate defendant failed to present a defense at trial.  *NEC,*
5    208 Cal. App. 3d at 775-81. After appearing and filing a general denial—and
     without any other proceedings being conducted—the day before trial, the
6    corporate defendant's CEO and sole shareholder notified the plaintiff that the
     corporation would not appear, apparently in light of a potential bankruptcy.  *Id.* at
7    775, 781. The court subsequently entered judgment after holding a one-day trial,
     for which defendant did not appear. *Id.* at 775-76. Thereafter, the court granted
8    the plaintiff's § 187 motion to add the corporation's CEO to the judgment.  *Id.* at
     776.
9
10        Relying on *Motores*, the California Court of Appeals reversed. *NEC* explained
     that because the corporation "did not make any attempt to defend the NEC
11   lawsuit ... [the CEO's] interests were [not] represented in the underlying action."
     *Id.* at 780. *NEC*, however, did not stop there. Rather, *NEC* next turned to whether
12   the corporate defendant's interests aligned with the proposed judgment debtor's
     interest.  *Id.* at 780. The NEC court answered that question in the negative.
13   Though the corporate defendant believed it had a defense, it let the matter
     proceed uncontested because it planned to file a Chapter 11 bankruptcy petition
14   and thus had no incentive to defend against the lawsuit. *Id.* In contrast, and
     unlike the usual situation where alter ego interests align, the CEO "was not
15   named as a party, had no risk of personal liability and therefore was not required
     to intervene." *Id.* at 780-81. Because the interests of the corporation and the
16   CEO were different, the appellate court could not "say that [the CEO] had
     occasion to conduct the litigation with a diligence corresponding to the risk of
17   personal liability that was involved or that [the CEO] was virtually represented in
     the lawsuit." *Id.* at 781. Like *Motores*, *NEC* completed its analysis by considering
18   whether there was sufficient "evidence to show that [the CEO] controlled the
     defense of the litigation." *Id.* at 781. The court held that that factor too was not
19   met because "[t]here was no defense for [the proposed judgment debtor] to
     control," as other than a "general denial, no further proceedings were conducted."
20   *Id.* (control contemplates "some active defense of the underlying claim").
21
22
23
24   *Cadence Design Systems, Inc. v. Pounce Consulting, Inc.,* Case No. 17-cv-04732-PJH,

25   2019 WL 3576900, at *3.

26        Third, the court in *Cadence Design Systems* discussed the last case in the

27   trilogy, *Wolf Metals*:

28        Admittedly, *Wolf Metals,* the final case . . . gets closer to stating a per se rule
     against amending default judgment.  In *Wolf Metals*, after initially answering the

complaint, the corporate defendant abandoned the litigation, which prompted the trial court to strike the corporation's answer and enter default judgment. *Wolf Metals*, 4 Cal.App.5th at 701-02. Subsequently, the trial court granted plaintiff's § 187 motion to amend judgment to add the corporation's president. *Id*. 702. Reviewing the holdings in *NEC* and *Motores*, the *Wolf Metals* appellate court reversed. The court held that the action was factually indistinguishable from *Motores:* "Like the defendant corporation in *Motores,* [the corporate defendant] offered no evidence-based defense in the underlying action, and the judgment against [the corporation] was entered by default." *Id.*

*Cadence Design Systems, Inc. v. Pounce Consulting, Inc.,* Case No. 17-cv-04732-PJH, 2019 WL 3576900, at *3.

After analyzing this case law, the court in *Cadence Design Systems* concluded that whether due process is met is addressed by determining whether the proposed judgment debtor had "the opportunity to be heard and present his defenses":

But neither *Motores* nor *NEC* stand for the conclusion that California Code of Civil Procedure § 187 does not apply to judgments entered after a defendant fails to present an "evidence-based defense." Rather, *Motores* and *NEC* require courts to consider whether the proposed judgment debtor's interest aligned with the named debtor's interest, and whether the type of and degree of control the proposed judgment debtor exerted over the named debtor ameliorates any due process concerns. Critically, that analysis does not require active litigation or an "evidence-based defense." *Id*. Instead, what matters is whether the proposed judgment debtor had "the opportunity to be heard and to present his defenses." *Motores*, 51 Cal. 2d at 176 (emphasis added). Requiring that defenses actually be presented "would create a perverse incentive for potential alter ego defendants to incur default judgments when their corporations are sued, because default judgments would make them immune from personal liability." *Ermis [Mgmt. Co. Ltd. v. United California Disc. Corp.],* 2008 WL 11450869, at *4 [(D. Nev. Jan. 2, 2008)] (rejecting conclusion that there is a per se rule against § 187 amendments to default judgments). And requiring that the corporate defendant actually present defenses related to its officers' personal liability—the natural extension of the argument—would aggravate those perverse incentives.

*Cadence Design Systems, Inc. v. Pounce Consulting, Inc*., Case No. 17-cv-04732-PJH, 2019 WL 3576900, at *3.

Then, the court in *Cadence Design Systems* observed, "Moreover, the Ninth Circuit has implicitly recognized that the normal § 187 analysis applies to attempts to amend a default judgment." *Cadence Design Systems, Inc. v. Pounce Consulting, Inc.,*

Case No. 17-cv-04732-PJH, 2019 WL 3576900, at *4, *citing and quoting, Katzir's Floor and Home Design, Inc. v. M-MLS.com,* 394 F.3d 1143 (9th Cir. 2004). Regarding *Katzir,* the court stated:

> In *Katzir,* the Ninth Circuit reversed a district court's order adding the owner, "sole director, president, treasurer, and secretary of the corporation" to a default judgment under Cal. Civ. Code § 187. *Katzir,* 394 F.3d at 1148-50. Reviewing *Motores* and *NEC*, *Katzir* concluded that *NEC* "represents the law that the California Supreme Court would apply if faced with th[e] issue of" whether the proposed judgment debtor exercised sufficient control. *Katzir,* 394 F.3d at 1150. *Katzir*, however, did not go on to interpret *NEC* as prohibiting § 187 amendments of default judgments. To the contrary, the Ninth Circuit applied the standard § 187 two-part analysis and held that the trial court had failed to make factual findings to support either the alter ego finding or the finding of control.

*Cadence Design Systems, Inc. v. Pounce Consulting, Inc.,* Case No. 17-cv-04732-PJH, 2019 WL 3576900, at *4.

> Regarding the finding of control, the court in *Cadence Design Systems* stated:

> As to the "control" prong, which embodies the due process concerns first set forth in *Motores*, *see Katzir*, 394 F.3d at 1149, in lieu of applying a per se rule, the Ninth Circuit explained that "Section 187 'is an equitable procedure ... [that] 'bind[s] new individual defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit.'" *Id.* at 1149 (quoting *NEC*; alterations in original; some internal quotations omitted). "A prior judgment against a corporation ... 'can be made individually binding on a person associated with the corporation only if the individual to be charged ... [1] had control of the litigation and [2] occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved.'" *Id.*, at 1150 (emphasis added) (quoting *NEC*). As the *Katzir* trial court failed to analyze that question as it applied to the owner of the defaulted corporation, the Ninth Circuit reversed. *Id.* (footnote omitted). Further, the Ninth Circuit noted that, as in *NEC*, the owner "was not named individually, knew [the corporation] was on the verge of dissolution through Canadian bankruptcy law, and had no personal duty to defend the underlying lawsuit." *Katzir*, 394 F.3d at 1150. That is, like the *NEC* court, the interests of the owner and his corporation were not aligned, such that the owner was not virtually represented in the underlying suit. In short, beyond how it factored into the control analysis, it was of no matter to the Ninth Circuit that the judgment was entered pursuant to default.

> True, at first blush, one might conclude that that is a distinction without a difference because the control requirement articulated by *Motores*, *NEC*, and *Ka[tz]ir* could never be satisfied vis-à-vis a default judgment. For, how could a

proposed judgment debtor's interest be effectively represented by a named defendant that failed to present any defense at all?  Relatedly, if an alter ego faces personal liability, is it consistent for him to control the litigation 'with a diligence corresponding to the risk of personal liability' by allowing the named defendant to default?

While those considerations factor into a § 187 analysis, they do not show that the analysis is a foregone conclusion when applied to a default judgment.  That is because, as noted above, *Motores*, *NEC*, and *Ka[tz]ir* stand for a narrower proposition: The proposed judgment debtor must have had the "opportunity to be heard and present defenses[,]" *Motores*, 51 Cal. 2d at 176 (emphasis added), and the "occasion to conduct" the litigation "with a diligence corresponding to the risk of personal liability," *Katzir*, 394 F.3d at 1149 (emphasis added); *NEC*, 208 Cal. App. 3d at 781. "The real issue is not whether [the proposed judgment debtors] (or, technically, [the named defendant]) actually litigated the issue of [the named defendant's] liability, but rather whether [the proposed judgment debtors] had an opportunity to present a defense." *Id.*, citing, *Dow Jones Co. v. Avenel*, 151 Cal. App. 3d 144, 150 (1984) (emphasis added) (proposed judgment debtors were given opportunity to litigate summary judgment through alter ego corporate defendant). And that is all due process requires. *Id.*, citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation marks and citation omitted)); *Shanghai Minguang Int'l Grp. Co. v. Yang*, No. E044331, 2008 WL 4004697, at *4 (Cal. Ct. App. Aug. 29, 2008) (unpublished) (default judgment amended where proposed judgment debtor had "the opportunity to present his own defense and controlled the corporations' defense but chose not to do so[.]")."

*Cadence Design Systems, Inc. v. Pounce Consulting, Inc.,* Case No. 17-cv-04732-PJH, 2019 WL 3576900, at *4 (footnotes omitted).

In *Cadence Design Systems,* the court denied the plaintiff's motion under Rule 69(a) and California Code of Civil Procedure § 187 to add the proposed additional judgment debtor, Viera, to the monetary judgment entered by default against two companies in which he was the CEO of one company and CFO of the other company on grounds that he was the alter ego of both companies.  *Id.* at *1, 5-7.  While the court found that Viera had participated in the early stages of the underlying litigation, and that even if plaintiff had shown that Viera had "controlled" the litigation, plaintiff had "presented virtually no evidence that Viera had 'occasion to conduct [that control] with a diligence corresponding to the risk of personal liability.'"  *Id., citing and quoting, Katzir,*

394 F.3d at 1150.  The court found that "Viera's mere participation in this litigation does not come close to outweighing the lack of evidence showing that Viera had notice that he faced the risk of personal liability before the court entered judgment."  *Id.* (footnote omitted).  Thus, the court held: "Given the due process concerns at stake, the court cannot conclude that Viera had the opportunity to control the litigation with a diligence corresponding to the risk of personal liability when there is no evidence that Viera knew or should have known he faced the risk of such liability."  *Id.* (footnote omitted).

The court in *Cadence Design Systems* further held:

> Nor has plaintiff shown that it could not have raised Viera's liability at an earlier stage because it only recently discovered that there was evidence supporting Viera's alleged alter ego status.  Indeed, much of the alter ego evidence plaintiff relies upon matches the evidence that plaintiff's February 2019 motion for default judgment relied upon.  *Compare* Dkt. 208-25 at 9-16 to Dkt. 228-4 at 6-15.  Plaintiff has provided no persuasive explanation for its failure to raise the issue of Viera's alleged alter ego status until after default judgment had been entered.  And the court will not countenance the strategic use of § 187 in a manner that raises due process concerns.  *See also Correa Pallet, Inc. v. Lambeth*, No. F052934, 2008 WL 1822639, at *15 (Cal. Ct. App. Apr. 24, 2008) (unpublished) (discussing § 187 and explaining that the alter ego doctrine is grounded in equity that requires the movant to act with "due diligence").  For those reasons, the court finds that plaintiff has not shown by a preponderance of the evidence that Viera had the "opportunity" or "occasion" to conduct this litigation with a diligence corresponding to his risk of personal liability.

*Id.* at 7.

Finally, the court in *Cadence Design Systems* held regarding movant's failure to demonstrate that Viera's interests were virtually represented in the prior litigation:

> For similar reasons, plaintiff has not shown that Viera was virtually represented in the lawsuit or that his interests aligned with the judgment debtors.  Like in *NEC*, it is not apparent that Pounce's "interests and [Viera's] interests were [ ] the same."  *NEC*, 208 Cal. App. 3d at 780.  Though disputed, evidence shows that, as in *NEC*, Pounce defaulted because it "had no incentive to defend the [ ] lawsuit," as it "was on the verge of bankruptcy."  *Id*.  Plaintiff had the burden of showing that that litigation strategy effectively represented the personal interests of Pounce's alleged alter ego, Viera, who "was not named as a party, had no risk of personal liability and therefore was not required to intervene."  *Id*.  Because plaintiff has failed to carry that burden, the court "cannot say that [Viera] … had occasion to conduct the litigation with a diligence corresponding to the risk of personal liability that was involved or that [Viera] was virtually represented in the lawsuit."  *Id.* at

781.

*Id.* (footnote omitted).

Accordingly, like the Ninth Circuit in *Katzir* and the district court in *Cadence Design Systems*, this court applies California Code of Civil Procedure § 187's standard two-prong analysis to Foremost's motion to amend its allowed bankruptcy claim to add Tangshan Ayers. *Cadence Design Systems, Inc. v. Pounce Consulting, Inc.,* Case No. 17-cv-04732-PJH, 2019 WL 3576900, at *5.  In undertaking that analysis, the court is cognizant of the serious due process concerns implicated by applying that analysis to a default judgment like Foremost's allowed bankruptcy claim, as Foremost requests the court do here.  The facts and evidence do not support Foremost's argument that Tangshan Ayers received due process.  The evidence shows that Foremost did not make an alter ego liability claim specifically related to the $5.265 million proof of claim until after the claim was deemed allowed and the court closed the bankruptcy case.

Foremost has shown that Tangshan Ayers may have exercised some control over the litigation in that its directors common with Huida and Ayers Bath were involved in authorizing the filing of Debtor Ayers Bath's Chapter 7 bankruptcy petition.  Pretrial Stipulation Pursuant to Local Bankruptcy Rule 7016-1(b)(1)(B), ECF 208, filed on January 5, 2021, Stipulated Facts Nos. 3, 8, 9, 11, 19, 21 and 23. [26]  While there is

---

[26] The parties have stipulated that Peter Yao, the president of Ayers Bath, signed the bankruptcy petition for Ayers Bath authorized by Wang Yanqing and Dong Huazhong, the directors of Ayers Bath, and Mr. Yao had asked permission of Mr. Wang to file the petition, which was granted.  Pretrial Stipulation Pursuant to Local Bankruptcy Rule 7016-1(b)(1)(B), ECF 208, filed on January 5, 2021, Stipulated Facts Nos. 3, 8, 9, 11, 19, 21, 23.  At the time, Mr. Wang was chairman, president and legal representative of Tangshan Ayers as well as chief executive officer of Huida, and Mr. Dong was a director of Tangshan Ayers and a director and senior consultant for Huida.  *Id.*  Mr. Yao was employed at Tangshan Ayers before and after he was the president of Ayers Bath.  *Id.*  Tangshan Ayers disputes that it was consulted in the decision of Ayers Bath to file for bankruptcy, asserting that the decision was made by the management of Huida, and not Tangshan Ayers.  *See* Second Declaration of Yang Chun, filed on March 10, 2021, ECF 223 at 4, 11 (trial declaration of former general manager and CEO of Tangshan Ayers); Declaration of Wang Yaoqing, filed on March 10, 2021, ECF 222 at 3, 8 (trial declaration of general manager and CEO of Huida, board chairman of Tangshan Ayers and director of Ayers Bath); Declaration of Junjuan Yao, filed on March 10, 2021, ECF 220 at 4, 10 (trial declaration of CEO and president of Ayers Bath); Declaration of Xing Jinrong, filed on March 10, 2021, ECF 221 at 3-8 (trial declaration of vice president of sales for Huida).  The evidence indicates that the common management of Huida and Tangshan Ayers was aware of their subsidiary Ayers Bath's decision to file for bankruptcy, though Huida was the entity technically consulted about the decision of Ayers Bath's board of directors to file the bankruptcy case.  Mr. Yao, the president and CEO of Ayers Bath recommended to Mr. Wang and Mr. Dong, the common

1    largely undisputed evidence that Tangshan Ayers was involved in Ayers Bath's decision

2    early on in this bankruptcy case to file a Chapter 7 bankruptcy petition, that evidence

3    does not translate into evidence that Tangshan Ayers controlled the entire litigation

4    relating to Foremost's claim against Ayers Bath.  Even if Foremost could show that

5    Tangshan Ayers controlled the litigation, Foremost has presented virtually no evidence

6    that Tangshan Ayers had "occasion to conduct [that control] with a diligence

7    corresponding to the risk of personal liability." *Cadence Design Systems, Inc. v. Pounce*

8    *Consulting, Inc.*, Case No. 17-cv-04732-PJH, 2019 WL 3576900, at *6, *citing and*

9    *quoting*, *Katzir*, 394 F.3d at 1150.  Specifically, there is no evidence that Tangshan

10   Ayers ever had notice of Foremost's claim as there is no evidence of any service of the

11   proof of claim on Tangshan Ayers in the bankruptcy case.  The claims register indicates

12   that Foremost's proof of claim was filed, but there is no indication of service on

13   Tangshan Ayers, which was listed as a creditor and equity security holder on the

14   bankruptcy schedules of Ayers Bath and was listed on the creditors mailing list in the

15   case.  Petition, ECF 1 at 8 and 21; Pretrial Stipulation Pursuant to Local Bankruptcy

16   Rule 7016-1(b)(1)(B), ECF 208, filed on January 5, 2021, Stipulated Fact No. 29.

17        Moreover, Foremost's proof of claim had no indication that it would seek to hold

18   Tangshan Ayers liable as a judgment debtor for the proof of claim based on alter ego

19   liability.  The proof of claim on its face only asserts a claim against the bankruptcy

20   estate of the debtor, Ayers Bath, and not against any other party.  Foremost admits,

21   "The Proof of Claim was filed against Ayers Bath because it was the named debtor and

22   there had not yet been a finding of alter ego, substantive consolidation, or some other

23   basis to assert a claim under section 501 of the Bankruptcy Code against Tangshan

24   Ayers."  Foremost Supplemental Brief, ECF 255 at 13:11-14 (internal citation page 9).

25   Thus, without notice of the Proof of Claim, Tangshan Ayers had no meaningful

26

27   _____

28   directors of Huida, Tangshan Ayers and Ayers Bath, to authorize the bankruptcy filing, which they did as
shown on the unanimous consent of the Ayers Bath board of directors, attached as Exhibit A to the Wang
Declaration.  ECF 222 at 5, 8; ECF 222-1 at 2-4.  This evidence is some proof of Tangshan Ayers's
knowledge and participation in the decision of Ayers Bath to file for bankruptcy.

opportunity to contest the validity of the amount of Foremost's claim on the Proof of Claim. Tangshan Ayers's participation in this litigation by initiating the bankruptcy case does not come close to outweighing the lack of evidence showing that Tangshan Ayers had notice that it faced the risk of its own liability before the court entered judgment in allowing Foremost's bankruptcy claim against the estate of debtor Ayers Bath.  Given the due process concerns at stake, the court cannot conclude that Tangshan Ayers had the opportunity to control the litigation with a diligence corresponding to the risk of personal liability when there is no evidence that Tangshan Ayers knew or should have known it faced the risk of such liability.

Foremost argues that Squire Sanders, which represented Debtor in the bankruptcy filing and the Rule 2004 examination, also represented Tangshan Ayers at the time of filing the proof of claim.  *Id*. at 13:15-17 (internal citation page 9).  Even if Squire Sanders had represented both parties, there is no evidence to show Tangshan Ayers had knowledge of its potential liability for the proof of claim filed in this case.  *See* Second Declaration of Yang Chun, filed on March 10, 2021, ECF 223 at 4-5, 11 (trial declaration of former general manager and CEO of Tangshan Ayers).

Foremost argues this case is more similar to the case of *DEPCOM Power, Inc. v. CSUN Solar, Inc.,* Case No. 18-cv-00729-JST, 2020 WL 5176193 (N.D. Cal. Jul. 30, 2020) than *Cadence Design Systems*.  Foremost Supplemental Brief, ECF 255, 12:11 - 15:2 (internal citation pages 8-11).  In *DEPCOM*, under California Code of Civil Procedure § 187, a factor in the court's determination that the alter ego had control over the litigation and had an opportunity to litigate was the fact that parties shared employees and lawyers.  *DEPCOM Power, Inc. v. CSUN Solar, Inc.,* Case No. 18-cv-00729-JST, 2020 WL 5176193, at *15. [27]

---

[27]  The determination under California Code of Civil Procedure § 187 whether the alleged alter ego defendant "had occasion to conduct the litigation with a diligence corresponding to the risk of personal liability that was involved or that [it] was virtually represented in the lawsuit" is fact-driven by the evidence of the particular case. *NEC Electronics Inc. v. Hurt*, 208 Cal.App.3d 772, Id. at 781.  As such, the court does not find that comparing the specific facts in *Cadence Design Systems* with those in DEPCOM Power, Inc., to be a useful exercise in making the fact determination in this case.  The court in its analysis has considered the specific facts of this case in light of the applicable law relating to California Code of

1    Foremost believes Tangshan Ayers had the opportunity to litigate the claim

2  because Squire Sanders, who represented Debtor in the initial bankruptcy filing and at

3  the Rule 2004 examination, also represented Tangshan Ayers at the time of filing the

4  proof of claim.  Foremost Supplemental Brief, ECF 255, 13:15-17 (internal citation page

5  9).  However, Foremost acknowledges when they tried to serve Squire Sanders with the

6  original complaint that alleged alter ego liability against Tangshan Ayers, Tangshan

7  Ayers did not authorize the Squire Sanders law firm to accept service of the complaint

8  which forced Foremost to serve Tangshan pursuant to the Hague Convention.  *See Id*.

9  at 13:19-22 (internal citation page 9).  Moreover, Squire Sanders's representation of

10  Ayers Bath was limited to the filing of the voluntary petition under Chapter 7 of the

11  Bankruptcy Code.  Pretrial Stipulation Pursuant to Local Bankruptcy Rule 7016-

12  1(b)(1)(B), ECF 208, filed on January 5, 2021, Stipulated Fact No. 23; *see also,*

13  Declaration of Junjuan Yao, filed on March 10, 2021, ECF 220 at 5-6, 10 (trial

14  declaration of president and CEO of Ayers Bath).  According to Tangshan Ayers, Squire

15  Sanders did not represent it generally in the Ayers Bath bankruptcy case and was not

16  engaged to monitor the Ayers Bath bankruptcy proceedings on its behalf or represent its

17  interests.  Second Declaration of Yang Chun, filed on March 10, 2021, ECF 223 at 4, 11

18  (trial declaration of former general manager and CEO of Tangshan Ayers).

19    Foremost filed its proof of claim in this bankruptcy case on December 12, 2013.

20  On January 9, 2014, Foremost commenced litigation against Tangshan Ayers in the

21  United States District Court, No. 14-cv-00188) when it filed its original complaint in the

22  Tangshan Ayers Litigation.  Complaint, Tangshan Ayers Litigation, filed on January 9,

23  2014, Supplemental RJN, ECF 263, Exhibit A.  The claims asserted against Tangshan

24  in the original complaint were: (1) intentional interference with prospective economic

25  advantage; (2) tortious interference with contractual relations; (3) Unfair Competition

26  Under State Law [Cal. B&P Code § 17200]; (4) Unfair Competition.  *Id*.  This original

27  complaint in the Tangshan Ayers Litigation refers to the Ayers Bath bankruptcy case,

28

Civil Procedure § 187 as discussed herein.

but not to the proof of claim, and the complaint did not allege that Tangshan Ayers would be potentially liable under an alter ego theory of liability for the proof of claim. *Id*. Foremost's complaint alleges that Ayers Bath is the alter ego of Tangshan Ayers, but its allegations in the complaint are insufficient to put Tangshan Ayers on notice that it could potentially be liable for a $5.265 million proof of claim in the Ayers Bath bankruptcy case. *See id*. at 2, ¶ 3. After Foremost filed its original complaint in the Tangshan Ayers Litigation, the Chapter 7 trustee filed his final report in this bankruptcy case on April 14, 2015. ECF 50. The Chapter 7 trustee's notice of proposed payments, also filed on April 14, 2015, showed Foremost had an allowed claim against the Ayers Bath bankruptcy estate in the amount of $5,265,000 with a proposed payment of $7,757.24. ECF 51. The bankruptcy court closed the Ayers Bath bankruptcy case on July 27, 2015. ECF 59.

As the District Court discussed in its order granting Tangshan Ayers's motions to dismiss Foremost's original complaint in part on October 28, 2015, Foremost intended to argue that Tangshan Ayers would be liable for the multi-million dollar proof of claim based on the principle of *res judicata*. As the District Court stated in footnote 8 of its order, "The court does not consider whether Plaintiff has a viable common law alter ego claim or action upon the judgment because the Complaint does not allege standalone claims to enforce the proof of claim against Tangshan." *Id*. The evidence shows that the first time Tangshan Ayers received any formal notice of potential liability for the proof of claim filed against Ayers Bath, based on alter ego, was when Foremost filed its opposition to Tangshan Ayers's second motion to dismiss the original complaint in the Tangshan Ayers Litigation on or about July 13, 2015. *See* Second Declaration of Yang Chun, filed on March 10, 2021, ECF 223 at 4-5, 11 (trial declaration of former general manager and CEO of Tangshan Ayers).

The first pleading in which Foremost alleged a claim based on its theory that its allowed bankruptcy claim had preclusive effect against Tangshan Ayers was its first amended complaint filed in the Tangshan Ayers Litigation on November 17, 2015. In

1  the First Amended Complaint, filed on November 17, 2015, Foremost alleged (1) alter

2  ego liability, (2) enforcement of judgment per Rule 69(a), and (3) action on judgment.

3  First Amended Complaint, Tangshan Ayers Litigation, filed on November 17, 2015,

4  Supplemental RJN, ECF 263, Exhibit L.  Foremost's Second Amended Complaint filed

5  in the Tangshan Ayers Litigation on January 25, 2016 also alleges alter ego liability

6  against Tangshan Ayers and its liability for the allowed proof of claim in the Ayers Bath

7  bankruptcy case.  Second Amended Complaint, Tangshan Ayers Litigation, filed on

8  January 25, 2016, Supplemental RJN, ECF 263, Exhibit Q.  Foremost filed its original

9  motion to amend the judgment in the form of its allowed claim in this bankruptcy case to

10 add Tangshan Ayers as a judgment debtor on January 13, 2017.  ECF 66.  At the time

11 Foremost filed its first and second amended complaints in the Tangshan Ayers

12 Litigation and its original motion to amend judgment in this court, the proof of claim filed

13 by Foremost against Ayers Bath in this bankruptcy case had been already allowed

14 when the Chapter 7 trustee filed his final report on April 14, 2015.  Thus, it is clear,

15 based on this record, that Foremost only made the alter ego liability argument related to

16 the proof of claim in the Tangshan Ayers Litigation and in this bankruptcy case only

17 after the proof of claim was deemed allowed.  This court cannot conclude that

18 Tangshan Ayers had the opportunity to control the litigation with a diligence

19 corresponding to the risk of liability when there is insufficient evidence to show that

20 Tangshan Ayers knew or should have known it faced the risk of such liability until after

21 the proof of claim was deemed allowed.  *See Cadence Design Systems, Inc. v. Pounce*

22 *Consulting, Inc.,* Case No. 17-cv-04732-PJH, 2019 WL 3576900, at *5-7.  Since, at the

23 time Foremost filed the first and second amended complaints seeking alter ego liability

24 of Tangshan Ayers related to the allowed proof of claim, the proof of claim was already

25 deemed allowed, the court determines that there is a lack of due process as to now

26 amending the allowed claim against Ayers Bath to add Tangshan Ayers as a liable

27 party.

28        The evidence that there was no notice of any alter ego claim in Foremost's proof

of claim filed in this bankruptcy case is unrefuted.  Nevertheless, Foremost argues that Tangshan Ayers was on notice of Foremost's intent to hold Tangshan Ayers liable as an alter ego in the bankruptcy case as follows:

> Tangshan Ayers knew that Foremost was alleging that it was the alter ego of Ayers Bath through the participation of its attorneys and employees in Ayers Bath's bankruptcy case.  Unlike in *Cadence*, Foremost did not wait until judgment was entered to allege alter ego, it raised it to the Court as early as May 2013 and expressly asserted that Tangshan Ayers was the alter ego of the Debtor in the January 2014 complaint, more than 14 months prior to the Proof of Claim was deemed allowed.  During this time period, Tangshan Ayers and/or its counsel received: (1) the transcript of the Rule 2004 Exam; (2) Foremost's Proof of Claim against Ayers Bath; (3) Foremost's complaint against Tangshan Ayers [in the Tangshan Ayers Litigation before the District Court]; and (4) the Trustee's Final Report, which detailed the proposed allowance of the Proof of Claim.  Tangshan Ayers had sufficient opportunity to object to the Proof of Claim, but it made the calculated decision not to do so, confident that the fiction of a separate corporate existence and its physical presence in China would insulate it from liability.

*Id.* at 14:16 - 15:2 (internal citation pages 10-11).  Foremost's argument is unpersuasive as none of these matters put Tangshan Ayers on notice that Foremost that it sought to impose alter ego liability on Tangshan Ayers through the proof of claim or otherwise through the bankruptcy case, so that it had "occasion to conduct [the litigation, i.e., contesting the proof of claim in this case] with a diligence corresponding to the risk of personal liability that was involved."  *Katzir's Floor and Home Design, Inc v. M-MLS.com,* 394 F.3d at 1150, *citing inter alia, NEC Elecs. Inc. v. Hurt,* 256 Cal.Rptr. at 444.  The "Rule 2004 Exam" was Foremost's oral examination in the bankruptcy case of Tangshan Ayers employees who were former employees of Ayers Bath pursuant to Federal Rule of Bankruptcy Procedure, which, unlike a summons and complaint in an adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7001 *et seq.*, is not an appropriate vehicle to put a party on notice of liability, even if counsel was representing the employees on behalf of the company.  Foremost's proof of claim had no indication that it sought to impose alter ego liability on Tangshan Ayers as Foremost has admitted that when it filed the proof of claim, it had not made any finding that it had such an alter ego claim.  Foremost's original complaint filed in the Tangshan Ayers

1  Litigation had no indication that it intended to assert alter ego liability against Tangshan

2  Ayers based on the proof of claim filed in the Ayers Bath bankruptcy case.  Notice of

3  Foremost's proof of claim to Tangshan Ayers through service of the Trustee's Final

4  Report which resulted in the proof of claim being deemed allowed was only given at the

5  time the final report was filed  which meant that there was no opportunity for Tangshan

6  Ayers to respond to the proof of claim until after it was deemed allowed.

7          Similarly, Foremost has not shown that Tangshan Ayers was virtually

8  represented in the bankruptcy case or that its interests were aligned with the debtor,

9  Ayers Bath.  As in the *NEC* case, it is not apparent that Ayers Bath's "interests and

10  [Tangshan Ayers's] interests were [ ] the same."  *NEC*, 208 Cal.App.3d at 780.  Though

11  disputed, evidence shows that, as in *NEC*, Ayers Bath "defaulted" in not objecting to

12  Foremost's proof of claim because it "had no incentive to defend the [ ] lawsuit," that is,

13  to object to the claim as it had few assets and was in Chapter 7 liquidation bankruptcy

14  under the supervision of the bankruptcy trustee pursuant to 11 U.S.C. § 704, that is,

15  beyond the situation in *NEC* where the judgment debtor merely "was on the verge of

16  bankruptcy."  *Id.* [28] Foremost had the burden of showing that that litigation strategy

17  effectively represented the interests of Ayers Bath's alleged alter ego, Tangshan Ayers,

18  which "was not named as a party [to the proof of claim], had no risk of personal liability

19  and therefore was not required to intervene."  *Id*.  Moreover, as previously noted,

20  Foremost in its briefing in response to the court's tentative ruling had acknowledged:

21  "The Proof of Claim was filed against Ayers Bath because it was the named debtor and

22  that there had been not a finding of alter ego, substantive consolidation, or some other

23  basis to assert a claim under section 501 of the Bankruptcy Code against Tangshan

24

25  _____

26  [28]  According to the bankruptcy petition filed by Ayers Bath, its total assets were $81,953.56 as of the
petition date, and it had scheduled debts owed to Tangshan Ayers of $655,290.78. Pretrial Stipulation
Pursuant to Local Bankruptcy Rule 7016-1(b)(1)(B), ECF 208, filed on January 5, 2021, Stipulated Facts

27  Nos. 19, 20, 28 and 29.  Foremost filed its proof of claim asserting a debt owed by Ayers Bath in an
amount not less than $5,265,000.  Pretrial Stipulation Pursuant to Local Bankruptcy Rule 7016-1(b)(1)(B),

28  ECF 208, filed on January 5, 2021, Stipulated Fact No. 30.  There is no evidence that the Chapter 7
bankruptcy trustee operated the business of Ayers Bath pursuant to 11 U.S.C. § 704(a)(8) after it filed for
bankruptcy.

1  Ayers."  ECF 255 at 13 (internal citation page 9).  That is, when Foremost filed its proof

2  of claim against the debtor, Ayers Bath, in this bankruptcy case, Foremost's knowledge

3  and intent for filing the proof of claim in the Ayers Bath bankruptcy case at the time

4  when it filed its proof of claim was only meant to assert a claim against Ayers Bath, and

5  not against Tangshan Ayers, because Foremost had not yet found a basis to assert a

6  claim against Tangshan Ayers on an alter ego, substantive consolidation or other theory

7  under Section 501 of the Bankruptcy Code.  Thus, if Foremost did not know that it had

8  an alter ego claim against Tangshan Ayers when it filed its proof of claim in the Ayers

9  Bath bankruptcy case, it cannot expect anyone else to know in order to defend against

10  such alter ego claim based on the proof of claim.  Thus, it cannot be said that Tangshan

11  Ayers was virtually represented to defend against such an alter ego claim against

12  Tangshan Ayers by the debtor, Ayers Bath, in the bankruptcy case if no one knew that

13  there was such an alter ego claim based on the proof of claim when it was filed.  The

14  record before the court indicates that there is no evidence of a court filing that put Ayers

15  Bath or Tangshan Ayers on notice that Foremost intended to base an alter ego claim

16  against Tangshan Ayers on the proof of claim filed in the Ayers Bath bankruptcy case

17  so that either the debtor, Ayers Bath, or Tangshan Ayers, could mount a defense before

18  the proof of claim was deemed allowed on the filing of the bankruptcy trustee's final

19  report.  Moreover, the Ayers Bath bankruptcy case was not actively litigated on behalf of

20  the debtor as its lawyers, Squire Sanders, only represented it in filing the bankruptcy

21  petition, and Ayers Bath was otherwise unrepresented by counsel in the case, and as

22  an entity debtor, it could only appear in the case through counsel to litigate any matters.

23  *See* Local Bankruptcy Rule 9011-2 (a corporation may not appear without counsel in

24  any bankruptcy case or proceeding in this judicial district).  Furthermore, Squire

25  Sanders was not engaged to monitor the Ayers Bath bankruptcy case for Tangshan

26  Ayers and was not generally representing its interests in the case, and only represented

27  it in representing its two employees formerly at Ayers Bath in the Rule 2004

28  examination relating to their involvement with Ayers Bath.  Finally, as discussed above,

Foremost cannot base an alter ego claim against Tangshan Ayers on its allowed proof of claim against the debtor, Ayers Bath, in this bankruptcy case though amending the proof of claim to add Tangshan Ayers as an additional judgment debtor through Federal Rule of Civil Procedure 69.

Based on this record, the court "cannot say that [Tangshan Ayers] … had occasion to conduct the litigation with a diligence corresponding to the risk of personal liability that was involved or that [Tangshan Ayers] was virtually represented in the lawsuit," *NEC*, 208 Cal.App.3d at 781, therefore, the court determines that Foremost has not satisfied by a preponderance of the evidence the element of due process which is required to amend a judgment pursuant to California Code of Civil Procedure § 187.

VII.    FINAL RECOMMENDATION OF THE BANKRUPTCY COURT

IT IS THEREFORE RECOMMENDED by the United States Bankruptcy Court that for the foregoing reasons, the United States District Court accept this Report and Recommendation and deny Foremost's motion to amend the judgment of the bankruptcy court.

IT IS SO ORDERED.

### 

Date: September 22, 2021

_____
Robert Kwan
United States Bankruptcy Judge